**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

**JENNICA CARMONA**, Individually, and as
Parent and Natural Guardian of **B.A.;**
**KERRY GALLAGHER**, Individually, and as
Parent and Natural Guardian of **K.G.**;
**GABRIELLE KINDER**,
Individually, and as Parent and Natural
Guardian of **A.M.**;                          Civil Action No. _____
**ANGELLE KURSAR**, Individually, and as
Parent and Natural Guardian of **D.K.;**
**JAMES NAZZARO**,
Individually, and as Parent and Natural Guardian of **J.N.;**    Hon. _____
**LISA MATTESSICH**
Individually, and as Parent and Natural Guardian of **M.M.**;
**NICOLE TIERNEY**,
Individually, and as Parent and Natural Guardian of **K.D.;**
**DORENE CAMP**,
Individually, and as Parent and Natural Guardian of
**S.C., C.C.,** and **T.C.;**
**LISA DRISCOLL**,
Individually, and as Parent and Natural Guardian of **M.D.**;
**DIANA LOGRASSO**,
Individually ,and as Parent and Natural Guardian of **K.L.**;
**KELLY OSTERMAN**,
Individually, and as Parent and Natural Guardian of **J.L.**;
**TINA DeLORENZO**,
Individually, and as Parent and Natural Guardian of **N.D.**;

1

**MUNIRA EDMONDS**,

Individually, and as Parent and Natural Guardian of **A.K**., and

All others similarly situated;

Plaintiffs,

v.

**NEW JERSEY DEPARTMENT OF EDUCATION;**

**AUDUBON PUBLIC SCHOOL DISTRICT;**

**CAMDEN CITY SCHOOL DISTRICT;**

**CAMDEN COUNTY SCHOOL DISTRICT;**

**CAPE MAY COUNTY PUBLIC SCHOOL DISTRICT;**

**ESSEX COUNTY PUBLIC SCHOOL DISTRICT;**

**GLOUCESTER COUNTY PUBLIC SCHOOL DISTRICT;**

**LOWER CAPE MAY REGIONAL SCHOOL DISTRICT;**

**MANASQUAN PUBLIC SCHOOL DISTRICT;**

**MATAWAN-ABERDEEN REGIONAL SCHOOL DISTRICT;**

**MIDDLE TOWNSHIP PUBLIC SCHOOL DISTRICT;**

**MIDDLETOWN TOWNSHIP PUBLIC SCHOOL DISTRICT;**

**MONMOUTH COUNTY PUBLIC SCHOOL DISTRICT;**

**MORRIS COUNTY PUBLIC SCHOOL DISTRICT;**

**OCEAN COUNTY PUBLIC SCHOOL DISTRICT;**

**ROXBURY TOWNSHIP PUBLIC SCHOOL DISTRICT;**

**RUMSON-FAIR HAVEN REGIONAL**

2

**HIGH SCHOOLS;**

**TOMS RIVER REGIONAL SCHOOL DISTRICT;**

**WASHINGTON TOWNSHIP SCHOOL DISTRICT;**

**WEST ORANGE PUBLIC SCHOOLS;**

**ANGELICA ALLEN-MCMILLAN**, in her official capacity;

**AVE ALTERSITZ**, in her official capacity;

**DR. J. SCOTT CASCONE**, in his official capacity;

**JOSEPH CASTELLUCCI**, in his official capacity;

**ANDREW DAVIS**, in his official capacity;

**DR. JUDITH DESTEFANO-ANEN**, in her official capacity;

**THOMAS GIALANELLA**, in his official capacity;

**DEBRA GULICK**, in her official capacity;

**ROGER JINKS**, in his official capacity;

**DR. FRANK KASYAN**, in his official capacity;

**JOSEPH MAJKA**, in his official capacity;

**KATRINA MCCOMBS** in her official capacity;

**JEFFREY MOHRE**, in his official capacity;

**CHARLES MULLER**, in his official capacity; and

**DR. LOVELL PUGH-BASSETTT**, in her official capacity;

**LORETTA RADULIC**, in her official capacity;

**DR. LESTER W. RICHENS**, in his official capacity;

**DAVID SALVO**, in his official capacity;

**MARY ELLEN WALKER**, in her official capacity;

**JOSEPH S. ZARRA**, in his official capacity;

Defendants.

_____/

## <u>CLASS ACTION COMPLAINT AND REQUEST FOR AUTOMATIC AND PRELIMINARY INJUNCTION</u>

Plaintiffs, Jennica Carmona, Kerry Gallagher, Gabrielle Kinder, Angelle Kursar, James Nazzaro, Lisa Mattessich, Nicole Tierney, Dorene Camp, Lisa Driscoll, Diana LoGrasso, Kelly Osterman (a/k/a Kelly Osterman-LaFrance), Munira Edmonds and Tina DeLorenzo, individually and on behalf of their special needs children (collectively referred to as "Plaintiffs"), for their Class Action Complaint and Request for Automatic Injunction against the New Jersey Department of Education ("NJDOE"), Audubon Public School District ("APSD"), Camden City Public School District ("CCPSD"), Camden County School District or Camden County Public Schools ("CCPS"), Cape May County Public School District ("CMCPS"), Essex County Public School District ("ECPS"), Gloucester County Public School District ("GCPS"), Lower Cape May Regional School District ("LCMPSD"), Manasquan Public School District ("MPSD"), Matawan-Aberdeen Regional Public School District ("MARPSD" or "MARSD"), Middle Township Public School District ("MIPSD"), Middletown Township Public School District ("MTPSD"), Monmouth County Public School District ("MONCPS"), Morris County Public School District ("MORCPS"), Ocean County Public School District ("OCPS"), Roxbury Township Public School District ("ROXPSD"), Roxbury Public School District ("ROXPSD"), Rumson-Fair Haven Public School District ("RFHPSD"), Toms River Regional Schools ("TRPSD"), Washington Township Public School District ("WASHTPSD" or "WPSD"), and West Orange Public Schools ("WOPSD") ("School District Defendants"), other similarly situated local educational agencies ("LEAs") in New Jersey, Angelica Allen-McMillan, Ave Altersitz, J. Scott Cascone, Joseph Castellucci, Andrew Davis, Judith Destefano-Anen, Thomas Gialanella, Debra Gulick, Roger Jinks, Frank Kasyan, Joseph Majka, Katrina McCombs, Jeffrey Mohre, Charles Muller, Nathan Parker, Lovell Pugh-Bassettt, Loretta Radulic, Lester W. Richens, Dr. David Salvo, Mary Ellen Walker and Joseph S. Zarra ("individual Defendants," collectively "Defendants"), allege as

follows:

## **PRELIMINARY STATEMENT**

1. This action is brought pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1401, *et seq.* ("IDEA"), Section § 504 of the Rehabilitation Act of 1973 ("§ 504"), 29 U.S.C. § 794(a), 34 C.F.R. § 104.4(a), Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, 28 C.F.R. §§ 35.104, the New Jersey Administrative Code for Special Education, N.J.A.C. 6A:14 ("N.J.A.C."), the New Jersey Special Education Statute, N.J.S.A. 18A:46 ("N.J.S.A."), Art. VIII, § 4, 1 of the New Jersey   ("N.J. Const."), the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 *et seq*. ("N.J.C.R.A."), the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1 *et seq.* ("N.J.L.A.D."), 42 U.S.C. § 1983, the Equal Protection Clause of the Fourteenth Amendment, the Racketeer Influenced and Corrupt Organizations ("RICO") Act of 1970, 28 U.S.C. §§ 1961-1968, 901(a), and the concomitant implementing regulations, case law and public policy.

2. Plaintiffs are children with disabilities and the parents of those children, who were denied their rights under IDEA, the ADA, § 504, 20 U.S.C. §1412(a)(3), 34 C.F.R. § 300.125, N.J.A.C., N.J.S.A., N.J.C.R.A., N.J.L.A.D., N.J. Const., and the Equal Protection Clause of the Fourteenth Amendment for the 2019-2020, 2020-2021 and 2021-2022 school years, and otherwise by Defendants.

3. Plaintiffs seek declaratory and injunctive relief on behalf of themselves and a class of similarly situated students to enjoin Defendants from violating their procedural and substantive rights under IDEA, the ADA, § 504, N.J.A.C., N.J.S.A., N.J.C.R.A., N.J.L.A.D., N.J. Const., the Equal Protection Clause of the Fourteenth Amendment, and RICO.

4. Plaintiffs have suffered and continue to suffer irreparable harm as a result of Defendants'

refusal to meet the educational needs of students with disabilities in New Jersey School Districts, and will continue to suffer further irreparable harm, unless and until the Court grants declaratory and injunctive relief against Defendants to remedy the illegal treatment of and discrimination against students with disabilities in New Jersey School Districts, and to ensure that the educational rights of students with disabilities are not violated.

## JURISDICTION AND VENUE

5.   Jurisdiction of the United States District Court for the District of New Jersey is invoked under 20 U.S.C. § 1415(i)(2), providing for jurisdiction and a right of action in this Court for parties aggrieved under IDEA.

6.   Jurisdiction of the United States District Court for the District of New Jersey is also invoked under Section 504 of the Rehabilitation Act of 1973 ("§ 504"), 29 U.S.C. § 794(a), 34 C.F.R. § 104.4(a), Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, 28 C.F.R. § 35.104, the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 *et seq.*, N.J.L.A.D., and N.J.S.A. 10:5-1 *et seq.*

7.   This Court has jurisdiction over the supplemental claims arising under New Jersey state law pursuant to 28 U.S.C. § 1367(a).

8.   Jurisdiction is also invoked under 42 U.S.C. §1983.

9.   Jurisdiction is also invoked under the Racketeer Influenced and Corrupt Organizations Act of 1970 pursuant to 28 U.S.C. §§ 1961-1968, and18 U.S.C. § 1964.

10.  Jurisdiction is also conferred by 28 U.S.C. § 1331, providing for jurisdiction of all civil actions arising under the laws of the United States.

11.  This Court may also order declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

12. The Court also has pendent jurisdiction to adjudicate any state claims, which may arise out of the same facts as the federal claims asserted herein pursuant to 28 U.S.C. § 1367.

13. Venue is proper in the United States District Court for the District of New Jersey, as authorized by 28 U.S.C. § 1391.

14. The matter arose in this state, all the Plaintiffs reside in this district and all the Defendants reside in the state of New Jersey.

15. Plaintiffs initiated, but have not exhausted, their administrative remedies under 20 U.S.C. § 1415(i)(2) because they fall within the exceptions to 20 U.S.C. §1415(i)(2), including 20 § U.S.C. 1415(j).

16. This Court has personal jurisdiction over Defendants in that they are residents of the state of New Jersey.

## THE PARTIES

### B.A.

17. Plaintiff B.A. was five years old in March of 2020.

18. Plaintiff B.A. is a child diagnosed with Attention Deficit Hyperactivity Disorder and an "Other Health Impairment", both recognized disabilities under the IDEA.

19. Plaintiff Jennica Carmona is the parent and natural guardian of B.A.

20. At all relative times herein, Plaintiffs Jennica Carmona and B.A. resided in West Orange, Essex County, New Jersey.

21. At all relative times herein, Plaintiffs resided in the West Orange Public School District.

22. Plaintiff B.A. was five years old when West Orange Public Schools ceased in-person instruction and services due to the COVID-19 pandemic, and was therefore a minor during the 2019-2020, 2020-2021 and 2021-2022 school years. Attached hereto as **Exhibit 1** is a

copy of B.A.'s 2021-2022 IEP.

**K.G.**

23. Plaintiff K.G. was twelve years old in March of 2020.

24. Plaintiff K.G. is a child diagnosed with autism, a recognized disability under the IDEA.

25. Plaintiff Kerry Gallagher is the parent and natural guardian of K.G.

26. At all relevant times herein, Plaintiffs Kerry Gallagher and K.G resided in Aberdeen, County of Monmouth, New Jersey.

27. At all relevant times herein, Plaintiffs resided in Matawan-Aberdeen Regional School District.

28. Plaintiff K.G. was twelve years old when Matawan-Aberdeen Regional School District ceased in-person instruction and services due to the COVID-19 pandemic, and was therefore a minor during the 2019-2020, 2020-2021 and 2021-2022 school years.  Attached hereto as **Exhibit 2** is a copy of K.G.'s 2019-2020 IEP.

.

**A.M.**

29. Plaintiff A.M. was nine years old in March of 2020.

30. Plaintiff A.M. is a child diagnosed with a recognized disability under the IDEA.

31. Plaintiff Gabrielle Kinder is the parent and natural guardian of A.M.

32. At all relevant times herein, Plaintiffs Gabrielle Kinder and A.M. resided in Sicklerville, Camden County, New Jersey.

33. At all relevant times herein, Plaintiffs resided in Washington Township School District.

34. Plaintiff A.M. was nine years old in March of 2020 when Washington Township School District ceased in-person instruction and services due to the COVID-19 pandemic, and

therefore a minor during the 2019-2020, 2020-2021 and 2021-2022 school years.  Attached hereto as **Exhibit 3** is a copy of A.M.'s 2019-2020 IEP.

### D.K.

35.  Plaintiff D.K. was ten years old in March of 2020.

36.  Plaintiff D.K. is a child diagnosed with a recognized disability under the IDEA.

37.  Plaintiff Angelle Kursar is the parent and natural guardian of D.K.

38.  At all relevant times herein, Plaintiffs Angelle Kursar and D.K. resided in Middletown, Monmouth County, New Jersey.

39.  At all relevant times herein, Plaintiffs resided in Middletown Township Public School District.

40.  Plaintiff D.K. was ten years old in March of 2020 when Middletown Township Public School District ceased in-person instruction and services due to the COVID-19 pandemic, and was therefore a minor during the 2019-2020, 2020-2021 and 2021-2022 school years. Attached hereto as **Exhibit 4** is a copy of D.K.'s 2020-2021 IEP.

### J.N.

41.  Plaintiff J.N. was thirteen years old in March of 2020.

42.  Plaintiff J.N. is a child diagnosed with autism, a recognized disability under the IDEA.

43.  Plaintiff James Nazzaro is the parent and natural guardian of J.N.

44.  At all relevant times herein, Plaintiffs James Nazzaro and J.N. resided in Morris County, New Jersey.

45.  At all relevant times herein, Plaintiffs resided in Roxbury Township School District.

46.  Plaintiff J.N. was thirteen years old in March of 2020 when Roxbury Township School District ceased in-person instruction and services due to the COVID-19 pandemic, and was

therefore a minor during the 2019-2020, 2020-2021and 2021-2022 school years.  Attached hereto as **Exhibit 5** is a copy of J.N.'s 2020-2021 IEP.

**M.M.**

47. Plaintiff M.M. was eighteen years old in March of 2020.

48. Plaintiff M.M. is diagnosed with autism, a recognized disability under the IDEA.

49. Plaintiff Lisa Mattessich is the parent and natural guardian of M.M.

50. At all relevant times herein, Plaintiffs Lisa Mattessich and M.M. resided in Manasquan, Monmouth County, New Jersey.

51. At all relevant times herein, Plaintiffs resided in Manasquan Public School District.

52. Plaintiff M.M. was eighteen years old in March of 2020 when Manasquan Public School District ceased in-person instruction and services due to the COVID-19 pandemic, and was therefore eligible for special education under IDEA. Attached hereto as **Exhibit 6** is a copy of M.M.'s 2020-2021 IEP.

**K.D.**

53. Plaintiff K.D. was sixteen years old in March of 2020.

54. Plaintiff K.D. is a child diagnosed with a recognized disability under the IDEA.

55. Plaintiff Nicole Tierney is the parent and natural guardian of K.D.

56. At all relevant times herein, Plaintiffs Nicole Tierney and K.D. resided in Belford, Monmouth County, New Jersey.

57. At all relevant times herein, Plaintiffs resided in Middletown Township Public School District.

58. Plaintiff K.D. was sixteen years old in March of 2020 when Middletown Township Public

School District ceased in-person instruction and services due to the COVID-19 pandemic, and was therefore a minor during the 2019-2020, 2020-2021and 2021-2022 school years. Attached hereto as **Exhibit 7** is a copy of K.D.'s 2019-2020 IEP.

## S.C.

59.   Plaintiff S.C. was sixteen years old in March of 2020.

60.   Plaintiff S.C. is a child diagnosed with a recognized disability under the IDEA.

61.   Plaintiff Dorene Camp is the parent and natural guardian of S.C.

62.   At all relevant times herein, Plaintiffs and resided in Cape May County, New Jersey.

63.   Plaintiffs resided in Cape May Township Public School District during the 2019-2020 school year and Lower Cape May Regional School District during the 2020-2021 school year.

64.   Plaintiff S.C. was sixteen years old in March of 2020 when Middle Township Public School District ceased in-person instruction and services due to the COVID-19 pandemic.

65.   Plaintiff S.C. was seventeen years old by the time she moved to Lower Cape May Regional School District in September 2020.

66.   Therefore, Plaintiff S.C. was a minor during the 2019-2020 and 2020-2021 school years. Attached hereto as **Exhibit 8** is a copy of S.C.'s 2020-2021 IEP.

## C.C.

67.   Plaintiff C.C. was fifteen years old in March of 2020.

68.   Plaintiff C.C. is a child diagnosed with autism, a recognized disability under the IDEA.

69.   Plaintiff Dorene Camp is the parent and natural guardian of C.C.

70.   At all relevant times herein, Plaintiffs Dorene Camp and C.C resided in Cape May County, New Jersey.

71.   Plaintiffs resided in Cape May Township Public School District during the 2019-2020 school

year and Lower Cape May Regional School District during the 2020-2021 school year.

72. Plaintiff C.C. was fifteen years old in March of 2020 when Middle Township Public School District ceased in-person instruction and services due to the COVID-19 pandemic.

73. C.C. was sixteen years old by the time she moved to Lower Cape May Regional School District in September 2020.

74. Therefore, she was a minor during the 2019-2020 and 2020-2021 school years. Attached hereto as **Exhibit 9** is a copy of C.C.'s 2020-2021 IEP.

### T.C.

75. Plaintiff T.C. was eleven years old in March of 2020.

76. Plaintiff T.C. is a child diagnosed with a recognized disability under the IDEA.

77. Plaintiff Dorene Camp is the parent and natural guardian of T.C.

78. At all relevant times herein, Plaintiffs Dorene Camp and T.C. resided in Cape May County, New Jersey.

79. Plaintiffs resided in the Cape May Township Public School District during the 2019-2020 school year and Lower Cape May Regional School District during the 2020-2021 school year.

80. Plaintiff T.C. was eleven years old in March of 2020 when Middle Township Public School District ceased in-person instruction and services due to the COVID-19 pandemic.

81. T.C. was twelve years old by the time he moved to Lower Cape May Regional School District in September 2020.

82. Therefore, T.C. was a minor during the 2019-2020, 2020-2021 and 2021-2022 school years. Attached hereto as **Exhibit 10** is a copy of T.C.'s 2020-2021 IEP.

### M.D.

83. Plaintiff M.D. was sixteen years old in March of 2020.

84. Plaintiff M.D. is a child diagnosed with a recognized disability under the IDEA.

85. Plaintiff Lisa Driscoll is the parent and natural guardian of M.D.

86. At all relevant times herein, Plaintiffs Lisa Driscoll and M.D. resided in Manasquan, Monmouth County, New Jersey.

87. At all relevant times herein, Plaintiffs resided in Matawan-Aberdeen Regional School District School District, attending Rumson-Fair Haven Regional High School.

88. Plaintiff M.D. was sixteen years old in March of 2020 when Rumson-Fair Haven Regional High School ceased in-person instruction and services due to the COVID-19 pandemic, and was therefore a minor during the 2019-2020 and 2020-2021 school years. Attached hereto as **Exhibit 11** is a copy of M.D.'s 2020-2021 IEP.

## K.L.

89. Plaintiff K.L. was three years old in March of 2020.

90. Plaintiff K.L. is a child diagnosed with a recognized disability under the IDEA.

91. Plaintiff Diana LoGrasso is the parent and natural guardian of K.L.

92. At all relevant times herein, Plaintiffs Diana LoGrasso and K.L. resided in Belford, Monmouth County, New Jersey.

93. At all relevant times herein, Plaintiffs resided in Middletown Township Public School District.

94. Plaintiff K.L. was three years old in March of 2020 when Middletown Township Public School District ceased in-person instruction and services due to the COVID-19 pandemic, and was therefore a minor during the 2019-2020, 2020-2021 and 2021-2022 school years. Attached hereto as **Exhibit 12** is a copy of K.L.'s 2020-2021 IEP.

**J.L.**

95.  Plaintiff J.L was three years old in March of 2020.

96.  Plaintiff J.L. is a child diagnosed with a recognized disability under the IDEA.

97.  Plaintiff Kelly Osterman (a/k/a Kelly Osterman-LaFrance) is the parent and natural guardian of J.L.

98.  At all relevant times herein, Plaintiffs Kelly Osterman and J.L. resided in Tom River, Ocean County, New Jersey.

99.  At all relevant times herein, Plaintiffs resided in Toms River Regional School District.

100. Plaintiff J.L. was three years old in March of 2020 when Toms River Regional School District ceased in-person instruction and services due to the COVID-19 pandemic, and was therefore a minor during the 2019-2020, 2020-2021 and 2021-2022 school years.  Attached hereto as **Exhibit 13** is a copy of J.L.'s 2019-2020 IEP.

**N.D.**

101. Plaintiff N.D. was fifteen years old in March of 2020.

102. Plaintiff N.D. is a child diagnosed with a recognized disability under the IDEA.

103. Plaintiff Tina DeLorenzo is the parent and natural guardian of N.D.

104. At all relevant times herein, Plaintiffs Tina DeLorenzo and N.D. resided in Audubon, Camden County, New Jersey.

105. At all relevant times herein, Plaintiffs resided in Audubon Public School District.

106. Plaintiff N.D. was fifteen years old in March of 2020 when Audubon Public School District ceased in-person instruction and services due to the COVID-19 pandemic, and was therefore a minor during the 2019-2020, 2020-2021 and 2021-2022 school years.  Attached hereto as **Exhibit 14** is a copy of N.D.'s 2019-2020 IEP.

**A.K.**

107. Plaintiff A.K. was six years old in March of 2020.

108. Plaintiff A.K. is a child diagnosed with a recognized disability under the IDEA.

109. Plaintiff Munira Edmonds is the parent and natural guardian of A.K.

110. At all relevant times herein, Plaintiffs Munira Edmonds and A.K. resided in Camden County, New Jersey.

111. At all relevant times herein, Plaintiffs resided in Camden City School District.

112. Plaintiff A.K. was six years old in March of 2020 when the LEAP Academy Charter School, a financial subsidiary of Camden City School District (Camden City Public Schools) ceased in-person instruction and services due to the COVID-19 pandemic, and therefore a minor during the 2019-2020, 2020-2021 and 2021-2022 school years. Attached hereto as **Exhibit 15** is a copy of A.K.'s 2020-2021 IEP.

113. Students B.A., K.G., A.M., D.K., J.N., M.M., K.D., S.C., C.C., T.C., M.D., K.L., J.L., N.D., and A.K. are children with disabilities, as defined by 20 U.S.C. § 1401(3), and therefore, are entitled to receive a free and appropriate public education ("FAPE") and related services from the NJDOE and School District Defendants.

114. At all times relevant herein, Plaintiffs resided and continue to reside in the state of New Jersey.

115. B.A., K.G., A.M., D.K., J.N., M.M., K.D., S.C., C.C., T.C., M.D., K.L., J.L., N.D., and A.K. are not expressly named within this complaint because of privacy provisions in IDEA and the Family Education Rights Privacy Act ("FERPA"), 20 U.S.C. §1232.

116. Defendant NJDOE is, and was at all material times, a New Jersey state educational agency ("SEA") that manages and controls the educational affairs of New Jersey public schools.

117. School District Defendants are LEAs as defined by 14 U.S.C. §1401 and 34 C.F.R. § 300.28 responsible for providing Plaintiffs with a FAPE.

118. The State of New Jersey and the NJDOE have established policies and procedures, both written and informal, concerning the implementation of IDEA.

119. The NJDOE receives funding pursuant to IDEA, 20 U.S.C. § 1412, the ADA, and § 504, and therefore must comply with the statutes' provisions.

120. Defendant NJDOE contains the Office of Special Education Programs ("OSEP"), which is responsible for overseeing the provision of special education in New Jersey.

121. Defendant NJDOE's principal place of business is in Trenton, New Jersey.

122. Defendant Audubon Public School District is the LEA as defined by 14 U.S.C. §1401 and 34 C.F.R. § 300.28 responsible for providing N.D. with a FAPE.

123. Defendant Camden City School District (Camden City Public Schools) is the LEA as defined by 14 U.S.C. §1401 and 34 C.F.R. § 300.28 responsible for providing A.K. with a FAPE.

124. Defendant Camden County School District is the LEA as defined by 14 U.S.C. §1401 and 34 C.F.R. § 300.28 responsible for providing A.K. and N.D. with a FAPE.

125. Defendant Cape May County Public School District is the LEA as defined by 14 U.S.C. §1401 and 34 C.F.R. § 300.28, responsible for providing S.C., C.C., and T.C. with a FAPE.

126. Defendant Essex County Public School District is the LEA as defined by 14 U.S.C. §1401 and 34 C.F.R. § 300.28, responsible for providing B.A. and L.L. with a FAPE.

127. Defendant Gloucester County Public School District is the LEA as defined by 14 U.S.C. §1401 and 34 C.F.R. § 300.28, responsible for providing A.M. with a FAPE.

128. Defendant Lower Cape May Regional School District is the LEA as defined by 14 U.S.C. §1401 and 34 C.F.R. § 300.28, responsible for providing S.C., C.C., and T.C. with a FAPE.

129. Defendant Manasquan Public School District is the LEA as defined by 14 U.S.C. §1401 and 34 C.F.R. § 300.28, responsible for providing M.M. with a FAPE.

130. Defendant Matawan-Aberdeen Regional School District is the LEA as defined by 14 U.S.C. §1401 and 34 C.F.R. § 300.28, responsible for providing K.G. with a FAPE.

131. Defendant Middle Township Public School District is the LEA as defined by 14 U.S.C. §1401 and 34 C.F.R. § 300.28, responsible for providing S.C., C.C., and T.C. with a FAPE.

132. Defendant Middletown Township Public School District is the LEA as defined by 14 U.S.C. §1401 and 34 C.F.R. § 300.28, responsible for providing D.K., K.D. and K.L. with a FAPE.

133. Defendant Monmouth County Public School District is the LEA as defined by 14 U.S.C. §1401 and 34 C.F.R. § 300.28, responsible for providing K.G., D.K., M.M., K.D., M.D. and K.L. with a FAPE.

134. Defendant Morris County Public School District is the LEA as defined by 14 U.S.C. §1401 and 34 C.F.R. § 300.28, responsible for providing J.N. with a FAPE.

135. Defendant Ocean County Public School District is the LEA as defined by 14 U.S.C. §1401 and 34 C.F.R. § 300.28, responsible for providing J.L. with a FAPE.

136. Defendant Roxbury Township School District is the LEA as defined by 14 U.S.C. §1401 and 34 C.F.R. § 300.28, responsible for providing J.N. with a FAPE.

137. Defendant Rumson-Fair Haven Regional High Schools is the LEA as defined by 14 U.S.C. §1401 and 34 C.F.R. § 300.28, responsible for providing M.D. with a FAPE.

138. Defendant Toms River Regional Schools is the LEA as defined by 14 U.S.C. §1401 and 34 C.F.R. § 300.28, responsible for providing J.L. with a FAPE.

139. Defendant Washington Township School District is the LEA as defined by 14 U.S.C. §1401 and 34 C.F.R. § 300.28, responsible for providing A.M. with a FAPE.

140. Defendant West Orange Public Schools is the LEA as defined by 14 U.S.C. §1401 and 34 C.F.R. § 300.28, responsible for providing B.A. with a FAPE.

141. The NJDOE receives funding pursuant to IDEA, 20 U.S.C. § 1412, the ADA, and § 504, and therefore must comply with the statutes' provisions.

142. Defendant Audubon Public School District's primary place of business is Audubon, New Jersey.

143. Defendant Camden City School District's primary place of business is Camden, New Jersey.

144. Defendant Camden County School District's primary place of business is Camden, New Jersey.

145. Defendant Cape May County School District's primary place of business is Cape May County, New Jersey.

146. Defendant Essex County Public School District's primary place of business is Essex County, New Jersey.

147. Defendant Gloucester County Public School District's primary place of business is Gloucester County, New Jersey.

148. Defendant Lower Cape May Regional School District's primary place of business is Lower Township, New Jersey.

149. Defendant Manasquan Public School District's primary place of business is Manasquan, New Jersey.

150. Defendant Matawan-Aberdeen Regional School District's primary place of business is Aberdeen, New Jersey.

151. Defendant Middle Township Public School District's primary place of business is Cape May County, New Jersey.

152.  Defendant Middletown Township Public School District's primary place of business is Monmouth County, New Jersey.

153.  Defendant Monmouth County Public School District's primary place of business is Monmouth County, New Jersey.

154.  Defendant Morris County Public School District's primary place of business is Morris County, New Jersey.

155.  Defendant Ocean County Public School District's primary place of business is Ocean County, New Jersey.

156.  Defendant Roxbury Township Public School District's primary place of business is Roxbury Township, New Jersey.

157.  Defendant Rumson-Fair Haven Regional High Schools' primary place of business is Rumson, New Jersey.

158.  Defendant Toms River Regional School District's primary place of business is Toms River, New Jersey.

159.  Defendant Washington Township School District's primary place of business is Washington Township, New Jersey.

160.  Defendant West Orange Public Schools' primary place of business is West Orange, New Jersey.

161.  Plaintiffs reside in Defendants' school districts.

162.  The NJDOE is responsible for ensuring all LEAs provide a FAPE to all New Jersey students with disabilities pursuant to statutory rights arising under IDEA, N.J.A.C., N.J.S.A., N.J.C.R.A., N.J.L.A.D., §1983, the New Jersey Constitution, the ADA, and § 504 and their implementing regulations.

163. Angelica Allen-McMillan, Ed.D. is the Commissioner of Education for the State of New Jersey.

164. Ave Altersitz is the Superintendent of Gloucester County School District.

165. Dr. J. Scott Cascone is the Superintendent of West Orange Public Schools.

166. Joseph Castellucci is the Superintendent of Lower Cape May Public School District.

167. Andrew Davis is the Superintendent of Audubon Public School District.

168. Dr. Judith DeStefano-Anen is the Acting Executive County Superintendent of Schools in Cape May County in New Jersey.

169. Thomas Gialanella is the Superintendent of Toms River Regional School District.

170. Debra Gulick is the Superintendent of Rumson-Fair Haven Public School District.

171. Roger Jinks is the Interim Executive County Superintendent for Morris County Public Schools.

172. Dr. Frank Kasyan is the Superintendent of Manasquan Public School District.

173. Joseph Majka is the Superintendent of Matawan-Aberdeen Regional School District.

174. Katrina McCombs is the Superintendent of Camden City School District.

175. Jeffrey Mohre is the Superintendent of Washington Township School District.

176. Charles Muller is the Executive County Superintendent for Ocean County Public Schools.

177. Dr. Lovell Pugh-Bassett is the Superintendent of Camden County Department of Education.

178. Loretta Radulic is the Superintendent of Roxbury Township School District.

179. Dr. Lester W. Richens is the Interim Executive County Superintendent of Monmouth County Public Schools.

180. Dr. David Salvo is the Superintendent of Middle Township Public School District.

181. Mary Ellen Walker is the Superintendent of Middletown Township Public School District.

182. Joseph S. Zarra is the Superintendent of Essex County Public School District.

## FACTUAL ALLEGATIONS

183. Plaintiffs bring this action under IDEA, the ADA, § 504, N.J.A.C., N.J.L.A.D., N.J.S.A., N.J.C.R.A., RICO, and § 1983 seeking declaratory and injunctive relief to enjoin the NJDOE, the School District Defendants and other similarly situated LEAs from violating their procedural and substantive rights under IDEA, N.J.A.C., N.J.L.A.D., N.J.S.A., N.J.C.R.A., § 504, and § 1983.

184. The primary mechanism for ensuring implementation of IDEA's mandate of a FAPE is the Individualized Education Plan ("IEP"), as defined by 20 U.S.C. §§1401 (14) and 1414(d).

185. An IEP is a written statement, prepared for every child with a disability, that sets forth the special education and related services, supplementary aids and services, and program modifications or supports to be provided to the child, or on behalf of the child, to enable that child to achieve a comprehensive set of annual goals and short-term objectives.

186. In response to the COVD-19 pandemic, the United States Department of Education ("U.S. DOE") published two guidance documents to school districts in March of 2020: a Supplemental Fact Sheet and a Questions and Answers document. See **Exhibits 16 and 17**.

187. The Fact Sheet stated: "To be clear: ensuring compliance with the Individuals with Disabilities Education Act (IDEA), Section 504 of the Rehabilitations Act (Section § 504), and Title II of the Americans with Disabilities Act should not prevent any school from offering educational programs through distance instruction." See **Exhibit 16.**

188. The Questions and Answers sheet stated that each school would have to "make an individualized determination whether and to what extent compensatory services may be needed, consistent with applicable requirements, including to make up for any skills that

may have been lost." See **Exhibit 17**.

189. The U.S. DOE did not provide any waivers of IDEA to any state. See **Exhibit 17.**

190. On March 16, 2020, Governor Phil Murphy signed Executive Order No. 104, indefinitely closing all public and private preschool, elementary and secondary schools in New Jersey. See **Exhibit 18.**

191. On March 13, 2020, Commissioner of Education, Lamont O. Repollet, Ed.D., issued a memo regarding school closures that stated "the decision to reopen schools lies squarely with Governor Murphy. We do not intend to assess the reopening of schools until at least April 17, 2020, at the earliest." See **Exhibit 19.**

192. On March 23, 2020, NJDOE issued an early guidance titled "Updates and Frequently Asked Questions Related to COVID-19 School Closures." See **Exhibit 20**.

193. It echoed the federal guidance, and tasked IEP teams with making "compensatory services" decisions. "IEP teams may need to consider compensatory services when students return to school, and IEPs may need to be adjusted accordingly." *Id***.**

194. The IEP team should determine the amount of compensatory related services students with IEPs may require, on a case-by-case basis, when school resumes." *Id***.**

195. On April 1, 2020, the New Jersey legislature modified N.J.A.C. 6A:14 to permit school districts or other educational agencies to deliver related services to students with disabilities using electronic communications, virtual, remote, or other online platforms during extended public health-related school closures. See **Exhibit 21**, Telehealth Provision.

196. The rule modifications to Special Education Regulations, N.J.A.C. 6A:14 state:

> Each district board of education is responsible for providing a system of free, appropriate special education and related services to students with disabilities age three through 21 which shall ...be provided through electronic communications, virtual, or other online platforms as appropriate

and AS REQUIRED BY A STUDENT'S IEP, during an extended public-health related school closure. N.J.A.C. 6A:14-1.1(d)(7). *Id.* (emphasis added)

197. The rule modifications state, "During an extended public health related school closure, related services may be provided through telemedicine and telehealth or through electronic communications, which include virtual, remote, or other online platforms, as appropriate and as required by a student's IEP to the greatest extent possible." See **Exhibit 21.**

198. On April 3, 2020, NJDOE issued a memo titled "Providing Special Education and Related Services to Students with Disabilities During Extended School Closures as a Result of COVID-19." See **Exhibit 22**.

199. The April 3, 2020 Memo stated:

> At its April 1, 2020 meeting, the State Board of Education adopted temporary rule modifications to Chapter 14 of New Jersey Administrative Code, which governs the delivery of special education and related services to students with disabilities. The State Board, acting pursuant to Executive Order No. 103 (Murphy, 2020), adopted temporary regulations that allow school districts and educational agencies to deliver special education and related services … Prior to the Board's action, the regulations did not permit school districts and educational agencies to deliver related services to students with disabilities through the use of telehealth, telemedicine, electronic, online or virtual platforms. … It is important to note that these rule modifications alone do not ensure that school districts and educational agencies will meet their legal obligation to provide FAPE. … However, the modifications do not relieve school districts and educational agencies of the responsibility to ensure that the services implemented are properly individualized and those most appropriate for a student with disabilities. … Specific questions about a student's IEP and its implementation should be addressed by the student's IEP team, which includes the student's parent(s)/guardians(s). *Id.*

200. In a memorandum issued April 30, 2020, NJDOE declared that it has become aware of instances in which school districts are requiring parents or guardians to waive certain legal rights or give written consent for services as a condition for receipt of special education or

related services.  See **Exhibit 23.**

201.  In its memorandum, the NJDOE expressly stated that these practices violate the IDEA and

   NJDOE regulations, and that requiring the execution of a waiver or release of present or

   future claims as a condition to implement a student's IEP is prohibited.  *Id.*

202.  In a June 12, 2020, Broadcast "Guidance for Summer Learning Programs," the New Jersey

   Division of Student Services stated:

> With regard to ESY [Extended School Year] services for students with
> disabilities, school districts must implement services to the greatest extent
> possible, including related services, in accordance with guidance from the
> United States Department of Education (U.S. DOE). School districts may
> consider including students with disabilities who typically do not have ESY
> in their IEPs in new summer programs designed for all students to address
> learning loss that may have resulted from the extended school closure due
> to COVID-19. So, if your child was NOT deemed eligible for ESY
> (Extended School Year) previously, but was offered ESY later this school
> year, it may be part of COVID compensatory services. See **Exhibit 24**.

203.   ESY programs usually operate in July and August.

204.  According to the NJDOE's guidance, school districts are not required to transition to in-

   person ESY, as the discretion is left to each individual school district. *Id*.

205.  If a school district decides to provide any kind of in-person instruction during ESY, it must

   submit an attestation to the NJDOE confirming that it will follow all applicable standards.

206.  This attestation must be submitted 24 hours before the anticipated opening date. The NJDOE

   also reminded school districts to consider educational equity, including access to technology

   and the rights of students with disabilities under the IDEA. See **Exhibit 24.**

207.  On June 26, 2020, the Governor issued "The Road Back Plan," stating:

> IEP teams should review student data/student progress to determine
> whether critical skills were lost during the period in which remote
> instruction was being provided to students and determine the need for
> additional services to address learning loss. IEP teams should consider the

impact of missed services on student progress towards meeting IEP goals and objectives, and determine if additional or compensatory services are needed to address regression and recoupment of skills within a reasonable length of time. See **Exhibit 25**.

208. On July 24, 2020, the NJDOE issued Guidance Clarifying Reopening and Fulltime Remote Learning Options for Families. See **Exhibit 26**.

209. If an IEP team meeting is requested to discuss compensatory education, the school district must respond and convene a meeting within 20 calendar days. N.J.A.C. 14-2.3(h)(5). See **Exhibit 26**.

210. On January 19, 2021, Gov. Phil Murphy signed Executive Order No. 214 implementing three new policies for the 2020-2021 academic year. See **Exhibit 27**, EO-214.

211. The policies allow for more flexibility and understanding due to the unprecedented times caused by the ongoing COVID-19 pandemic, particularly for high school seniors, teacher evaluations, and substitute teachers. See **Exhibit 27.**

212. On March 23, 2021, NJDOE issued the Updates Guidance on Reopening Schools.

213. This new NJDOE guidance document updates NJDOE COVID-19 public health recommendations for school settings and is intended primarily for use by local health departments (LHDs) in assessing risks and school-related responses. See **Exhibit 28**.

214. The NJDOE received approximately $1,006,164,858 in IDEA funds for the 2021 school year, to be distributed to each named alleged County Enterprise at a designated amount. See **Exhibit 29**.

215. Each alleged enterprise, including the School District Enterprises, received significant flow through funding through the IDEA; for instance, Camden County Schools received approximately $52,998,276, to be further allocated to the LEAs within its jurisdiction. See **Exhibit 29**.

216. Upon information and belief, the County Enterprises distributed IDEA funds to the School District Enterprises named herein, even though the County Enterprises and the NJDOE knew or reasonably should have known that a FAPE was not being offered to special education students during the shutdown. See **Exhibit 30**.

217. **Exhibit 30** shows IDEA allocations by School District, organized by County.

218. After the closure of in-person instruction, on July 1, 2020, the U.S. DOE approved the NJDOE's "application for Federal Fiscal Year (FFY) funds under Part B of the Individuals with Disabilities Act (IDEA Part B)." See **Exhibit 31**.

219. Attached to the July 1, 2020 letter are the assurances made by the NJDOE regarding its "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." See **Exhibit 31**.

220. NJDOE assured the U.S. DOE that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." See **Exhibit 31**.

221. NJDOE assured the U.S. DOE that "[t]he Chief Executive Officer of a State or designee of the officer shall ensure that an interagency agreement or other mechanism for interagency coordination is in effect between each public agency described in subparagraph (b) of 34 § CFR 300.154 and the State education agency, in order to ensure that the services described in paragraph (b)(1)(i) that are needed to ensure a free appropriate public education are provided, include the provision of such services during the pendency of any dispute under § 300.154(a)(3)." See **Exhibit 31**.

222. Upon information and belief, NJDOE offered false assurances to the U.S. DOE again on or about March 8, 2021, for IDEA funds for the 2021 school year. See **Exhibit 32**.

**B.A.**

223. Plaintiff B.A. was five years old during the 2019-2020 school year.

224. Plaintiff Jennica Carmona is the parent and natural guardian of B.A.

225. At all relative times herein, Plaintiffs resided in the West Orange Public School District.

226. B.A. is eligible for special education from West Orange Public Schools due to an "Other Health Impairment" and Attention Deficit Hyperactivity Disorder. See **Exhibit 1**.

227. West Orange Public School District did not prepare an IEP for B.A. for the 2019-2020 and 2020-2021 school years.

228. West Orange Public School District created an IEP for B.A. in September of 2021 for the 2021-2022 school year.  See **Exhibit 1**.

229. According to B.A.'s 2021-2022 IEP, B.A. receives six hours of Classroom Group Assistant services five times per week. *Id.*

230. B.A. also requires individual attention daily, and benefits from additional support in his social emotional and behavioral development. *Id.*

231. B.A. received at-home virtual instruction from March 16, 2020 through June 12, 2020 and during the 2020-2021 school year.

232. Upon information and belief, the school districts' failure to provide B.A. with a 2019-2020 and 2020-2021 IEP or any appropriate services prior to September of 2021, B.A. was denied a FAPE by the school district.

233. Pursuant to N.J.A.C. 6:A14-2.7(d), Jennica Carmona sent NJDOE a Ten-Day Notice of the Parent's intention to unilaterally self-cure the failure of NJDOE to provide a FAPE for B.A.

234. Jennica Carmona brought a Due Process Complaint against NJDOE asserting the denial of FAPE, as well as B.A.'s pendency rights (20 U.S.C. § 1415(j) and 34 CFR § 300.518) and

requested an Independent Education Evaluation ("IEE") for B.A. be conducted at public expense (20 U.S.C. § 1415(b)(1), (d)(2)(A), and 34 C.F.R. § 300.502).

235. Plaintiff Jennica Carmona is not required to exhaust her administrative due process remedies under 20 U.S.C. § 1415(i)(2), on behalf of B.A., because their claims fall within the exceptions specified by law.

236. Plaintiff Jennica Carmona has neither waived nor abandoned any claims or arguments under IDEA or state law.

## **K.G.**

237. K.G. is eligible for special education from Matawan-Aberdeen Regional School District due to her autism. See **Exhibit 2**.

238. K.G.'s autism adversely affects her educational abilities and performance because she requires prompting, repetition, reteaching, and a multi-sensory approach to learning. *Id.*

239. She struggles with receptive language, expressive language, pragmatic language, self-modulation, visual motor skills, visual perceptual skills, and behavioral issues. *Id.*

240. According to K.G.'s 11/22/2019 IEP, K.G. received specialized academic instruction, accommodations, one thirty-minute session of individual speech language therapy per week, one thirty-minute session of group speech language therapy, one thirty-minute session of occupational therapy per week, an individual aide for six and a half hours per day, specialized transportation, and extended school year services. *Id.*

241. K.G.'s November 22, 2019 IEP states that "she often has difficulty remaining on task. These weaknesses interfere with K.G.'s ability to fully participate and progress within the education program." *Id.*

242. K.G.'s November 22, 2019 IEP does not state whether her instruction and/or services will

be in-person or virtual.

243. K.G. requires in-person specialized academics, accommodations, speech language therapy, occupational therapy, an individual aide, and extended school year services to accommodate her disability so she can receive a FAPE. *Id.*

244. On March 16, 2020, Matawan-Aberdeen Regional District School ceased all in-person education due to the COVID-19 pandemic.

245. As a result of the March 16, 2020 closure of Matawan-Aberdeen Regional District School, School District Defendants altered K.G.'s IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or the proper participation of parents.

246. The alterations and concomitant placement of K.G. at home receiving virtual instruction and services was procedurally defective because Matawan-Aberdeen Regional District School:

   a.  Altered K.G.'s IEP to complete virtual instruction without prior written notice or any written notice;

   b.  Altered K.G.'s IEP without the meaningful participation of her parents;

   c.  Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing K.G.'s placement from in-person instruction and services to home placement with virtual instruction and services;

   d.  Failed to ensure that K.G. could access a free and appropriate public education on the same level as her non-disabled peers.

247. Upon information and belief, during the 2019-2020 school year, from March 16, 2020 through June 24, 2020, K.G. attended school at home with virtual instruction and services.

248. Upon information and belief, during the 2019-2020 extended school year, from July 6, 2020

through August 10, 2020, K.G. attended school at home receiving virtual instruction and services.

249. Upon information and belief, during the 2020-2021 school year, K.G. attended school at home with virtual instruction until March of 2021, when a hybrid option was offered.

250. Pursuant to N.J.A.C. 6:A14-2.7(d), Kerry Gallagher sent NJDOE a Ten-Day Notice of the Parent's intention to unilaterally self-cure the failure of NJDOE to provide a FAPE for K.G.

251. Kerry Gallagher brought a Due Process Complaint against NJDOE and Matawan-Aberdeen Regional District School asserting the denial of FAPE, as well as the student's pendency rights (20 U.S.C. § 1415(j) and 34 CFR § 300.518) and requested an IEE for K.G be conducted at public expense (20 U.S.C. § 1415(b)(1), (d)(2)(A), and 34 C.F.R. § 300.502).

252. Plaintiff Kerry Gallagher is not required to exhaust her administrative due process remedies under 20 U.S.C. § 1415(i)(2), on behalf of K.G., because their claims fall within the exceptions specified by law.

253. Plaintiff Kerry Gallagher has neither waived nor abandoned any claims or arguments under IDEA or state law.

### **A.M.**

254. A.M. is eligible for special education from Washington Township School District due to multiple disabilities such as accommodative esotropia, autism, "other health impairment" and cognitive impairment.  See **Exhibit 3**.

255. A.M.'s disabilities significantly impact his intellectual functioning and adaptive behavior. *Id.*

256. According to A.M.'s March 3, 2020 IEP, A.M. receives specialized academics, accommodations, fifteen twenty-minute sessions of speech per year, eight thirty-minute

sessions of physical therapy per year, one ten-minute consultation with a vision specialist per year, twenty thirty-minute sessions of occupational therapy per year, five and a half hours of one-to-one aide services per day, extended school year services, and specialized transportation services. *Id.*

257. A.M.'s IEP states that he has the "need for hands on and interactive activities." *Id.*

258. A.M.'s March 3, 2020 IEP does not state whether his instruction and/or services will be in-person or virtual.

259. In March, 2020, Washington Township School District ceased all in-person education due to the COVID-19 pandemic.

260. As a result of the March 13, 2020 closure of Washington Township School District, A.M.'s school altered his IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or participation of parents.

261. The alterations and concomitant placement of A.M. at home receiving virtual instruction and services was procedurally defective because Washington Township School District:

   a. Altered A.M.'s IEP to complete virtual instruction without prior written notice or any written notice;

   b. Altered A.M.'s IEP without the meaningful participation of his parents;

   c. Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing A.M.'s placement from in-person instruction and services to home placement with virtual instruction and services;

   d. Failed to ensure that A.M. could access a free and appropriate public education on the same level as his non-disabled peers.

262. During the 2019-2020 school year, from March 13, 2020 through June 24, 2020, A.M.

attended school at home receiving virtual instruction and services.

263. During the 2019-2020 extended school year, from July 6, 2020 through July 30, 2020, A.M. attended school at home receiving virtual instruction and services.

264. Upon information and belief, during the 2020-2021 school year, A.M. attended school at home with virtual instruction and services until March of 2021, when a hybrid option was offered by Washington Township School District.

265. Pursuant to N.J.A.C. 6:A14-2.7(d), Gabrielle Kinder sent NJDOE a Ten-Day Notice of the Parent's intention to unilaterally self-cure the failure of NJDOE to provide a FAPE for A.M.

266. Gabrielle Kinder brought a Due Process Complaint against NJDOE asserting the denial of FAPE, as well as A.M.'s pendency rights (20 U.S.C. § 1415(j) and 34 CFR § 300.518) and requested an IEE be conducted for A.M. at public expense (20 U.S.C. § 1415(b)(1), (d)(2)(A), and 34 C.F.R. § 300.502).

267. Plaintiff Gabrielle Kinder is not required to exhaust her administrative due process remedies under 20 U.S.C. § 1415(i)(2), on behalf of A.M., because their claims fall within the exceptions specified by law.

268. Plaintiff Gabrielle Kinder has neither waived nor abandoned any claims or arguments under IDEA or state law.

**D.K.**

269. D.K. is eligible for special education from Middletown Township Public School District due to a classification as "other health impaired." See **Exhibit 4**.

270. Due to his disability, D.K. has limited strength, vitality, or alertness, including a heightened alertness with respect to the educational environment, due to chronic or acute health problems. *Id.*

271. According to D.K.'s February 3, 2020 IEP, D.K. received specialized academic instruction, accommodations, one thirty-minute session of group counseling per week, and two fifteen-minute sessions of individual counseling per month. *Id.*

272. D.K.'s February 3, 2020 IEP does not state whether his instruction and/or services will be in-person or virtual.

273. D.K.'s February 3, 2020 IEP requires direct specialized academic instruction, accommodations, and counseling services to accommodate his disability so he can receive a FAPE. *Id.*

274. On March 13, 2020, Middletown Township Public School District ceased all in-person education due to the COVID-19 pandemic.

275. As a result of the March 13, 2020 closure of Middletown Township Public School District schools, Middletown Township Public School District altered D.K.'s IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or participation of parents.

276. The alterations and concomitant placement of D.K. at home receiving virtual instruction and services was procedurally defective because Middletown Township Public School District:

　　a.　Altered D.K.'s IEP to complete virtual instruction without prior written notice or any written notice;

　　b.　Altered D.K.'s IEP without the meaningful participation of his parents;

　　c.　Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing D.K.'s placement from in-person instruction and services to home placement with virtual instruction and services;

　　d.　Failed to ensure that D.K. could access a free and appropriate public education on

33

the same level as his non-disabled peers.

277. During the 2019-2020 school year, from March 13, 2020 through June 18, 2020, D.K. attended school at home receiving virtual instruction and services.

278. Upon information and belief, during the 2020-2021 school year, D.K. attended school at home with virtual instruction and services until March of 2021, when a hybrid option was offered by Middletown Township Public School District.

279. Pursuant to N.J.A.C. 6:A14-2.7(d), Angelle Kursar sent NJDOE a Ten-Day Notice of the Parent's intention to unilaterally self-cure the failure of NJDOE to provide a FAPE for D.K.

280. Angelle Kursar brought a Due Process Complaint against NJDOE asserting the denial of FAPE, as well D.K.'s pendency rights (20 U.S.C. § 1415(j) and 34 CFR § 300.518) and requested an IEE for D.K. be conducted at public expense (20 U.S.C. § 1415(b)(1), (d)(2)(A), and 34 C.F.R. § 300.502).

281. Plaintiff Angelle Kursar is not required to exhaust her administrative due process remedies under 20 U.S.C. § 1415(i)(2), on behalf of D.K., because their claims fall within the exceptions specified by law.

282. Plaintiff Angelle Kursar has neither waived nor abandoned any claims or arguments under IDEA or state law.

## J.N.

283. J.N. is eligible for special education from Roxbury Township School District due to autism. See **Exhibit 5**.

284. As a result of J.N.'s autism, J.N. has global developmental impairments that adversely affect his educational abilities and performance. *Id.*

285. His multiple disabilities significantly impact intellectual functioning and adaptive behavior.

*Id.*

286. According to J.N.'s March 17, 2020 IEP, J.N. received special academic instruction, accommodations, thirty-minutes of individual occupational therapy per week, thirty-minutes of group occupational therapy per week, thirty-minutes of individual physical therapy per week, thirty-minutes of group physical therapy per week, and thirty-minutes of individual speech language therapy twice per week.

287. J.N.'s IEP states that he "requires extensive, repeated, individualized instruction and support." *Id.*

288. J.N.'s March 17, 2020 IEP does not state whether this instruction will be in-person or virtual.

289. J.N.'s IEP requires direct speech language therapy, physical therapy, occupational therapy, academic support, and special education to accommodate his disability so he can receive a FAPE. *Id.*

290. On March 13, 2020, Roxbury Township School District ceased all in-person education due to the COVID-19 pandemic.

291. As a result of the March 13, 2020 closure of Roxbury Township School District, Roxbury Township School District altered J.N.'s IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or participation of parents.

292. The alterations and concomitant placement of J.N. at home receiving virtual instruction and services was procedurally defective because Roxbury Township School District:

    a.    Altered J.N.'s IEP to complete virtual instruction without prior written notice or any written notice;

    b.    Altered J.N.'s IEP without the meaningful participation of his parents;

    c.    Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing J.N.'s placement from in-person instruction and services to home placement with virtual instruction and services;

    d.    Failed to ensure that J.N. could access a free and appropriate public education on the same level as his non-disabled peers.

293.  During the 2019-2020 school year, from March 13, 2020 through June 13, 2020, J.N. attended school at home receiving virtual instruction and services.

294.  During the 2020-2021 school year, J.N. attended school at home with virtual instruction and services until September 2020 when a hybrid option was offered to him.

295.  Pursuant to N.J.A.C. 6:A14-2.7(d), James Nazzaro sent NJDOE a Ten-Day Notice of the Parent's intention to unilaterally self-cure the failure of NJDOE to provide a FAPE for J.N.

296.  James Nazzaro brought a Due Process Complaint against NJDOE asserting the denial of FAPE, as well as J.N.'s pendency rights (20 U.S.C. § 1415(j) and 34 CFR § 300.518) and requested an IEE for J.N. be conducted at public expense (20 U.S.C. § 1415(b)(1), (d)(2)(A), and 34 C.F.R. § 300.502).

297.  Plaintiff James Nazzaro is not required to exhaust his administrative due process remedies under 20 U.S.C. § 1415(i)(2), on behalf of J.N., because their claims fall within the exceptions specified by law.

298.  Plaintiff James Nazzaro has neither waived nor abandoned any claims or arguments under IDEA or state law.

## **M.M.**

299.  M.M. is eligible for special education from Manasquan School Public District due to autism. See **Exhibit 6**.

300. As a result of M.M.'s autism, M.M. has global developmental impairments, self-injurious behaviors, and maladaptive behaviors that adversely affect his educational abilities and performance. *Id.*

301. M.M. struggles with functional academics, maladaptive behaviors, communication skills, and fine motor skills.

302. According to M.M.'s June 4, 2019 IEP, M.M. received specialized academics, accommodations, two thirty-minute sessions of occupational therapy per week, a personal aide for five and a half hours per day, thirty minutes of group speech language therapy per week, two thirty-minute sessions of individual speech language therapy per week, two thirty-minute sessions of physical therapy per week, three sessions of two-hour behavioral intervention services at home, four hours of behavioral intervention consultation per month, two thirty-minute sessions of occupational therapy per week, special transportation, and extended school year services.

303. M.M.'s IEP states that he "continues to be significantly distracted as he tends to attend to all stimuli, both visual and auditory within the school environment. This can lead to [M.M.] engaging with tasks in a 'frantic' manner." *Id.*

304. M.M.'s June 4, 2019 IEP does not state whether his instruction and/or services will be in-person or virtual.

305. M.M.'s June 4, 2019 IEP requires direct speech language therapy, physical therapy, academic support, occupational therapy, behavioral intervention services, extended school year services, and special education to accommodate his disability so he can receive a FAPE. *Id.*

306. On March 13, 2020, Manasquan Public School District ceased all in-person education due

to the COVID-19 pandemic.

307. As a result of the March 13, 2020 closure of Manasquan Public School District , Manasquan Public School District altered M.M.'s IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or participation of parents.

308. Upon information and belief, from March 2020 to September 2020, M.M. attended Harbor School in Manasquan School District. During this period, the Student received virtual instruction and services.

309. The alterations and concomitant placement of M.M. at home receiving virtual instruction and services was procedurally defective because Manasquan Public School District:

    a.    Altered M.M.'s IEP to complete virtual instruction without prior written notice or any written notice;

    b.    Altered M.M.'s IEP without the meaningful participation of his parents;

    c.    Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing M.M.'s placement from in-person instruction and services to home placement with virtual instruction and services;

    d.    Failed to ensure that M.M. could access a free and appropriate public education on the same level as his non-disabled peers.

310. Upon information and belief, during the 2019-2020 school year, from March 13, 2020 through June 19, 2020, M.M. attended school at home receiving virtual instruction and services.

311. Upon information and belief, during the 2019-2020 extended school year, from July 6, 2020 through August 14, 2020, M.M. attended school at home receiving virtual instruction and services.

312. Pursuant to N.J.A.C. 6:A14-2.7(d), Lisa Mattessich sent NJDOE a Ten-Day Notice of the Parent's intention to unilaterally self-cure the failure of NJDOE to provide a FAPE for M.M.

313. Lisa Mattessich brought a Due Process Complaint against NJDOE asserting the denial of FAPE, as well as M.M.'s pendency rights (20 U.S.C. § 1415(j) and 34 CFR § 300.518) and requested an IEE be conducted for M.M. at public expense (20 U.S.C. § 1415(b)(1), (d)(2)(A), and 34 C.F.R. § 300.502).

314. Plaintiff Lisa Mattessich is not required to exhaust her administrative due process remedies under 20 U.S.C. § 1415(i)(2), on behalf of M.M., because their claims fall within the exceptions specified by law.

315. Plaintiff Lisa Mattessich has neither waived nor abandoned any claims or arguments under IDEA or state law.

### K.D.

316. K.D. is eligible for special education from Middletown Township Public School due to a specific learning disability. See **Exhibit 7**.

317. As a result of K.D.'s intellectual disability and health impairment, K.D. has global developmental impairments that adversely affect his educational abilities and performance. *Id.*

318. According to K.D.'s July 24, 2019 IEP, K.D. received 80 minutes of language art educational services on alternating days, 80-minute math services daily, and special transportation service. *Id.*

319. K.D.'s IEP states that it is "difficult for K.D. to ignore distractions, work quietly and independently. It is difficult for [K.D.] to work neatly." *Id.*

320. K.D.'s July 24, 2019 IEP does not state whether his instruction and/or services will be in-

person or virtual.

321. K.D.'s July 24, 2019 IEP requires direct academic support, and special education to accommodate his disability so he can receive a FAPE. *Id.*

322. On March 13, 2020, Middletown Township Public School ceased all in-person education due to the COVID-19 pandemic.

323. Upon information and belief, from March 2020 to July 2020, K.D. attended Middletown Public School. During this period, the Student received virtual instruction and services.

324. Upon information and belief, Parent Nicole Tierney enrolled K.D. in a local Catholic school for the 2020-2021 and 2021-2022 school years.

325. As a result of the March 13, 2020 closure, Middletown Township Public School altered K.D.'s IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or participation of parents.

326. The alterations and concomitant placement of K.D. at home receiving virtual instruction and services was procedurally defective because Middletown Township Public School:

    a. Altered K.D.'s IEP to complete virtual instruction without prior written notice or any written notice;

    b. Altered K.D.'s IEP without the meaningful participation of his parents;

    c. Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing K.D.'s placement from in-person instruction and services to home placement with virtual instruction and services;

    d. Failed to ensure that K.D. could access a free and appropriate public education on the same level as his non-disabled peers.

327. During the 2019-2020 school year, from March 13, 2020 through June 18, 2020, K.D.

attended school at home receiving virtual instruction and services.

328. Pursuant to N.J.A.C. 6:A14-2.7(d), Nicole Tierney sent NJDOE a Ten-Day Notice of her intention to unilaterally self-cure the failure of NJDOE to provide a FAPE for K.D.

329. Nicole Tierney brought a Due Process Complaint against NJDOE asserting the denial of FAPE, as well as K.D.'s pendency rights (20 U.S.C. § 1415(j) and 34 CFR § 300.518) and requested an IEE be conducted for K.D. at public expense (20 U.S.C. § 1415(b)(1), (d)(2)(A), and 34 C.F.R. § 300.502).

330. Plaintiff Nicole Tierney is not required to exhaust her administrative due process remedies under 20 U.S.C. § 1415(i)(2), on behalf of K.D., because their claims fall within the exceptions specified by law.

331. Plaintiff Nicole Tierney has neither waived nor abandoned any claims or arguments under IDEA or state law.

### S.C.

332. S.C. attended Cape May County High School in Middle Township Public School District during the 2019/2020 school year. S.C.'s family moved to Lower Cape May Regional School District in September 2020.

333. S.C. was eligible for special education from Middle Township Public School District and remains eligible through Lower Cape May Regional School District due to autism. See **Exhibit 8**.

334. **Exhibit 8** consists of the two IEPs from Middle Township Public School, dated March 11, 2020, and Lower Cape May Regional School District, dated January 11, 2021.

335. As a result of S.C.'s autism, S.C. has Pervasive Developmental Disorder (PDD) and obsessive-compulsive disorder (OCD) that adversely affect her educational abilities and

performance. *Id.*

336. According to S.C.'s March 11, 2020 IEP, S.C. received specialized academic instruction, accommodations, aide services for five hours per day, and speech language therapy for thirty minutes per week.

337. S.C's March 11, 2020 IEP states that she "exhibits prominent neuropsychiatric symptoms of irritability, depression, and crying." *Id.*

338. On March 13, 2020, Middle Township School District ceased all in-person education due to the COVID-19 pandemic.

339. As a result of the March 13, 2020 closure of Middle Township School District, Middle Township School District altered S.C.'s IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or participation of parents.

340. The alterations and concomitant placement of S.C. at home receiving virtual instruction and services was procedurally defective because Lower Cape May Regional School District:

   a.   Altered S.C.'s IEP to complete virtual instruction without prior written notice or any written notice;

   b.   Altered S.C.'s IEP without the meaningful participation of her parents;

   c.   Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing S.C.'s placement from in-person instruction and services to home placement with virtual instruction and services;

   d.   Failed to ensure that S.C. could access a free and appropriate public education on the same level as her non-disabled peers.

   e.   Dorene Camp spent out-of-pocket expenses for caregiving because of these school

closures.

341. During the 2019-2020 school year, from March 13, 2020 through June 15, 2020, S.C. attended school at home receiving virtual instruction and services.

342. In September 2020, S.C. moved to Lower Cape May Regional School District. S.C. did not receive in-person services as mandated on her IEP due to Lower Cape May Regional School District closures and fully remote services.

343. The CSE in Lower Cape May Regional School District convened on January 11, 2021. S.C.'s March 11, 2020 IEP states "Academic and related services in this IEP may have been and, may continue to be affected by the COVID- 19 pandemic restrictions as mandated by the NJ Department of Education and State government. In case of school/program closure, special education and related services will continue remotely to the most appropriate extent possible including but not limited to both Synchronous and Asynchronous options, Dates are subject to change due to district calendar changes." **Exhibit 8**.

344. Dorene Camp did not consent to the remote provisions of the services in the IEP.

345. Pursuant to N.J.A.C. 6:A14-2.7(d), Dorene Camp sent NJDOE a Ten-Day Notice of her intention to unilaterally self-cure the failure of NJDOE to provide a FAPE for S.C.

346. Dorene Camp brought a Due Process Complaint against NJDOE asserting the denial of FAPE, as well as S.C.'s pendency rights (20 U.S.C. § 1415(j) and 34 CFR § 300.518) and requested an IEE be conducted for S.C. at public expense (20 U.S.C. § 1415(b)(1), (d)(2)(A), and 34 C.F.R. § 300.502).

347. Plaintiff Dorene Camp is not required to exhaust her administrative due process remedies under 20 U.S.C. § 1415(i)(2), on behalf of S.C., because their claims fall within the exceptions specified by law.

348. Plaintiff Dorene Camp has neither waived nor abandoned any claims or arguments under IDEA or state law.

### C.C.

349. C.C. attended Middle Township Public School District school during the 2019-2020 school year. C.C.'s family moved to Lower Cape May Regional School District in September 2020.

350. C.C. was eligible for special education from Middle Township Public School District and remains eligible through Lower Cape May Regional School District due to autism. See **Exhibit 9.**

351. **Exhibit 9** consists of the two IEPs from Middle Township Public School IEP dated February 27, 2020, and Lower Cape May Regional School District. dated February 24, 2021.

352. As a result of C.C.'s autism, C.C. has learning, speech, and social concerns which negatively impact her educational performance. *Id.*

353. According to C.C.'s February 27, 2020 IEP, C.C. receives six hours of individual aide services daily, specialized academic instruction, accommodations, one thirty-minute session of speech language therapy per week, specialized transportation, and extended school year services. *Id.*

354. On March 13, 2020, Middle Township Public School ceased all in-person education due to the COVID-19 pandemic.

355. As a result of the March 13, 2020 closure of Middle Township Public School, Middle Township Public School altered C.C.'s IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or participation of parents.

356. The alterations and concomitant placement of C.C. at home receiving virtual instruction and

services was procedurally defective because Middle Township Public School:

    a.    Altered C.C.'s IEP to complete virtual instruction without prior written notice or any written notice;

    b.    Altered C.C.'s IEP without the meaningful participation of her parents;

    c.    Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing C.C.'s placement from in-person instruction and services to home placement with virtual instruction and services;

    d.    Failed to ensure that C.C. could access a free and appropriate public education on the same level as her non-disabled peers.

    e.    Dorene Camp spent out-of-pocket expenses for caregiving because of these school closures.

357.  During the 2019-2020 school year, from March 13, 2020 through June 15, 2020, C.C. attended school at home receiving virtual instruction and services.

358.  In September 2020, C.C. moved to Lower Cape May Regional School District. C.C. did not receive in-person services as mandated on her IEP due to Lower Cape May Regional School District closures and fully remote services.

359.  The CSE in Lower Cape May Regional School District convened February 27, 2020. C.C.'s February 27, 2020 IEP states, "Academic and related services in this IEP may have been and continue to be affected by the COVID- 19 pandemic restrictions as mandated by the NJ Department of Education and State government."

360.  In case of school/program closure, special education and related services will continue remotely to the most appropriate extent possible including but not limited to both Synchronous and Asynchronous options." _Id._

361.  Dorene Camp did not consent to the remote provisions of the services in the IEP.

362.  Pursuant to N.J.A.C. 6:A14-2.7(d), Dorene Camp sent NJDOE a Ten-Day Notice of the Parent's intention to unilaterally self-cure the failure of NJDOE to provide a FAPE for C.C.

363.  Dorene Camp brought a Due Process Complaint against NJDOE asserting the denial of FAPE, as well as C.C.'s pendency rights (20 U.S.C. § 1415(j) and 34 CFR § 300.518) and requested an IEE be conducted for C.C. at public expense (20 U.S.C. § 1415(b)(1), (d)(2)(A), and 34 C.F.R. § 300.502).

364.  Plaintiff Dorene Camp is not required to exhaust her administrative due process remedies under 20 U.S.C. § 1415(i)(2), on behalf of C.C., because their claims fall within the exceptions specified by law.

365.  Plaintiff Dorene Camp has neither waived nor abandoned any claims or arguments under IDEA or state law.

### T.C.

366.  T.C. attended Ocean Academy Elementary School in Middle Township Public School District during the 2019/2020 school year.

367.  T.C.'s family moved in September 2020 to Lower Cape May Regional School District.

368.  T.C. is eligible for special education from Middle Township Public School and remains eligible through Lower Cape May Regional School District due to Autism. *Id.*

369.  **Exhibit 10** consists of the two IEPs from Middle Township Public School, dated May 4, 2020, and Lower Cape May Regional School District, dated February 24, 2021.

370.  As a result of T.C.'s autism, T.C. has global impairments that adversely affect his educational abilities and performance. *Id.*

371.  According to T.C.'s May 4, 2020 IEP, he receives speech therapy, occupational therapy and

a shared aide. T.C. receives speech and language therapy once a week individually and once a week in a small group setting to accommodate his disability so he can receive a FAPE. *Id.*

372. On March 13, 2020, Middle Township Public School District ceased all in-person education due to the COVID-19 pandemic.

373. As a result of the March 13, 2020 closure of Middle Township Public School District, Middle Township Public School altered T.C.'s IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or participation of parents.

374. The alterations and concomitant placement of T.C. at home receiving virtual instruction and services was procedurally defective because Middle Township Public School:

   a.   Altered T.C.'s IEP to complete virtual instruction without prior written notice or any written notice;

   b.   Altered T.C.'s IEP without the meaningful participation of his parents;

   c.   Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing T.C.'s placement from in-person instruction and services to home placement with virtual instruction and services;

   d.   Failed to ensure that T.C. could access a free and appropriate public education on the same level as his non-disabled peers.

   e.   Dorene Camp spent out-of-pocket expenses for caregiving because of these school closures.

375. During the 2019-2020 school year, from March 13, 2020 through June 15, 2020, T.C. attended school at home receiving virtual instruction and services.

376. In September 2020, T.C. moved to Lower Cape May Regional School District. T.C. did not receive in-person services as mandated on his IEP due to Lower Cape May Regional School

District closures and fully remote services.

377. The CSE in Lower Cape May Regional School District convened on February 24, 2021.

378. T.C.'s February 24, 2021 IEP states "ESY dates are subject to change due to school district calendar changes, academic and related services in this IEP may have been and continue to be affected by the COVID-19 pandemic restrictions as mandated by the NJ Department of Education and State government. In case of school/program closure, special education and related services will continue remotely to the most appropriate extent possible including but not limited to both Synchronous and Asynchronous options." See **Exhibit 10.**

379. Dorene Camp did not consent to the remote provisions of the services in the IEP.

380. Pursuant to N.J.A.C. 6:A14-2.7(d), Dorene Camp sent NJDOE a Ten-Day Notice of the Parent's intention to unilaterally self-cure the failure of NJDOE to provide a FAPE for T.C.

381. Dorene Camp brought a Due Process Complaint against NJDOE asserting the denial of FAPE, as well as T.C.'s pendency rights (20 U.S.C. § 1415(j) and 34 CFR § 300.518) and requested an IEE be conducted for T.C. at public expense (20 U.S.C. § 1415(b)(1), (d)(2)(A), and 34 C.F.R. § 300.502).

382. Plaintiff Dorene Camp is not required to exhaust her administrative due process remedies under 20 U.S.C. § 1415(i)(2), on behalf of T.C., because their claims fall within the exceptions specified by law.

383. Plaintiff Dorene Camp has neither waived nor abandoned any claims or arguments under IDEA or state law.

**M.D.**

384. M.D. is eligible for special education from Rumson-Fair Haven Regional High School District due to his multiple disabilities. See **Exhibit 11.**

385. During the 2020-2021 school year, M.D. attended The Shore Center in Tinton Falls School District.

386. Upon information and belief, the Shore Center in Tinton Falls School District receives funding on the student's behalf from Rumson-Fair Haven Regional High School District.

387. As a result of M.D.'s intellectual disability, M.D. has global developmental impairments that adversely affect his educational abilities and performance. *Id.*

388. M.D. struggles with functional academics, communication, maladaptive behaviors, fine motor skills, gross motor skills, and social skills. *Id.*

389. According to M.D.'s May 14, 2020 IEP, M.D. receives speech and language therapy three times per week in thirty-minute individual sessions. *Id.*

390. M.D. receives individual occupational therapy services three times per week for thirty-minute sessions. *Id.*

391. M.D. receives physical therapy three times per week on an individual basis. *Id.*

392. M.D.'s May 14, 2020 IEP does not state whether M.D.'s instruction and/or services will be in-person or virtual.

393. M.D.'s May 14, 2020 IEP requires direct speech language therapy, physical therapy, academic support, and special education to accommodate his disability so he can receive a FAPE. *Id.*

394. On March 13, 2020, Rumson-Fair Haven Regional High School ceased all in-person education due to the COVID-19 pandemic.

395. As a result of the March 13, 2020 closure of the Shore Center in Tinton Falls School District, Rumson-Fair Haven Regional High School altered M.D.'s IEP for the 2019-2020 school year by failing to provide alternative placement to receive services and the student was to

complete virtual instruction and services without any prior written notice and/or participation of parents.

396. The alterations and concomitant placement of M.D. at home receiving virtual instruction and services was procedurally defective because Rumson-Fair Haven Regional High School:

    a.    Altered M.D.'s IEP to complete virtual instruction without prior written notice or any written notice;

    b.    Altered M.D.'s IEP without the meaningful participation of his parents;

    c.    Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing M.D.'s placement from in-person instruction and services to home placement with virtual instruction and services;

    d.    Failed to ensure that M.D. could access a free and appropriate public education on the same level as his non-disabled peers.

    e.    Failed to offer alternative placement for the student to receive services.

397. Upon information and belief, during the 2019-2020 school year, from March 13, 2020 through June 12, 2020, M.D. attended school at home receiving virtual instruction and services.

398. Upon information and belief, during the 2019-2020 extended school year, from July 13, 2020 through August 13, 2020, M.D. attended school at home receiving virtual instruction and services.

399. Upon information and belief, during the 2020-2021 school year, M.D. attended school at home with virtual instruction and services until March of 2021, when a hybrid option was offered by Rumson-Fair Haven Regional High School.

400. Pursuant to N.J.A.C. 6:A14-2.7(d), Lisa Driscoll sent NJDOE a Ten-Day Notice of the

Parent's intention to unilaterally self-cure the failure of NJDOE to provide a FAPE for M.D.

401. Lisa Driscoll brought a Due Process Complaint against NJDOE asserting the denial of FAPE, as well as M.D.'s pendency rights (20 U.S.C. § 1415(j) and 34 CFR § 300.518) and requested an IEE be conducted for M.D. at public expense (20 U.S.C. § 1415(b)(1), (d)(2)(A), and 34 C.F.R. § 300.502).

402. Plaintiff Lisa Driscoll is not required to exhaust her administrative due process remedies under 20 U.S.C. § 1415(i)(2), on behalf of M.D., because their claims fall within the exceptions specified by law.

403. Plaintiff Lisa Driscoll has neither waived nor abandoned any claims or arguments under IDEA or state law.

## K.L.

404. K.L. is eligible for special education from Middletown Township Public School District due to being a Preschool Child with a Disability with a 33% delay in both the Adaptive and Motor domains. See **Exhibit 12**.

405. K.L.'s intellectual disability and health impairment adversely affect his educational abilities and performance. *Id.*

406. According to K.L.'s April 20, 2020 IEP, K.L. receives occupational therapy twice a week individually. K.L. receives two individual twenty-minute physical therapy sessions weekly.

407. K.L.'s April 20, 2020 IEP does not state whether his instruction and/or services, including physical therapy, will be in-person or virtual.

408. K.L.'s April 20, 2020 IEP requires physical therapy, occupational therapy, academic support, and special education to accommodate his disability. *Id.*

409. On March 13, 2020 Middletown Township Public School District ceased all in-person

education due to the COVID-19 pandemic.

410. Parent Diana LoGrasso wrote a submission to the Middletown Public School District:

> This is not my first time raising my concerns or voicing my opinions (I have been in touch with the principal and the Board of Education leaders regarding all matters), however I feel that these concerns should be a part of [K.L.]'s permanent record and attached to his IEP for the duration. ...it became obvious that [K.L.] did not do well with virtual instruction and it was not meeting his needs in any way. ...He was definitely a child lagging behind and suffering due to school closure last spring....Our children are suffering, yet our BOE president thinks we should be focusing on a more robust virtual learning program based on an article written by a fearful and whiny teacher.  ...it still remains unclear as to whether or not the decisions being made are clearly based upon data. … While I understand that many factors are considered when making decisions regarding public safety and public health, we as a community, and you as the educational leaders have a duty and responsibility to ask WHY. Ask WHY the requirements being suggested or are becoming a mandate. You have a duty and a responsibility to our children and the future generations to ask for the Evidence Based Data driving all of these decisions moving forward. If data from a study cannot be recreated to produce the same outcomes, then it is not evidence based and should not be considered best practice. *Id.*

411. The parent does not consent to the remote provisions of the services in the IEP.

412. Despite this letter, as a result of the March 13, 2020 closure of schools, Middletown Township Public School District altered K.L.'s IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or participation of parents.

413. Despite this letter, during the 2019-2020 school year, from March 13, 2020 through June 18, 2020, K.L. attended school at home receiving virtual instruction and services.

414. During the 2019-2020 extended school year, from July 2, 2020 through August 6, 2020, K.L. attended school at home receiving virtual instruction and services.

415. The alterations and concomitant placement of K.L. at home receiving virtual instruction and services was procedurally defective because Middletown Township Public School District:

a.    Altered K.L.'s IEP to complete virtual instruction without prior written notice or any written notice;

b.    Altered K.L.'s IEP without the meaningful participation of his parents;

c.    Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing K.L.'s placement from in-person instruction and services to home placement with virtual instruction and services;

d.    Failed to ensure that K.L. could access a free and appropriate public education on the same level as his non-disabled peers.

416.   Pursuant to N.J.A.C. 6:A14-2.7(d), Diana LoGrasso sent NJDOE a Ten-Day Notice of the Parent's intention to unilaterally self-cure the failure of NJDOE to provide a FAPE for K.L.

417.   Diana LoGrasso brought a Due Process Complaint against NJDOE asserting the denial of FAPE, as well as K.L.'s pendency rights (20 U.S.C. § 1415(j) and 34 CFR § 300.518) and requested an IEE be conducted for K.L. at public expense (20 U.S.C. § 1415(b)(1), (d)(2)(A), and 34 C.F.R. § 300.502).

418.   Plaintiff Diana LoGrasso is not required to exhaust her administrative due process remedies under 20 U.S.C. § 1415(i)(2), on behalf of K.L., because their claims fall within the exceptions specified by law.

419.   Plaintiff Diana LoGrasso has neither waived nor abandoned any claims or arguments under IDEA or state law.

## **J.L.**

420.   J.L. is eligible for special education from Toms River Regional School District due to classification as a preschool child with a disability.  See **Exhibit 13**.

421.   J.L.'s intellectual disability affects his educational abilities and performance. J.L. struggles

with functional academics and receptive and expressive language.

422.  According to J.L.'s November 11, 2019 IEP, J.L. received specialized academics, and fifteen minutes of speech language therapy seventeen times per trimester, and specialized transportation.

423.  J.L.'s IEP states that he needs to acquire "the communication skills necessary to navigate the school environment successfully." *Id.*

424.  J.L.'s November 11, 2019 IEP does not state whether his instruction and/or services will be in-person or virtual.

425.  J.L.'s November 11, 2019 IEP requires speech language therapy, academic support, and special education to accommodate his disability. *Id.*

426.  On March 13, 2020, Toms River Regional School District ceased all in-person education due to the COVID-19 pandemic.

427.  As a result of the March 13, 2020 closure of Toms River Regional Schools, Toms River Regional School altered J.L.'s IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or participation of parents.

428.  The alterations and concomitant placement of J.L. at home receiving virtual instruction and services was procedurally defective because Toms River Regional School:

   a.  Altered J.L.'s IEP to complete virtual instruction without prior written notice or any written notice;

   b.  Altered J.L.'s IEP without the meaningful participation of his parents;

   c.  Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing J.L.'s placement from in-person instruction and services to home placement with virtual instruction and services;

    d.    Failed to ensure that J.L. could access a free and appropriate public education on the same level as his non-disabled peers.

429. During the 2019-2020 school year, from March 13, 2020 through June 18, 2020, J.L. attended school at home receiving virtual instruction and services.

430. Upon information and belief, during the 2020-2021 school year, J.L. attended school at home with virtual instruction and services until March of 2021, when a hybrid option was offered by Toms River Regional School.

431. Pursuant to N.J.A.C. 6:A14-2.7(d), Kelly Osterman (a/k/a Kelly Osterman-LaFrance) sent NJDOE a Ten-Day Notice of the Parent's intention to unilaterally self-cure the failure of NJDOE to provide a FAPE for J.L.

432. Kelly Osterman brought a Due Process Complaint against NJDOE asserting the denial of FAPE, as well as J.L.'s pendency rights (20 U.S.C. § 1415(j) and 34 CFR § 300.518) and requested an IEE be conducted for J.L. at public expense (20 U.S.C. § 1415(b)(1), (d)(2)(A), and 34 C.F.R. § 300.502).

433. Plaintiff Kelly Osterman is not required to exhaust her administrative due process remedies under 20 U.S.C. § 1415(i)(2), on behalf of J.L., because their claims fall within the exceptions specified by law.

434. Plaintiff Kelly Osterman has neither waived nor abandoned any claims or arguments under IDEA or state law.

## **N.D.**

435. N.D. is eligible for special education from the Audubon Public School District due to multiple disabilities. See **Exhibit 14.**

436. As a result of N.D.'s intellectual disability and multiple health disabilities, N.D. has global

developmental impairments that adversely affect his educational abilities and performance. *Id.*

437. N.D. has dicentric Duplication Syndrome, Lennox-Gastaut Syndrome, intractable epilepsy, sleep apnea, and a Cortical Vision Impairment, among other disabilities. *Id.*

438. N.D. is closely followed by both a neurologist and pulmonologist. *Id.*

439. N.D. struggles with behavior skills, gross motor skills, fine motor skills, functional academics, and communication skills. *Id.*

440. According to N.D.'s May, 16, 2019 IEP, he received specialized academics, accommodations, three fifteen-minute sessions of physical therapy per week, two thirty-minute sessions of individual speech language therapy per week, one thirty-minute session of small group speech language therapy that is a "cotreatment" with occupational therapy per week, one-to-one nursing services for the entire school day, one-to-one aide services for the entire school day, two thirty-minute sessions of physical therapy per week, one sixty-minute session of physical therapy consultation per marking period, two thirty-minute sessions of occupational therapy per week, one sixty-minute session of occupational therapy consultation per marking period, one sixty-minute session of speech language therapy consultation per marking period, three fifteen-minute sessions of physical therapy in the classroom and physical therapy area, extended school year services, and specialized transportation. *Id.*

441. N.D.'s IEP states that he "has significant physical and cognitive needs impacting his participation and performance requiring both significant task support and adaptations." *Id.*

442. N.D.'s May, 16, 2019 IEP does not state whether his instruction and/or services will be in-person or virtual.

443. During quarantine, N.D.'s 1:1 aide attended all tele-therapy sessions. N.D. received BCBA services via teletherapy during quarantine. See **Exhibit 14**.

444. During the 2020 Extended School Year Program, interventions were held remotely based on IEP goals. *Id.*

445. Remote learning meant teachers and therapists met one on one with N.D. and an adult designee via a virtual platform such as Zoom or Google Meet. *Id.*

446. N.D. regressed because he could not obtain meaningful educational benefit by attending all tele-therapy sessions. *Id.*

447. N.D.'s May, 16, 2019 IEP requires direct speech language therapy, physical therapy, academic support, and special education to accommodate his disability. *Id.*

448. On March 13, 2020 Audubon Public School District ceased all in-person education due to the COVID-19 pandemic.

449. As a result of the March 13, 2020 closure of Audubon Public School District, Audubon Public School District altered N.D.'s IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or participation of parents.

450. The alterations and concomitant placement of N.D. at home receiving virtual instruction and services was procedurally defective because Audubon Public School District:

    a.    Altered N.D.'s IEP to complete virtual instruction without prior written notice or any written notice;

    b.    Altered N.D.'s IEP without the meaningful participation of his parents;

    c.    Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing N.D.'s placement from in-person instruction and services to home placement with virtual instruction and services;

    d.    Failed to ensure that N.D. could access a free and appropriate public education on the same level as his non-disabled peers.

451. Upon information and belief, during the 2019-2020 school year, from March 13, 2020 through June 17, 2020, N.D. attended school at home receiving virtual instruction and services.

452. During the 2019-2020 extended school year, from July 6, 2020 through August 21, 2020, N.D. attended school at home receiving virtual instruction and services.

453. The June 8, 2020 IEP states, "Careful consideration for [the student's] program during the COVID-19 school closure and remote learning was made in the development of this IEP, including the adaptation of all program services and supports to the greatest extent possible, in order to meet [the Student's] educational needs." See **Exhibit 14**.

454. Tina DeLorenzo did not consent to the remote provisions of the services in the IEP.

455. During the 2020-2021 school year, N.D. attended school at home with virtual instruction and services until October 2020, when a hybrid option was offered by Audubon Public School District.

456. Pursuant to N.J.A.C. 6:A14-2.7(d), Tina DeLorenzo sent NJDOE a Ten-Day Notice of the Parent's intention to unilaterally self-cure the failure of NJDOE to provide a FAPE for N.D.

457. Plaintiff Tina DeLorenzo is not required to exhaust her administrative due process remedies under 20 U.S.C. § 1415(i)(2), on behalf of N.D., because their claims fall within the exceptions specified by law.

458. Tina DeLorenzo brought a Due Process Complaint against NJDOE asserting the denial of FAPE, as well as N.D.'s pendency rights (20 U.S.C. § 1415(j) and 34 CFR § 300.518) and requested an IEE be conducted for N.D. at public expense (20 U.S.C. § 1415(b)(1),

(d)(2)(A), and 34 C.F.R. § 300.502).

459. Plaintiff Tina DeLorenzo has neither waived nor abandoned any claims or arguments under IDEA or state law.

**A.K.**

460. A.K. is eligible for special education from Camden City School District due to a Communication Impairment.  See **Exhibit 15**.

461. During the 2020-2021 school year, A.K. attended the LEAP Academy Charter School, a financial subsidiary of the Camden City Public School District enterprise. [1]

462. A.K.'s intellectual disability affects her educational abilities and performance. She is functioning at grade level in Math and below grade level in ELA due to her lack of sight word recognition. *Id.*

463. According to A.K.'s June 2, 2020 IEP, A.K. received speech thirty times per year on an individual basis. *Id.* A.K.'s IEP does not state whether her instruction and/or services will be in-person or virtual.

464. Her regular education teacher noted that she has had difficulty during the remote learning process with the inability to stay focused during the whole group lesson. *Id.*

465. It has been observed that she does well one-on-one given verbal praise. *Id.*

466. The parent does not consent to the remote provisions of the services in the IEP.

467. On March 13, 2020, Camden City School District ceased all in-person education due to the COVID-19 pandemic.

---

[1] https://www.nj.gov/education/finance/fp/cafr/search/20/7109.pdf, (page 10) ("By design in New Jersey, charter schools do not receive facilities and only a portion of what the local district receives on per pupil basis. Charter schools do not receive adjusted aid and therefore the local district [Camden City] retains over $6,000 for each student that attends a charter school.")

468. As a result of the March 13, 2020 closure of the LEAP Academy Charter School and the Camden City School District, A.K.'s IEP was altered for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or participation of parents.

469. The alterations and concomitant placement of A.K. at home receiving virtual instruction and services was procedurally defective because Camden City School District:

   a. Altered A.K.'s IEP to complete virtual instruction without prior written notice or any written notice;

   b. Altered A.K.'s IEP without the meaningful participation of her parents;

   c. Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing A.K.'s placement from in-person instruction and services to home placement with virtual instruction and services;

   d. Failed to ensure that A.K. could access a free and appropriate public education on the same level as her non-disabled peers.

470. During the 2019-2020 school year, from March 13, 2020 through June 18, 2020, A.K. attended school at home receiving virtual instruction and services.

471. Upon information and belief, during the 2020-2021 school year, A.K. attended school at home with virtual instruction and services until March of 2021, when a hybrid option was offered by Camden City School District.

472. Pursuant to N.J.A.C. 6:A14-2.7(d), Munira Edmonds sent NJDOE a Ten-Day Notice of the Parent's intention to unilaterally self-cure the failure of NJDOE to provide a FAPE for A.K.

473. Munira Edmonds brought a Due Process Complaint against NJDOE asserting the denial of FAPE, as well as A.K.'s pendency rights (20 U.S.C. § 1415(j) and 34 CFR § 300.518) and

requested an IEE be conducted for A.K. at public expense (20 U.S.C. § 1415(b)(1), (d)(2)(A), and 34 C.F.R. § 300.502).

474.  Plaintiff Munira Edmonds is not required to exhaust her administrative due process remedies under 20 U.S.C. § 1415(i)(2), on behalf of A.K., because their claims fall within the exceptions specified by law.

475.  Plaintiff Munira Edmonds has neither waived nor abandoned any claims or arguments under IDEA or state law.

## CLASS ACTION ALLEGATIONS
## GENERAL CLASS ACTION ALLEGATIONS

476.  Plaintiffs bring this action on behalf of themselves and all other similarly situated school-aged children with disabilities covered by IDEA in New Jersey and their parents to assert the claims alleged in this complaint on a common basis. Specifically, Plaintiffs seek a judgment declaring that plaintiffs and the class members' unilateral change of educational placement for more than ten cumulative days in each of the 2019-2020 and 2020-2021 school years respectively, from in-person instruction and services to virtual instruction and services violated the procedural safeguards of IDEA and discriminated against plaintiffs under IDEA, New Jersey State law, § 504, the ADA, and § 1983.  Plaintiffs also seek an injunction to prevent the Defendants herein, and other similarly situated LEAs from engaging in similar conduct for more than ten cumulative days in the 2021-2022 school year and beyond, in the event of any future school closures.

477.  A class action is a superior means, and the only practicable means, by which plaintiffs and unknown class members can challenge the actions the Defendants herein and other similarly situated LEAs in New Jersey, in restricting the rights of named Plaintiffs and similarly

situated class members, under IDEA, New Jersey State law, the ADA, § 504, § 1983, and RICO without providing them due process of law.

478. This action is brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23 (a) and 23(b)(2).

479. This action satisfies the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a), as well as the requirements of Rule 23(b)(2), where applicable.

## Rule 23(a)(1):  Numerosity

480. The class is so numerous that joinder is impracticable.

481. All the putative class members are children with disabilities under IDEA in New Jersey and their parents.

482. The total number of individuals denied the procedural safeguards under IDEA– either in the past, currently, or in the future – will likely number in the thousands.

## Rule 23(b)(2):  Commonality

483. Common questions of law and fact exist as to all members of the class.

484. All class members seek relief on the common legal question of whether the NJDOE, the School District Defendants, and other similarly situated LEAs violated IDEA, the ADA, § 504, N.J.A.C., N.J.L.A.D., N.J.S.A., N.J.C.R.A., §1983, and RICO by altering Plaintiffs' IEPs and changing their educational placement, without following the regulations promulgated under the statutes.

485. All class members seek the same injunctive relief.

486. All class members also present common factual questions regarding the School District Defendants' closures of schools and their concomitant educational placement.

487. All class members also present common factual questions regarding the NJDOE, the School District Defendants, and similarly situated LEAs' assurances to the U.S. DOE regarding IDEA Part B funding.

488. All class members also present common factual questions regarding whether the NJDOE failed to appropriately monitor School District Defendants and similarly situated LEAs in New Jersey and provide the LEAs with the resources and expertise necessary to protect its disabled students' procedural safeguards guaranteed by IDEA.

489. All class members seek injunctive relief requesting that the Court:

1) Issue a judgment declaring that the class members' pendency placement is in-person instruction and services;

2) Issue a judgment declaring that the Plaintiffs' and the class members' unilateral change of educational placement for more than ten cumulative days in each of the 2019-2020 and 2020-2021 school years respectively, from in-person instruction and services to virtual instruction and services, violated the procedural safeguards of IDEA and discriminated against Plaintiffs under IDEA, § 504, the ADA, N.J.A.C., N.J.S.A., N.J.L.A.D., and §1983;

3) Issue a judgment declaring that the NJDOE failed to monitor and provide proper oversight and resources to School District Defendants and similarly situated LEAs during the COVID-19 pandemic as required under IDEA, N.J.A.C., N.J.S.A., and §1983;

4) Order the NJDOE, School District Defendants, and similarly situated LEAs to comply with the procedural safeguards guaranteed by IDEA for the 2021-2022 school year for the class members;

5) Assign a Special Monitor to: a) oversee the completion of IEEs for all the class members

to determine regressions and loss of competencies due to the unilateral changes to their IEPs and placements, and reconvene IEP Team meetings within thirty days of the completion of the IEEs;  b) make expert recommendations to the Court regarding compensatory education or pendency payments for the class members to address any regressions and/or loss of competencies; c) ensure the expert recommendations are included in writing in the class members' IEP documents;

6)  Require the NJDOE and School District Defendants to comply with IDEA, the ADA, § 504, N.J.A.C., N.J.S.A., §1983, and RICO in the event of any future school closures; and

7) Assign a RICO Special Monitor to:  a) oversee the completion of an independent audit of Defendants' expenditures of their IDEA Part B Funds from March of 2020 to the present;  b) oversee the Defendants' expenditures of their IDEA Part B Funds for the 2021-2022 school year to ensure Defendants spend IDEA Part B Funds for instruction and/or services for students with disabilities under IDEA;  c) ensure any IDEA Part B Funds that Defendants spent on items other than instruction and/or services for students with disabilities under IDEA from March of 2020 through the present are reimbursed to a monitored account to be spent only upon review and approval by the RICO Special Monitor.

## **Rule 23(a)(3):  Typicality**

490.  Plaintiffs' claims are typical of the claims of other respective members of the class.

491.  Like all members of the class, Plaintiffs are children with disabilities under IDEA in New Jersey or their parents, who were denied the procedural due process or substantive rights provided by IDEA, the ADA, § 504, N.J.A.C., N.J.S.A., N.J.L.A.D., N.J. Const., and §1983.

492. All members of the class claim that the NJDOE, School District Defendants, and similarly situated LEAs violated their procedural and substantive due process rights provided by IDEA, the ADA, § 504, N.J.A.C., N.J.S.A., and §1983.

493. All members of the class, including named Plaintiffs, seek a declaratory judgment that the actions of Defendants were unlawful and an injunction preventing Defendants from committing such actions in the future.

494. There is nothing distinctive about named Plaintiffs' claims for declaratory, injunctive or pendency relief that would lead to a different result in their case than in any case involving other class members.

### Rule 23(a)(4):  Adequacy

495. Plaintiffs are adequate representatives of the class because their interest in the vindication of their rights is aligned with the interests of the other class members.

496. Plaintiffs are members of the class, and their interests do not conflict with those of the other class members with respect to any claims.

497. Plaintiffs are represented by attorneys from the Brain Injury Rights Group, who have experience litigating complex civil rights matters in federal court and have detailed knowledge of IDEA, § 504, 29 U.S.C. § 794(a), 34 C.F.R. § 104.4(a), ADA, 42 U.S.C. § 12132, 28 C.F.R. §§ 35.104, N.J.A.C., N.J.S.A., N.J. Const., N.J.C.R.A., N.J.L.A.D., 42 U.S.C. § 1983, the Equal Protection Clause of the Fourteenth Amendment, RICO, and other relevant issues.

498. Class counsel has developed and continues to develop relationships with Plaintiffs and others similarly situated.

### Rule 23(b)(2):  Declaratory and Injunctive Relief Class

499. A class action is appropriate for declaratory and injunctive relief under Rule 23(b)(2) because Defendants have acted on grounds that apply generally to the class – namely the unilateral change of placement in March of 2020, from in-person instruction and services to virtual instruction and services – without complying with Plaintiffs' rights under IDEA, the ADA, § 504, N.J.A.C., N.J.S.A., and §1983.

500. The class seeks declaratory and injunctive relief to enjoin the NJDOE, the School District Defendants, and similarly situated LEAs from denying the rights guaranteed under IDEA, the ADA, § 504, N.J.A.C., N.J.S.A., and §1983, to all Plaintiffs with disabilities.

501. Class status is particularly appropriate because there is a risk that any individual member's claim for declaratory or injunctive relief will become moot before the litigation is resolved.

502. There is a risk that a class member that is or was a senior during the 2019-2020 and 2020-2021 school years will lose eligibility for injunctive relief under IDEA.

### Rule 23(b)(3):  Damages Class

503. No class damages are sought at this time except for nominal damages and compensatory education, in an amount that this Court deems appropriate, but no claims for damages should be deemed to be waived by this lawsuit.

## CAUSES OF ACTION

## AS AND FOR A FIRST CAUSE OF ACTION

### SYSTEMIC VIOLATIONS OF THE
### INDIVIDUALS WITH DISABILITIES EDUCATION ACT

### Systemic Violation 1:  Prior Written Notice

504. Plaintiffs reiterate, repeat, and affirm each allegation set forth above as if fully set forth herein.

505. 20 U.S.C. § 1415(c)(1) requires that a LEA give prior written notice of any action proposed by the LEA regarding the provision of a FAPE.

506. The LEAs, including the School District Defendants, did not give Plaintiffs prior written notice of its closure of schools and alteration of Plaintiffs' IEPs and school placements from in-person instruction and services to virtual instruction or services.

507. NJDOE failed to appropriately monitor and conduct oversight of its LEAs, including the School District Defendants, to ensure they complied with IDEA's procedural safeguards upon the March 2020 closing of its schools.

### Systemic Violation 2: Educational Placements

508. 20 U.S.C. § 1414(e) states that each LEA and SEA "shall ensure that the parents of each child with a disability are members of any group that makes decisions on the educational placement of their child."

509. 20 U.S.C. § 1415(j) states, "[d]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j).

510. 20 U.S.C. § 1415(j) obligates courts to implement pendency placement via an automatic injunction, without analysis of the traditional injunction elements. *Ridley School Dist. v. M.R.*, 2015 WL 1619420, 4 (2015).

511. The U.S. Supreme Court "has emphasized that the provision's text is 'unequivocal' and 'states plainly' that the child 'shall' remain in his current educational placement 'during the pendency of any proceedings initiated under the act." *Id.*

512. The LEAs, including the School District Defendants, did not ensure that the parents of each child with a disability were included as members of any IEP Team that made

decisions on the educational placement of their children.

513.  The LEAs, including the School District Defendants, did not maintain Plaintiffs' pendency placement through in-person instruction.

514.  NJDOE failed to appropriately monitor and conduct oversight of School District Defendants to ensure Defendants complied with IDEA's procedural safeguards upon the March 2020 closing of its schools.

515.  Plaintiffs are entitled to all appropriate relief available under IDEA, including injunctive relief declaring that the class members' pendency placement is in-person instruction and requiring the NJDOE and School District Defendants to comply with IDEA in the event of any future school closures for which the U.S. DOE does not issue IDEA waivers.

<u>**Systemic Violation 3:  Failure to Reconvene IEP Meetings**</u>

516.  20 U.S.C. § 1414(d)(3)(F) states that an IEP may be amended by the entire IEP Team.

517.  The School District Defendants did not reconvene IEP Team Meetings to change Plaintiffs' IEPs to provide for complete virtual instruction and services.

518.  NJDOE failed to appropriately monitor and conduct oversight of the School District Defendants, and similarly situated LEAs, to ensure that Defendants complied with IDEA's procedural safeguards upon the March 2020 closing of its schools.

<u>**Systemic Violation 4:  Discrimination on the Basis of Disability and Denial of Access to Educational Services**</u>

519.  Defendant NJDOE must ensure that each LEA in New Jersey, including the School District Defendants, takes steps to ensure that children with disabilities within its jurisdiction have access to the same educational opportunities as their non-disabled peers.  20 U.S.C. § 1412(a)(2); §1413(a)(1); 34 C.F.R. § 300.110.

520.  Defendants' systemic failure to ensure that children with disabilities had appropriate access

to the same educational opportunities as their non-disabled peers is a violation of IDEA.

521.   Defendants' actions have caused Plaintiffs damages, including regressions in skills and loss of competencies regarding the goals and objectives outlined in their IEPs.

## AS AND FOR A SECOND CAUSE OF ACTION

## VIOLATION OF THE REHABILITATION ACT, 29 U.S.C. § 794

522.   Plaintiffs reiterate, repeat, and reaffirm each allegation set forth above as if fully set forth herein.

523.   Section 504 of the Rehabilitation Act of 1973 and its implementing regulations provide, "no otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a); 34 C.F.R. § 104.4(a).

524.   Among other requirements, entities subject to Section 504 must provide equal opportunity to qualified persons with disabilities to participate in or benefit from any aid, benefit, or service they make available.  34 C.F.R. § 104.4(b)(1)(ii).

525.   Entities subject to Section 504 must avoid otherwise limiting a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service.  34 C.F.R. § 104.4(b)(1)(vii).

526.   A person has a disability under Section 504 if they have a physical or mental impairment that substantially limits one or more of their major life activities.  42 U.S.C. § 12102(1).

527.   Major life activities include, but are not limited to, caring for oneself, performing manual tasks, walking, standing, lifting, bending, speaking, learning, and working.  42 U.S.C. § 12102(2)(A).

528. A "qualified individual with a disability" is one who, with or without reasonable accommodations for their disability, meets essential eligibility requirements to receive services from or participate in the programs or activities of a recipient of federal financial assistance.  29 U.S.C. § 794(a).

529. A "program or activity" includes local education agencies, public boards of education, and school systems.  29 U.S.C. § 794(b)(2)(B); 20 U.S.C. § 7801(26).

530. A "recipient of federal financial assistance" is a public or private agency or other entity to which federal financial assistance is extended directly or through another recipient.  34 C.F.R. § 104.3(f).

531. Student Plaintiffs are individuals having impairments, including but not limited to, specific learning disorders, multiple disabilities, Other Health Impairment, ADHD, PDD ("Pervasive Development Disorder"), autism, a specific learning disability, and mild intellectual disability that affect the major life activity of learning.

532. Student Plaintiffs are otherwise qualified individuals with disabilities who meet essential eligibility requirements to receive services from or participate in the programs or activities of the School District Defendants.  42 U.S.C. § 12131(2); 29 U.S.C. § 794(a).

533. The NJDOE and the School District Defendants receive federal funds to comply with § 504.

534. The NJDOE and School District Defendants are entities subject to the non-discrimination requirements of Section § 504. 29 U.S.C. § 794(a);  34 C.F.R. § 104.4.

535. The School District Defendants and other similarly situated LEAs' closure of in-person instruction in March of 2020 discriminated against Plaintiffs, as persons with disabilities, who necessitate in-person services including occupational therapy, speech therapy, social work services, and resource room services, by denying them equal access and otherwise

limiting their access to education, programs, and services as compared to their non-disabled peers. 34 C.F.R. §§ 104.4(a), 104.4(b)(ii) and (iv).

536. The LEAs' closure of in-person instruction in March of 2020, was unlawful disability-based discrimination that violated Section 504 of the Rehabilitation Act of 1973.

537. As a proximate cause of these violations of Section 504, Plaintiffs have suffered harm as set forth above.

## AS AND FOR A THIRD CAUSE OF ACTION

## VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101

538. Plaintiff incorporates all prior allegations.

539. Title II of the ADA and its implementing regulations forbid public entities, including local educational agencies, to exclude or deny people with disabilities the benefits of its services, programs, or activities, or to discriminate based on disability. 42 U.S.C. § 12132; 28 C.F.R. § 35.104.

540. Prohibited disability-based discrimination by public entities includes the failure to provide qualified individuals with disabilities an equal opportunity to participate in or benefit from aids, benefits, or services or "otherwise limit" a qualified individual with a disability in the enjoyment of any right, privilege, aid, benefit, or service. 28 C.F.R. §§ 35.130(b)(1)(h), (vii).

541. Prohibited discrimination additionally includes the failure to make reasonable modifications as necessary to avoid discrimination against an individual based on their disability. 28 C.F.R. § 35.130(b)(7).

542. An "individual with a disability" is one who has a physical or mental impairment that substantially limits one or more of their major life activities. 42 U.S.C. § 12102(1).

543. Major life activities include, but are not limited to, caring for oneself, performing manual tasks, walking, standing, lifting, bending, speaking, learning, and working.  42 U.S.C. § 12102(2)(A).

544. A "qualified individual with a disability" is one who, with or without reasonable accommodations for his or her disability, meets essential eligibility requirements to receive services from or participate in the programs or activities of the public entity.  42 U.S.C. § 12131(2).

545. Plaintiffs are individuals having impairments, including but not limited to, ADHD, autism, specific learning disabilities, and intellectual disabilities, that affect major life activity of learning.

546. Plaintiffs' impairments affect their major life activities including learning.  42 U.S.C. § 12102(2)(A).

547. Plaintiffs are otherwise qualified individuals with disabilities who meet the essential eligibility requirements to receive services from or participate in the programs or activities of the School District Defendants.  42 U.S.C. § 12131(2).

548. The NJDOE and the School District Defendants are public entities and officials forbidden to discriminate based on disability and have a duty to provide honest services.  42 U.S.C. § 12132; 18 U.S.C. §§1341, 1346.

549. The School District Defendants and other similarly situated LEAs' closure of in-person instruction in March of 2020 discriminated against Plaintiffs, as persons with disabilities, who necessitate in-person services including occupational therapy, speech therapy, social work services and resource room services, by denying them equal access and otherwise

limiting their access to education, programs, and services as compared to their non-disabled peers.  34 C.F.R. §§ 104.4(a), 104.4(b)(ii) and (iv).

550.  As a proximate cause of these violations of Title II of the Americans with Disabilities Act, Plaintiffs have suffered harm as set forth above.

## AS AND FOR A FOURTH CAUSE OF ACTION

## VIOLATION OF THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION (42 U.S.C. §1983) EQUAL PROTECTION

551.  Plaintiffs incorporate all prior allegations.

552.  Section 1 of the Fourteenth Amendment provides:

> All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. U.S. CONST., amend. XIV, § 1.

553.  In order to provide a remedy for violations of the Fourteenth Amendment, Congress has enacted § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.  42 U.S.C. § 1983.

554. Defendants deprived Plaintiffs of their rights as guaranteed by the Fourteenth Amendment to the United States Constitution, in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983, when they closed their in-person instruction in March of 2020.

555. Specifically, Plaintiffs have been deprived of their right to equal protection under the Fourteenth Amendment by the acts of Defendants under the color of state authority.

556. Defendants' closure of schools in March of 2020 resulted in a disparate impact on Plaintiffs due to their disabilities in violation of the ADA and § 504.

557. Plaintiffs are all students with disabilities under the ADA and § 504.

558. Defendants closed schools in March of 2020 in response to the COVID-19 Pandemic.

559. As a direct and proximate result thereof, Plaintiffs suffered harm including significant regressions in skills and loss of competencies.

560. Defendants rendered the Plaintiffs more vulnerable to harm by closing its schools.

## AS AND FOR A FIFTH CAUSE OF ACTION

**VIOLATION OF THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION (42 U.S.C. §1983) SUBSTANTIVE DUE PROCESS**

561. Plaintiffs incorporate all prior allegations.

562. Section 1 of the Fourteenth Amendment provides:

> All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. U.S. CONST., amend. XIV, § 1.

563. In order to provide a remedy for violations of the Fourteenth Amendment, Congress has enacted § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia. 42 U.S.C. § 1983.

564. Defendants deprived Plaintiffs of their substantive due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution, in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983, when it closed its in-person instruction in March of 2020.

565. Specifically, Plaintiffs have been deprived of their right to education as guaranteed by the New Jersey Constitution.

566. The New Jersey Constitution provides that: "[t]he Legislature shall provide for the maintenance and support of a thorough and efficient system of free public schools for the instruction of all the children in the State...." N.J. Const. art. VIII, § 4, 1.

567. Defendants' closure of schools in March of 2020 violated Plaintiffs' substantive due process rights under the New Jersey Constitution.

568. As a direct and proximate result thereof, Plaintiffs suffered harm including significant regressions in skills and loss of competencies.

### AS AND FOR A SIXTH CAUSE OF ACTION

**VIOLATION OF  NEW JERSEY ADMINISTRATIVE CODE FOR SPECIAL EDUCATION N.J.A.C. 6A:14 ("N.J.A.C.") AND NEW JERSEY SPECIAL EDUCATION STATUTE, N.J.S.A. 18A:46 ("N.J.S.A.")**

569. Plaintiffs reiterate, repeat, and reaffirm each allegation set forth above as if fully set forth

herein.

570. As described at length above, Defendants failed to provide Plaintiffs procedural safeguards upon the termination of in-person instruction in March of 2020.

571. Defendants failed to comply with the procedural requirements for prior written notice, educational placements, pendency placements, IEP Team Meetings, and equal access to instruction and services for Plaintiffs in violation of N.J.S.A. § 18A:46-1 *et seq*., and N.J.A.C. § 6A:14-2.3.

572. Defendants' actions caused Plaintiffs damages, including regressions in skills and loss of competencies regarding the goals and objectives outlined in their IEPs.

573. All class members seek injunctive relief requesting that the Court:

1)  Issue a judgment declaring that the class members' pendency placement is in-person instruction and services;

2)  Issue a judgment declaring that Defendants herein and other similarly situated LEAs' unilateral change of placement of Plaintiffs from in-person instruction and services to virtual instruction and services violated the procedural safeguards of IDEA and discriminated against Plaintiffs under N.J.A.C., and N.J.S.A;

3) Issue a judgment declaring that the NJDOE failed to monitor and provide proper oversite and resources to School District Defendants and similarly situated LEAs during the COVID-19 pandemic as required under N.J.A.C. and N.J.S.A.;

4)  Order the NJDOE, School District Defendants and similarly situated LEAs to comply with the procedural safeguards guaranteed by IDEA for the 2021-2022 school year for the class members;

5) Assign a Special Monitor to:  a) oversee the completion of IEEs for all the class members

to determine regressions and loss of competencies due to the unilateral changes to their IEPs and placements, and reconvene IEP Team meetings within thirty days of the completion of the IEEs;  b) make expert recommendations to the Court regarding compensatory education or pendency payments for the class members to address any regressions and/or loss of competencies; c) ensure the expert recommendations are included in writing in the class members' IEP documents;

6) Require the NJDOE and School District Defendants to comply with N.J.A.C. and N.J.S.A., in the event of any future school closures.

### AS AND FOR A SEVENTH CAUSE OF ACTION

**VIOLATION OF THE NEW JERSEY CIVIL RIGHTS ACT N.J.S.A. 10:6-1, *et seq.* ("N.J.C.R.A.")**

574.  Plaintiffs incorporate all prior allegations.

575.  Under the New Jersey Civil Rights Act, "[a]ny person who has been deprived of … any substantive rights, privileges or immunities secured by the Constitution or laws of this State … may bring a civil action for damages and for injunctive or other appropriate relief." N.J.S.A. 10:6-2(c).

576.  The purpose of the private N.J.C.R.A. cause of action is "assuring a state law cause of action for violations of state and federal constitutional rights and to fill any gaps in state statutory anti-discrimination protection." *Tumpson v. Farina*, 431 N.J. Super. 164, 181 (App. Div. 2013).

577.  School District Defendants' closure of in-person instruction in March of 2020 discriminated against B.A., K.G., A.M., D.K., J.N., M.M., K.D., S.C., C.C., T.C., M.D., K.L., J.L., N.D. and A.K., as persons with disabilities, who necessitate in-person services including occupational therapy, speech therapy, social work services, and resource room services, by

denying them equal access and otherwise limiting their access to education, programs and services as compared to Plaintiffs' non-disabled peers. _Id._

578. As a proximate cause of these violations of the New Jersey Civil Rights Act (N.J.S.A. 10:6-1, *et seq.*), Plaintiffs have suffered harm as set forth above.

### AS AND FOR AN EIGHTH CAUSE OF ACTION

**VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION**
**N.J.S.A. 10:5-1, *et seq*. ("N.J.L.A.D.")**

579. Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs as is specifically alleged herein.

580. Plaintiffs B.A., K.G., A.M., D.K., J.N., M.M., K.D., S.C., C.C., T.C., M.D., K.L., J.L., N.D. and A.K. and all students similarly situated are qualified individuals with disabilities and are disabled within the meaning of "N.J.L.A.D." N.J.S.A. 10:5-1 to 14:1.

581. Under the New Jersey Law Against Discrimination (N.J.L.A.D."), N.J.S.A. 10:5-1 *et seq.,*

All persons shall have the opportunity to obtain employment, and to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation, publicly assisted housing accommodation, and other real property without discrimination because of race, creed, color, national origin, ancestry, age, marital status, affectional or sexual orientation, familial status, disability, nationality, sex, gender identity or expression or source of lawful income used for rental or mortgage payments, subject only to conditions and limitations applicable alike to all persons. This opportunity is recognized as and declared to be a civil right. N.J.S.A. 10:5-4.

582. Educational services in New Jersey School Districts are accommodations, advantages, and privileges offered by School District Defendants.

583. School District Defendants' closure of in-person instruction in March of 2020 discriminated against Students B.A., K.G., A.M., D.K., J.N., M.M., K.D., S.C., C.C., T.C., M.D., K.L., J.L., N.D. and A.K., as persons with disabilities, who necessitate in-person services including occupational therapy, speech therapy, social work services, and resource room

services, by denying them equal access and otherwise limiting their access to education, programs and services as compared to Plaintiffs' non-disabled peers.

584.  As a proximate cause of these violations of the New Jersey Civil Rights Act, Plaintiffs have suffered harm as set forth above.

## AS AND FOR A NINTH CAUSE OF ACTION

**VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO"), 18 U.S.C. §1962(c) (Against Individual Defendants)**

585.  Plaintiffs incorporate by reference all preceding paragraphs.

586.  This RICO cause of action arises from a scheme by individual Defendants, to fraudulently use their respective enterprises to defraud Plaintiffs, the beneficiaries of IDEA Part B, upwards of approximately $368,431,755 in 2020 by making false assurances to the United States Department of Education ("USDOE") that the NJDOE and its LEAs complied with IDEA during the COVID-19 pandemic.  See **Exhibit 30**, Part B Application for Fiscal Year 2020, p. 32.

587.  On or about May 11, 2020, NJDOE submitted its IDEA Part B application, via mail, email and/or otherwise and subsequently received notice from the USDOE on July 1, 2020 that the application was accepted and approved.

588.  In the year 2020, NJDOE received $393,060,421 in IDEA Part B funds, and anticipated receipt of an additional $458,567,303 in 2021. *See also* TABLE in **Exhibit 32**, NJ IDEA Allocations by School District; **Exhibit 33** Table Funds for State Formula-Allocated and Selected Student Aid Programs

589.  Each Plaintiff is a person as defined in 18 U.S.C. §§ 1961(3) and 1964(c).

590.  Each individual Defendant is a person as defined in 18 U.S.C. §§ 1961 (3) and 1964 (c).

## The Applicable Statutes

591. Under 18 U.S.C. § 1962(c), it shall be unlawful for "any person employed by or associated with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce to conduct or participate directly or indirectly in the conduct of such enterprise's affairs for a pattern of racketeering activity or collection of unlawful debt."

592. Under 18 U.S.C. § 1962(d), it is unlawful to conspire to violate any of the RICO substantive provisions, including § 1962(c). 18 U.S.C. § 1964(a) creates a private cause of action to "prevent and restrain violations" of section 1962.

593. The individual enterprises, as described in 18 U.S.C. § 1961(4), are the New Jersey Department of Education ("NJDOE"), Audubon Public School District ("APSD"), Camden City Public School District ("CCPSD"), Camden County School District or Camden County Public Schools ("CCPS"), Cape May County Public School District ("CMCPS"), Essex County Public School District ("ECPS"), Gloucester County Public School District ("GCPS"), Lower Cape May Regional School District ("LCMPSD"), Manasquan Public School District ("MPSD"), Matawan-Aberdeen Regional Public School District ("MARPSD" or "MARSD"), Middle Township Public School District ("MIPSD"), Middletown Township Public School District ("MTPSD"), Monmouth County Public School District ("MONCPS"), Morris County Public School District ("MORCPS"), Ocean County Public School District ("OCPS"), Roxbury Township Public School District ("ROXPSD"), Roxbury Public School District ("ROXPSD"), Rumson-Fair Haven Public School District ("RFHPSD"), Toms River Regional Schools ("TRPSD"), Washington Township Public School District ("WASHTPSD" or "WPSD"), and West Orange Public Schools ("WOPSD"), or collectively, "the Defendants."

594. Each enterprise is an association in fact consisting of individuals who function together as a continuing unit with consensual decision-making authority.

595. Individual Defendants herein conduct the affairs of their respective enterprise in part through predicate activity which defrauds Plaintiffs through false assurances that the School District Defendants and similarly situated LEAs complied with IDEA during the COVID-19 pandemic. See **Exhibit 31**.

596. For example, Andrew Davis, in his official capacity as current Superintendent of APSD is among the individuals who conduct the operation of the enterprise APSD in part through racketeering activity, as described further below.

597. NJDOE assured the U.S. DOE that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." See **Exhibit 30**.

598. NJDOE assured the U.S. DOE that "[t]he Chief Executive Officer of a State or designee of the officer shall ensure that an interagency agreement or other mechanism for interagency coordination is in effect between each public agency described in subparagraph (b) of 34 § CFR 300.154 and the State education agency, in order to ensure that the services described in paragraph (b)(1)(i) that are needed to ensure a free appropriate public education are provided, include the provision of such services during the *pendency* of any dispute under § 300.154(a)(3)." *Id.*

599. Each individual Defendant named herein conducted the affairs of his/her respective enterprise.

600. Each individual enterprise operated as an ongoing organization separate and distinct from the individual Defendants.

601. Each enterprise has a structure separate and apart from the racketeering activity in which the individual Defendants engaged; i.e., each enterprise is a governmental entity which consists of numerous different individuals who function together with consensual decision-making authority to conduct the management and operation of the particular governmental entity.

602. Each enterprise had longevity sufficient to permit their respective individual RICO Defendants to pursue the enterprise's purpose.

603. The activities of each enterprise affected interstate commerce through mail and interstate wires with the U.S. DOE in Washington D.C.

604. Each enterprise affected interstate commerce through each individual Defendant's unlawful transmission of assurances of compliance with IDEA via interstate electronic mail that was fraudulently prepared and submitted in furtherance of the racketeering scheme.

605. Each enterprise affected interstate commerce based on each individual Defendant's collection of IDEA Part B funds wired to them through interstate banks and otherwise from the U.S. DOE based on these fraudulent assurances.

## The Racketeering Violation

606. On or about March of 2020 and continuing up through the date of the filing of this complaint, each individual RICO Defendant named herein, a person associated with or employed by their respective enterprise, did knowingly and unlawfully conduct, or participate, directly or indirectly, in each Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§1961(1) and 1961 (5), all in violation of 18 U.S.C.§ 1962(c).

607. Each Defendant engaged in a pattern of racketeering activity by committing at least two acts of racketeering activity within 10 years of each individual act.

608. Each individual Defendant's actions violated the federal mail and wire fraud statutes, 18

U.S.C. § 1341 and 18 U.S.C. § 1343, predicate acts for purposes of racketeering.

609. From March of 2020 through the present, each individual RICO Defendant knowingly and intentionally engaged in an ongoing pattern of racketeering activity under 18 U.S.C. § 1962(c), by committing the predicate acts of wire fraud and mail fraud as set forth below.

610. The fraudulent schemes involved using the interstate wires to defraud Plaintiffs, the beneficiaries of IDEA Part B Funds, of their procedural and substantive rights.

**<u>Predicate Acts by Officials of Each Enterprise</u>**

<u>DEFENDANT ANDREW DAVIS FOR AUDUBON PUBLIC SCHOOL DISTRICT ("APSD")</u>

611. Upon information and belief, Andrew Davis, in his official capacity as current Superintendent of APSD, assured the NJDOE, between January of 2019 and July of 2019, that APSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act."  See **Exhibit 31** and **Exhibit 32**, NJDOE SFY 2020 IDEA Basic and Preschool Grant Awards by District, Charter School and State Agency.

612. In addition, upon information and belief, Andrew Davis, in his official capacity as current Superintendent of APSD, assured the NJDOE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." *Id.*

613. Upon information and belief, Andrew Davis, in his official capacity as current Superintendent of APSD, made assurances to the NJDOE, between January of 2020 and July of 2020, that APSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." *Id.*

614. Upon information and belief, Andrew Davis, in his official capacity as current

Superintendent of APSD, made assurances to the NJDOE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." _Id._

615. In furtherance of his scheme to defraud, and with the purpose of executing his scheme to defraud, Defendant Davis used interstate wires and otherwise to defraud Plaintiffs of their rights under IDEA.

616. The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud, and in violation of 18 U.S.C. § 1343.

617. Defendant Davis used the interstate wires and otherwise in the years 2019 and 2020, and is continuing to use them, to further his objective to obtain federal funds under the false pretense that Plaintiffs' procedural and substantive rights under IDEA were protected by APSD during its closure.

### DEFENDANT JOSEPH CASTELLUCCI FOR LOWER CAPE MAY PUBLIC SCHOOL DISTRICT (LCMPSD)

618. Upon information and belief, Joseph Castellucci, in his official capacity as current Superintendent of LCMPSD, assured the NJDOE, between January of 2019 and July of 2019, that LCMPSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." See **Exhibit 31** and **Exhibit 32**, NJDOE SFY 2020 IDEA Basic and Preschool Grant Awards by District, Charter School and State Agency.

619. In addition, upon information and belief, Joseph Casetellucci, in his official capacity as current Superintendent of LCMPSD, assured the NJDOE, between January of 2019 and July

of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." *Id.*

620. Upon information and belief, Joseph Castellucci, in his official capacity as current Superintendent of LCMPSD, made assurances to the NJDOE, between January of 2020 and July of 2020, that LCMPSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." *Id.*

621. Upon information and belief, Joseph Castellucci, in his official capacity as current Superintendent of LCMPSD, made assurances to the NJDOE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." *Id.*

622. In furtherance of his scheme to defraud, and with the purpose of executing his scheme to defraud, Defendant Castellucci used interstate wires and otherwise to defraud Plaintiffs of their rights under IDEA.

623.  The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud, and in violation of 18 U.S.C. § 1343.

624.  Defendant Castellucci used the interstate wires and otherwise in the years 2019 and 2020, and is continuing to use them, to further his objective to obtain federal funds under the false pretense that Plaintiffs' procedural and substantive rights under IDEA were protected by APSD during its closure.

<u>DEFENDANT KATRINA MCCOMBS</u>
<u>FOR CAMDEN CITY PUBLIC SCHOOL DISTRICT ("CCPSD")</u>

625.  Upon information and belief, Katrina McCombs, in her official capacity as current Superintendent of CCPSD, obtains federal funding on behalf of the LEAP Academy Charter School.[2]

626.  Upon information and belief, the local district [Camden City Public Schools] retains over $6,000 in funding for each student that attends a charter school.[3]

627.  Upon information and belief, Katrina McCombs, in her official capacity as current Superintendent of CCPSD, assured the NJDOE, between January of 2019 and July of 2019, that CCPSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act."  See **Exhibit 31** and **Exhibit 32**, NJDOE SFY 2020 IDEA Basic and Preschool Grant Awards by District, Charter School and State Agency.

628.  In addition, upon information and belief, Katrina McCombs, in her official capacity as current Superintendent of CCPSD, assured the NJDOE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." _Id._

629.  In addition, upon information and belief, Katrina McCombs, in her official capacity as current Superintendent of CCPSD, made assurances to the NJDOE, between January of 2020 and July of 2020, that CCPSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." _Id._

630.  In addition, upon information and belief, Katrina McCombs, in her official capacity as current Superintendent of CCPSD, made assurances to the NJDOE, between January of 2020

---

[2] See Footnote 1.
[3] _Id._

and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." *Id.*

631.  In furtherance of her scheme to defraud, and with the purpose of executing her scheme to defraud, Defendant Katrina McCombs used interstate wires and otherwise to defraud Plaintiffs of their rights under IDEA.

632.  The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud, and in violation of 18 U.S.C. § 1343.

633.  Defendant Katrina McCombs used the interstate wires and otherwise in the years 2019 and 2020, and is continuing to use them, to further her objective to obtain federal funds under the false pretense that Plaintiffs' procedural and substantive rights under IDEA were protected by CCPSD during its closure.

<u>DEFENDANT DR. FRANK KASYAN</u>
<u>FOR THE MANASQUAN PUBLIC SCHOOL DISTRICT ("MPSD")</u>

634.  Upon information and belief, Defendant Dr. Frank Kasyan, in his official capacity as Superintendent of MPSD, made assurances to the NJDOE, between January of 2019 and July of 2019, that MPSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." See **Exhibit 32**.

635.  In addition, upon information and belief, Defendant Dr. Frank Kasyan, in his official capacity as Superintendent of MPSD, made assurances to the NJDOE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance

with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." *Id.*

636.  In addition, upon information and belief, Dr. Frank Kasyan, in his official capacity as current Superintendent of MPSD, made assurances to the NJDOE, between January of 2020 and July of 2020, that MPSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." *Id.*

637.  In addition, upon information and belief, Dr. Frank Kasyan, in his official capacity as current Superintendent of MPSD, made assurances to the NJDOE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." *Id.*

638.  In furtherance of his scheme to defraud, and with the purpose of executing his scheme to defraud, Defendant Dr. Frank Kasyan used interstate wires and otherwise to defraud Plaintiffs of their rights under IDEA.

639.  The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud, and in violation of 18 U.S.C. § 1343.

640.  Defendant Dr. Frank Kasyan used these interstate wires and otherwise in 2020, and is continuing to use them, to further his objective to obtain federal funds under the false pretense that Plaintiffs' procedural and substantive rights under IDEA were protected by the MPSD during the closure of it schools.

DEFENDANT JOSEPH MAJKA
FOR THE MATAWAN-ABERDEEN REGIONAL SCHOOL DISTRICT ("MARSD")

1.  Upon information and belief, Defendant Joseph Majka, in his official capacity as Superintendent of MARSD, made assurance to the NJDOE, between January of 2019 and

July of 2019, that MARSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." See **Exhibits 31 and 32**.

2.   In addition, upon information and belief, Defendant Joseph Majka, in his official capacity as Superintendent of MARSD, made assurances to the NJDOE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." *Id.*

3.   In addition, upon information and belief, Joseph Majka, in his official capacity as current Superintendent of MARSD, made assurances to the NJDOE, between January of 2020 and July of 2020, that MARSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." *Id.*

4.   In addition, upon information and belief, Joseph Majka, in his official capacity as current Superintendent of MARSD, made assurances to the NJDOE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." *Id.*

5.   In furtherance of his scheme to defraud, and with the purpose of executing his scheme to defraud, Defendant Joseph Majka used interstate wires and otherwise to defraud Plaintiffs of their rights under IDEA.

6.   The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud, and in violation of 18 U.S.C. § 1343.

7.   Defendant Joseph Majka used these interstate wires and otherwise in 2020, and is continuing

to use them, to further his objective to obtain federal funds under the false pretense that Plaintiffs' procedural and substantive rights under IDEA were protected by MARSD during the closure of its schools.

DEFENDANT MARY ELLEN WALKER<br>FOR THE MIDDLETOWN TOWNSHIP PUBLIC SCHOOL DISTRICT ("MTPSD")

8.   Upon information and belief, Defendant Mary Ellen Walker, in her official capacity as Superintendent of MTPSD, made assurance to the NJDOE, between January of 2019 and July of 2019, that MTPSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." See **Exhibits 31 and 32**.

9.   In addition, upon information and belief, Defendant Mary Ellen Walker, in her official capacity as Superintendent of MTPSD, made assurances to the NJDOE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." *Id.*

10.  In addition, upon information and belief, Mary Ellen Walker, in her official capacity as current Superintendent of MTPSD, made assurances to the NJDOE, between January of 2020 and July of 2020, that MTPSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." *Id.*

11.  In addition, upon information and belief, Mary Ellen Walker, in her official capacity as current Superintendent of MTPSD, made assurances to the NJDOE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." *Id.*

12.  In furtherance of her scheme to defraud, and with the purpose of executing her scheme to

defraud, Defendant Mary Ellen Walker used interstate wires and otherwise to defraud Plaintiffs of their rights under IDEA.

13. The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud, and in violation of 18 U.S.C. § 1343.

14. Defendant Mary Ellen Walker used these interstate wires and otherwise in 2020, and is continuing to use them, to further her objective to obtain federal funds under the false pretense that Plaintiffs' procedural and substantive rights under IDEA were protected by the MTPSD during its closure.

DEFENDANT LORETTA RADULIC
FOR THE ROXBURY TOWNSHIP PUBLIC SCHOOL DISTRICT ("ROXPSD")

15. Upon information and belief, Defendant Loretta Radulic, in her official capacity as Superintendent of RoxPSD, made assurances to the NJDOE, between January of 2019 and July of 2019, that RoxPSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act."  See **Exhibits 31 and 32**.

16. In addition, upon information and belief, Defendant Loretta Radulic, in her official capacity as Superintendent of RoxPSD, made assurances to the NJDOE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." *Id.*

17. In addition, upon information and belief, Loretta Radulic, in her official capacity as current Superintendent of RoxPSD, made assurances to the NJDOE, between January of 2020 and July of 2020, that RoxPSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." *Id.*

18.  In addition, upon information and belief, Loretta Radulic, in her official capacity as current Superintendent of RoxPSD, made assurances to the NJDOE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." *Id.*

19.  In furtherance of her scheme to defraud, and with the purpose of executing her scheme to defraud, Defendant Loretta Radulic used interstate wires and otherwise to defraud Plaintiffs of their rights under IDEA.

20.  The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud, and in violation of 18 U.S.C. § 1343.

21.  Defendant Loretta Radulic used these interstate wires and otherwise in 2020, and is continuing to use them, to further her objective to obtain federal funds under the false pretense that Plaintiffs' procedural and substantive rights under IDEA were protected by the RoxPSD during its closure.

## DEFENDANT DEBRA GULICK
## FOR THE RUMSON-FAIR HAVEN PUBLIC SCHOOL DISTRICT ("RFHPSD")

22.  Upon information and belief, Defendant Debra Gulick, in her official capacity as Superintendent of RFHPSD, made assurances to the NJDOE, between January of 2019 and July of 2019, that RFHPSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." See **Exhibits 31 and 32**.

23.  In addition, upon information and belief, Defendant Debra Gulick, in her official capacity as Superintendent of RFHPSD, made assurances to the NJDOE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the

procedural safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." *Id.*

24.    In addition, upon information and belief, Debra Gulick, in her official capacity as current Superintendent of RFHPSD, made assurances to the NJDOE, between January of 2020 and July of 2020, that RFHPSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." *Id.*

25.    In addition, upon information and belief, Debra Gulick, in her official capacity as current Superintendent of RFHPSD, made assurances to the NJDOE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." *Id.*

26.    In furtherance of her scheme to defraud, and with the purpose of executing her scheme to defraud, Defendant Debra Gulick used interstate wires and otherwise to defraud Plaintiffs of their rights under IDEA.

27.    The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud, and in violation of 18 U.S.C. § 1343.

28.    Defendant Debra Gulick used these interstate wires and otherwise in 2020, and is continuing to use them, to further her objective to obtain federal funds under the false pretense that Plaintiffs' procedural and substantive rights under IDEA were protected by the RFHPSD during its closure.

DEFENDANT THOMAS GIALANELLA
FOR THE TOMS RIVER PUBLIC SCHOOL DISTRICT ("TRPSD")

29.    Upon information and belief, Defendant Thomas Gialanella, in his official capacity as

Superintendent of TRPSD, made assurances to the NJDOE, between January of 2019 and July of 2019, that TRPSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." See **Exhibits 31 and 32**.

30. In addition, upon information and belief, Defendant Thomas Gialanella, in his official capacity as Superintendent of TRPSD, made assurances to the NJDOE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." _Id._

31. In addition, upon information and belief, Thomas Gialanella, in his official capacity as current Superintendent of TRPSD, made assurances to the NJDOE, between January of 2020 and July of 2020, that TRPSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." _Id._

32. In addition, upon information and belief, Thomas Gialanella, in his official capacity as current Superintendent of TRPSD, made assurances to the NJDOE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." _Id._

33. In furtherance of his scheme to defraud, and with the purpose of executing his scheme to defraud, Defendant Thomas Gialanella used interstate wires and otherwise to defraud Plaintiffs of their rights under IDEA.

34. The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud, and in violation of 18 U.S.C. § 1343.

35.  Defendant Thomas Gialanella used these interstate wires and otherwise in 2020, and is continuing to use them, to further his objective to obtain federal funds under the false pretense that Plaintiffs' procedural and substantive rights under IDEA were protected by the TRPSD during its closure.

DEFENDANT JEFFREY MOHRE
FOR THE WASHINGTON PUBLIC SCHOOL DISTRICT ("WPSD")

36.  Upon information and belief, Defendant Jeffrey Mohre, in his official capacity as Superintendent of WPSD, made assurances to the NJDOE, between January of 2019 and July of 2019, that WPSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." See **Exhibits 31 and 32**.

37.  In addition, upon information and belief, Defendant Jeffrey Mohre, in his official capacity as Superintendent of WPSD, made assurances to the NJDOE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." *Id.*

38.  In addition, upon information and belief, Jeffrey Mohre, in his official capacity as current Superintendent of WPSD, made assurances to the NJDOE, between January of 2020 and July of 2020, that WPSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." *Id.*

39.  In addition, upon information and belief, Jeffrey Mohre, in his official capacity as current Superintendent of WPSD, made assurances to the NJDOE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." *Id.*

40.    In furtherance of his scheme to defraud, and with the purpose of executing his scheme to defraud, Defendant Jeffrey Mohre used interstate wires and otherwise to defraud Plaintiffs of their rights under IDEA.

41.    The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud, and in violation of 18 U.S.C. § 1343.

42.    Defendant Jeffrey Mohre used these interstate wires and otherwise in 2020, and is continuing to use them, to further his objective to obtain federal funds under the false pretense that Plaintiffs' procedural and substantive rights under IDEA were protected by the WPSD during its closure.

<u>DEFENDANT DR. J. SCOTT CASCONE</u>
<u>FOR THE WEST ORANGE PUBLIC SCHOOL DISTRICT ("WOPSD")</u>

43.    Upon information and belief, Defendant Dr. J. Scott Cascone, in his official capacity as Superintendent of WOPSD, made assurances to the NJDOE, between January of 2019 and July of 2019, that WOPSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." See **Exhibits 31 and 32**.

44.    In addition, upon information and belief, Defendant Dr. J. Scott Cascone, in his official capacity as Superintendent of WOPSD, made assurances to the NJDOE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." _Id._

45.    In addition, upon information and belief, Dr. J. Scott Cascone, in his official capacity as current Superintendent of WOPSD, made assurances to the NJDOE, between January of 2020 and July of 2020, that WOPSD had "policies and procedures in place as required by

Part B of the Individuals with Disabilities Education Act." *Id.*

46.  In addition, upon information and belief, Dr. J. Scott Cascone, in his official capacity as current Superintendent of WOPSD, made assurances to the NJDOE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." *Id.*

47.  In furtherance of his scheme to defraud, and with the purpose of executing his scheme to defraud, Defendant Dr. J. Scott Cascone used interstate wires and otherwise to defraud Plaintiffs of their rights under IDEA.

48.  The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud, and in violation of 18 U.S.C. § 1343.

49.  Defendant Dr. J. Scott Cascone used these interstate wires and otherwise in 2020, and is continuing to use them, to further his objective to obtain federal funds under the false pretense that Plaintiffs' procedural and substantive rights under IDEA were protected by the WOPSD during its closure.

<u>DEFENDANT DR. LOVELL PUGH-BASSETT</u>
<u>FOR THE CAMDEN COUNTY PUBLIC SCHOOLS or</u>
<u>CAMDEN COUNTY SCHOOL DISTRICT ("CCPS")</u>

50.  Upon information and belief, Defendant Dr. Lovell Pugh-Bassett, in her official capacity as Superintendent of CCPS, made assurances to the NJDOE, between January of 2019 and July of 2019, that CCPS had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." See **Exhibits 31 and 32**.

51.  In addition, upon information and belief, Defendant Dr. Lovell Pugh-Bassett, in her official

capacity as Superintendent of CCPS, made assurances to the NJDOE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." *Id.*

52. In addition, upon information and belief, Dr. Lovell Pugh-Bassett, in her official capacity as current Superintendent of CCPS, made assurances to the NJDOE, between January of 2020 and July of 2020, that CCPS had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." *Id.*

53. In addition, upon information and belief, Dr. Lovell Pugh-Bassett, in her official capacity as current Superintendent of CCPS, made assurances to the NJDOE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." *Id.*

54. In furtherance of her scheme to defraud, and with the purpose of executing her scheme to defraud, Defendant Dr. Lovell Pugh-Bassett used interstate wires and otherwise to defraud Plaintiffs of their rights under IDEA.

55. The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud, and in violation of 18 U.S.C. § 1343.

56. Defendant Dr. Lovell Pugh-Bassett used these interstate wires and otherwise in 2020, and is continuing to use them, to further her objective to obtain federal funds under the false pretense that Plaintiffs' procedural and substantive rights under IDEA were protected by the CCPS during its closure.

DEFENDANT DR. JUDITH DESTEFANO-ANEN
FOR THE CAPE MAY COUNTY PUBLIC SCHOOLS ("CMCPS")

57.    Upon information and belief, Defendant Dr. Judith DeStefano-Anen, in her official capacity as Superintendent of CMCPS, made assurances to the NJDOE, between January of 2019 and July of 2019, that CMCPS had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." See **Exhibits 31 and 32**.

58.    In addition, upon information and belief, Defendant Dr. Judith DeStefano-Anen, in her official capacity as Superintendent of CMCPS, made assurances to the NJDOE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." *Id.*

59.    In addition, upon information and belief, Dr. Judith DeStefano-Anen, in her official capacity as current Superintendent of CMCPS, made assurances to the NJDOE, between January of 2020 and July of 2020, that CMCPS had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." *Id.*

60.    In addition, upon information and belief, Dr. Judith DeStefano-Anen, in her official capacity as current Superintendent of CMCPS, made assurances to the NJDOE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." *Id.*

61.    In furtherance of his scheme to defraud, and with the purpose of executing her scheme to defraud, Defendant Dr. Judith DeStefano-Anen used interstate wires and otherwise to defraud Plaintiffs of their rights under IDEA.

62.    The interstate wires consisted of electronic messages and the collection of federal funds

through the interstate banking system, all in furtherance of the scheme to defraud, and in violation of 18 U.S.C. § 1343.

63. Defendant Dr. Judith DeStefano-Anen used these interstate wires and otherwise in 2020, and is continuing to use them, to further her objective to obtain federal funds under the false pretense that Plaintiffs' procedural and substantive rights under IDEA were protected by the CMCPS during its closure.

DEFENDANT JOSEPH S. ZARRA<br>FOR THE ESSEX COUNTY PUBLIC SCHOOLS ("ECPS")

64. Upon information and belief, Defendant Joseph S. Zarra, in his official capacity as Superintendent of ECPS, made assurances to the NJDOE, between January of 2019 and July of 2019, that ECPS had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." See **Exhibits 31 and 32**.

65. In addition, upon information and belief, Defendant Joseph S. Zarra, in his official capacity as Superintendent of ECPS, made assurances to the NJDOE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." *Id.*

66. In addition, upon information and belief, Joseph S. Zarra, in his official capacity as current Superintendent of ECPS, made assurances to the NJDOE, between January of 2020 and July of 2020, that ECPS had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." *Id.*

67. In addition, upon information and belief, Joseph S. Zarra, in his official capacity as current Superintendent of ECPS, made assurances to the NJDOE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural

safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." *Id.*

68.  In furtherance of his scheme to defraud, and with the purpose of executing his scheme to defraud, Defendant Joseph S. Zarra used interstate wires and otherwise to defraud Plaintiffs of their rights under IDEA.

69.  The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud, and in violation of 18 U.S.C. § 1343.

70.  Defendant Joseph S. Zarra used these interstate wires and otherwise in 2020, and is continuing to use them, to further his objective to obtain federal funds under the false pretense that Plaintiffs' procedural and substantive rights under IDEA were protected by the ECPS during the closure of its schools.

DEFENDANT AVE ALTERSITZ
FOR THE GLOUCESTER COUNTY PUBLIC SCHOOLS ("GCPS")

71.  Upon information and belief, Defendant Ave Altersitz, in her official capacity as Superintendent of GCPS, made assurances to the NJDOE, between January of 2019 and July of 2019, that GCPS had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." See **Exhibits 31 and 32**.

72.  In addition, upon information and belief, Defendant Ave Altersitz, in her official capacity as Superintendent of GCPS, made assurances to the NJDOE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." *Id.*

73.  In addition, upon information and belief, Ave Altersitz, in her official capacity as current

Superintendent of GCPS, made assurances to the NJDOE, between January of 2020 and July of 2020, that GCPS had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." *Id.*

74. In addition, upon information and belief, Ave Altersitz, in her official capacity as current Superintendent of GCCPS, made assurances to the NJDOE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." *Id.*

75. In furtherance of her scheme to defraud, and with the purpose of executing her scheme to defraud, Defendant Ave Altersitz used interstate wires and otherwise to defraud Plaintiffs of their rights under IDEA.

76. The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud, and in violation of 18 U.S.C. § 1343.

77. Defendant Ave Altersitz used these interstate wires and otherwise in 2020, and is continuing to use them, to further her objective to obtain federal funds under the false pretense that Plaintiffs' procedural and substantive rights under IDEA were protected by the GCPS during its closure.

<u>DEFENDANT DR. LESTER W. RICHENS</u>
<u>FOR THE MONMOUTH COUNTY PUBLIC SCHOOLS ("MONCPS")</u>

78. Upon information and belief, Defendant Dr. Lester W. Richens, in his official capacity as Superintendent of MonCPS, made assurances to the NJDOE, between January of 2019 and July of 2019, that MonCPS had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." See **Exhibits 31 and 32.**

79. In addition, upon information and belief, Defendant Dr. Lester W. Richens, in his official capacity as Superintendent of MonCPS, made assurances to the NJDOE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." _Id._

80. In addition, upon information and belief, Dr. Lester W. Richens, in his official capacity as current Superintendent of MonCPS, made assurances to the NJDOE, between January of 2020 and July of 2020, that MonCPS had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." _Id._

81. In addition, upon information and belief, Dr. Lester W. Richens, in his official capacity as current Superintendent of MonCPS, made assurances to the NJDOE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." _Id._

82. In furtherance of her scheme to defraud, and with the purpose of executing his scheme to defraud, Defendant Dr. Lester W. Richens used interstate wires and otherwise to defraud Plaintiffs of their rights under IDEA.

83. The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud, and in violation of 18 U.S.C. § 1343.

84. Defendant Dr. Lester W. Richens used these interstate wires and otherwise in 2020, and is continuing to use them, to further his objective to obtain federal funds under the false pretense that Plaintiffs' procedural and substantive rights under IDEA were protected by the

MonCPS during the closure of New Jersey Public Schools.

<u>DEFENDANT ROGER JINKS</u>
<u>FOR THE MORRIS COUNTY PUBLIC SCHOOLS ("MORCPS")</u>

85.    Upon information and belief, Defendant Roger Jinks, in his official capacity as Superintendent of MorCPS, made assurances to the NJDOE, between January of 2019 and July of 2019, that MorCPS had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." See **Exhibits 31 and 32**.

86.    In addition, upon information and belief, Defendant Roger Jinks, in his official capacity as Superintendent of MorCPS, made assurances to the NJDOE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." <u>Id.</u>

87.    In addition, upon information and belief, Roger Jinks, in his official capacity as current Superintendent of MorCPS, made assurances to the NJDOE, between January of 2020 and July of 2020, that MorCPS had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." <u>Id.</u>

88.    In addition, upon information and belief, Roger Jinks, in his official capacity as current Superintendent of MorCPS, made assurances to the NJDOE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." <u>Id.</u>

89.    In furtherance of his scheme to defraud, and with the purpose of executing his scheme to defraud, Defendant Roger Jinks used interstate wires and otherwise to defraud Plaintiffs of their rights under IDEA.

90. The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud, and in violation of 18 U.S.C. § 1343.

91. Defendant Roger Jinks used these interstate wires and otherwise in 2020, and is continuing to use them, to further his objective to obtain federal funds under the false pretense that Plaintiffs' procedural and substantive rights under IDEA were protected by the MorCPS during the closure of New Jersey Public Schools.

**DEFENDANT CHARLES MULLER**
**FOR THE OCEAN COUNTY PUBLIC SCHOOLS ("OCPS")**

92. Upon information and belief, Defendant Charles Muller, in his official capacity as Superintendent of OCPS, made assurances to the NJDOE, between January of 2019 and July of 2019, that OCPS had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." See **Exhibits 31 and 32**.

93. In addition, upon information and belief, Defendant Charles Muller, in his official capacity as Superintendent of OCPS, made assurances to the NJDOE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." *Id.*

94. In addition, upon information and belief, Charles Muller, in his official capacity as current Superintendent of OCPS, made assurances to the NJDOE, between January of 2020 and July of 2020, that OCPS had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." *Id.*

95. In addition, upon information and belief, Charles Muller, in his official capacity as current Superintendent of OCPS, made assurances to the NJDOE, between January of 2020 and July

of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." *Id.*

96.    In furtherance of his scheme to defraud, and with the purpose of executing his scheme to defraud, Defendant Charles Muller used interstate wires and otherwise to defraud Plaintiffs of their rights under IDEA.

97.    The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud, and in violation of 18 U.S.C. § 1343.

98.    Defendant Charles Muller used these interstate wires and otherwise in 2020, and is continuing to use them, to further his objective to obtain federal funds under the false pretense that Plaintiffs' procedural and substantive rights under IDEA were protected by the OCPS during the closure of New Jersey Public Schools.

DEFENDANT ANGELICA ALLEN-MCMILLAN, ED.D. FOR THE NJDOE

99.    Upon information and belief, Defendant Angelica Allen-McMillan, Ed.D., in her official capacity as Commissioner for the New Jersey Department of Education (NJDOE), via mail fraud through interstate commerce and otherwise, made assurances to the U.S. DOE, between January of 2019 and July of 2019, that NJDOE had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." See **Exhibit 30**.

100.    In addition, upon information and belief, Angelica Allen-McMillan, Ed.D., in her official capacity as State Superintendent for NJDOE, via mail fraud through interstate commerce and otherwise, made assurances to the U.S. DOE, between January of 2019 and July of 2019,

that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." *Id.*

101. In addition, upon information and belief, Defendant Angelica Allen-McMillan, Ed.D., in her official capacity as State Superintendent for NJDOE, via mail fraud through interstate commerce and otherwise, assured the U.S. DOE, between January of 2019 and July of 2019, that "[t]he Chief Executive Officer of a State or designee of the officer shall ensure that an interagency agreement or other mechanism for interagency coordination is in effect between each public agency described in subparagraph (b) of 34 § CFR 300.154 and the State education agency, in order to ensure that the services described in paragraph (b)(1)(i) that are needed to ensure a free appropriate public education are provided, include the provision of such services during the *pendency* of any dispute under § 300.154(a)(3)." *Id.*

102. Upon information and belief, NJDOE collected IDEA Part B funds from the U.S. DOE via wire fraud through interstate commerce and otherwise. *Id.*

103. NJDOE received over $51,600,636 million dollars from the U.S. DOE. *Id.*

104. In addition, upon information and belief, Defendant Angelica Allen-McMillan, Ed.D., in her official capacity as State Superintendent for NJDOE, made assurances, via mail fraud through interstate commerce and otherwise, to the US DOE, between January of 2020 and July of 2020, that NJDOE, and Defendant School Districts had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." See **Exhibit 30**.

105. In addition, upon information and belief, Defendant Angelica Allen-McMillan, Ed.D., in her official capacity as State Superintendent for NJDOE, made assurances, via mail fraud

through interstate commerce and otherwise, to the U.S. DOE, between January of 2020 and July of 2020, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 CFR§ 300.121." *Id.*

106. In addition, upon information and belief, Defendant Angelica Allen-McMillan, Ed.D., in her official capacity as State Superintendent for NJDOE, assured the U.S. DOE, via mail fraud through interstate commerce and otherwise, between January of 2020 and July of 2020, that "[t]he Chief Executive Officer of a State or designee of the officer shall ensure that an interagency agreement or other mechanism for interagency coordination is in effect between each public agency described in subparagraph (b) of 34 § CFR 300.154 and the State education agency, in order to ensure that the services described in paragraph (b)(1)(i) that are needed to ensure a free appropriate public education are provided, include the provision of such services during the *pendency* of any dispute under § 300.154(a)(3)." *Id.*

107. Upon information and belief, NJDOE collected the IDEA Part B funds from the U.S. DOE via wire fraud through interstate commerce and otherwise.

108. Upon information and belief, NJDOE received IDEA Part B funds from the U.S. DOE, and then distributed them to the Defendant School Districts by wire and otherwise.

109. Upon information and belief, the Defendant School Districts received the IDEA Part B funds from the NJDOE, and used them for unlawful purposes, including but not limited to purchasing personal protective equipment for all staff and students.

110. In furtherance of her scheme to defraud, and with the purpose of executing her scheme to defraud, Defendant Angelica Allen-McMillan, Ed.D. used interstate wires and otherwise to defraud Plaintiffs of their rights under IDEA.

111. The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud, and in violation of 18 U.S.C.§ 1343.

112. Upon information and belief, these interstate wires and otherwise were collected by Defendant Angelica Allen-McMillan, Ed.D. in the years 2019 and 2020 and are continuing to be collected, to further her objective to obtain federal funds under the false pretense that Plaintiffs' procedural and substantive rights under IDEA were protected by the NJDOE during the closure of Defendant School Districts.

113. Each use of wire communications in connection with the scheme to defraud constitutes the offense of wire fraud as prohibited by 18 U.S.C. § 1343.

114. Contrary to the individual Defendants' assurances, the Defendant School Districts did not give Plaintiffs prior written notice of their closure of schools and alteration of Plaintiffs' IEPs and school placements from in-person instruction and services to virtual instruction or services during the COVID-19 pandemic.

115. Contrary to the individual Defendants' assurances, the Defendant School Districts did not ensure that the parents of each child with a disability were included as members of any IEP Team that made decisions on the educational placement of their children during the COVID-19 pandemic.

116. Contrary to the individual Defendants' assurances, the Defendant School Districts did not maintain Plaintiffs' pendency placement through in-person instruction during the COVID-19 pandemic.

117. Contrary to the individual Defendants' assurances, the Defendant School Districts did not reconvene IEP Team Meetings to change Plaintiffs' IEPs to provide for complete virtual

instruction and services during the COVID-19 pandemic.

## Pattern Of Racketeering Activity

118. The course of conduct engaged in by each individual RICO Defendant constituted both "continuity" and "relatedness" of the racketeering activity, thereby constituting a pattern of racketeering activity, as that term is defined in 18 U.S.C. § 1961(5).

119. The individual Defendants' predicate acts have "similar purposes, results, participants, or methods of commission or are related to the affairs of the Enterprise." *Id.*

120. All predicate acts had the same purpose of defrauding Plaintiffs of IDEA Funds.

121. The continuity of the pattern of racketeering activity constitutes closed-ended continuity as it occurred over a substantial period, from about March 2020 to the present.

122. There is a threat of continued activity as each individual Defendant has repeatedly engaged in the illegal and illicit activities.

123. Engaging in the pattern of racketeering as set forth herein is the regular way the individual Defendants conduct the affairs of their respective associated association in fact enterprise.

124. Because each enterprise has been in existence for many years, and the seeking of federal funding by these individual Defendants on behalf of their associated association in fact enterprise will continue indefinitely, each individual Defendant, through the operation of his or her associated association in fact enterprise, remain a threat to others and their racketeering activity meets the open-ended continuity test.

## Injury

125. As a direct and proximate result of the individual Defendants' predicate acts in furtherance of violating 18 U.S.C. § 1962(a), Plaintiffs have been and are continuing to be deprived of their rights under IDEA, as set forth more fully above.

126.  As a direct and proximate result thereof, Plaintiffs suffered harm including significant regressions in skills and loss of competencies.

<u>PRAYER FOR RELIEF</u>

Wherefore, plaintiffs respectfully request that the Court:

1.    Assert jurisdiction over this matter;

2.    Certify this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(2);

3.    Issue a judgment declaring that the class members' status quo, pendency placement is in-person instruction and services;

4.    Issue a judgment declaring that the unilateral change in the educational placement of the Plaintiffs for more than ten cumulative days in the 2019-2020 and 2020-2021 school years, respectively, violated the procedural safeguards and rights of Plaintiffs under IDEA and discriminated against plaintiffs under IDEA, the ADA, § 504, N.J.A.C., N.J.S.A., N.J.C.R.A., N.J.L.A.D., N.J. Const., the Equal Protection Clause of the Fourteenth Amendment, and RICO.

5.    Issue a judgment declaring that the NJDOE failed to monitor and provide proper oversight and resources to the Named LEAs and other similarly situated LEAs during the COVID-19 pandemic as required under IDEA;

6.     Order Defendants herein to comply with the procedural safeguards guaranteed by IDEA for the 2021-2022 school year for the class members, thereby enjoining Defendants and other similarly situated LEAs from unilaterally changing the Plaintiffs' educational placement for more than ten cumulative days in the 2021-2022 school year, and in subsequent school years, in the event of any future school closures;

7.    Assign a Special Monitor to:  a) oversee the completion of Independent Education Evaluations ("IEE") for all the class members to determine regressions and loss of

competencies due to the unilateral changes to their IEPs and placements, and reconvene IEP Team meetings within thirty days of the completion of the IEEs;  b) make expert recommendations to the Court regarding compensatory education or pendency payments for the class members to address any regressions and/or loss of competencies; and c) ensure the expert recommendations are included in writing in the class members' IEP documents;

8.    Require Defendants herein to comply with IDEA, the ADA, § 504, N.J.A.C., N.J.S.A., N.J.C.R.A., N.J.L.A.D., N.J. Const., the Equal Protection Clause of the Fourteenth Amendment, and RICO in the event of any future school closures;

9.    Assign a RICO Special Monitor to:  1) oversee the completion of an independent audit of defendants' expenditures of their IDEA Part B Funds from March of 2020 to the present; b) oversee the defendants' expenditures of their IDEA Part B Funds for the 2021-2022 school year to ensure defendants spend IDEA Part B Funds for instruction and/or services for students with disabilities under IDEA; and c) ensure any IDEA Part B Funds that defendants spent on items other than instruction and/or services for students with disabilities under IDEA from March of 2020 through the present are reimbursed to a monitored account to be spent only upon review and approval by the RICO Special Monitor;

10.    Grant Plaintiffs, all class members, an award of compensatory education as appropriate; grant plaintiffs, all class members, an award of compensatory education in the form of an additional year of education, or more, for each school year, and/or portion thereof, plaintiffs received remote or hybrid education; grant plaintiffs, all class members,  an award of compensatory education, as pendency, in the form of a pendency voucher, or pendency fund, to address and/or compensate plaintiffs', class members', regressions and/or loss of

competencies;

11.   Declare plaintiffs to be the "substantially prevailing party" (for purposes of IDEA's fee-shifting provision);

12.   Award Plaintiffs, all class members, nominal damages;

12.   Grant leave to plaintiffs to submit a statutory fee application;

13.   Allow Plaintiffs to seek punitive damages for the claims herein, except for the RICO-related claims, to the extent that such damages are not barred by federal and state law.

14.   Direct defendants to pay for the costs and expenses for maintaining this action, including reasonable attorneys' fees pursuant to 20 U.S.C. § 1415(i)(3)(B);

15.   Award attorneys' fees pursuant to the Rehabilitation Act, the Americans with Disabilities Act, and 42 U.S.C. § 1988;

15.   Retain jurisdiction over this action until this Court is satisfied that the systemic violations of the laws and regulations complained of herein have been rectified; and

16.   Grant such other or further relief that the Court may deem just and proper.

Respectfully submitted,

_____

Keri A. Donahue
Attorney for Plaintiffs
Brain Injury Rights Group
300 East 95th Street, Suite 130
New York, NY 10128
(646) 850-5035
esther@pabilaw.org

**EXHIBITS**

| | |
|---|---|
| Exhibit 01 | B.A.'s 2021-2022 IEP |
| Exhibit 02 | K.G.'s 2019-2020 IEP |
| Exhibit 03 | A.M.'s 2019-2020 IEP |
| Exhibit 04 | D.K.'s 2020-2021 IEP |
| Exhibit 05 | J.N.'s 2020-2021 IEP |
| Exhibit 06 | M.M.'s 2020-2021 IEP |
| Exhibit 07 | L.L.'s 2019-2020 IEP |
| Exhibit 08 | K.D.'s 2020-2021 IEP |
| Exhibit 09 | S.C.'s 2020-2021 IEP |
| Exhibit 10 | C.C.'s 2020-2021 IEP |
| Exhibit 11 | T.C.'s 2020-2021 IEP |
| Exhibit 12 | M.D.'s 2020-2021 IEP |
| Exhibit 13 | K.L.'s 2019-2020 IEP |
| Exhibit 14 | J.L.'s 2019-2020 IEP |
| Exhibit 15 | N.D.'s 2020-2021 IEP |
| Exhibit 16 | 3/12/20 Supplemental Fact Sheet by the United States Department of Education |
| Exhibit 17 | March 2020 Questions and Answers for Providing Services to Children with Disabilities during the Coronavirus Disease 2019 Outbreak |
| Exhibit 18 | March 16, 2020 Governor Phil Murphy's Executive Order 104 |
| Exhibit 19 | March 13, 2020 Memo |
| Exhibit 20 | March 23, 2020 Updates and Frequently Asked Questions Related to COVID-19 School Closures |
| Exhibit 21 | Telehealth Provision |
| Exhibit 22 | April 3, 2020 Providing Special Education and Related Services to Students with Disabilities During Extended School Closures as a Result of COVID-19 |
| Exhibit 23 | April 30, 2020 Parental Waivers for the Delivery of Remote or Virtual Special Education and Related Services |
| Exhibit 24 | June 12, 2020 Guidance for Summer Learning Programs |
| Exhibit 25 | June 26, 2020 NJDOE Road Back Plan. |
| Exhibit 26 | July 24, 2020 Guidance Clarifying Expectations Regarding Fulltime Remote Learning Options for Families in 2020-2021 |
| Exhibit 27 | January 19, 2021 EO 214 |
| Exhibit 28 | March 23, 2021 Guidance on Reopening |
| Exhibit 29 | Letter from the USDOE to Superintendent Lamont Repollet (dated July 1, 2020) |
| Exhibit 30 | New Jersey Department of Education SFY 2020 IDEA Basic & Preschool Grant Awards by District, Charter School and State Agency (dated Sept. 17, 2019) |
| Exhibit 31 | July 1, 2020 IDEA Part B Application |
| Exhibit 32 | March 8, 2021 IDEA Part B Application |
| Exhibit 33 | Table (Funds for State Formula-Allocated and Selected Student Aid |

| | Programs)State School Aid copy |
|---|---|

## New Jersey School District Superintendents & Complaint Abbreviations

1. NEW JERSEY DEPARTMENT OF EDUCATION                    NJDOE
   ANGELICA ALLEN-MCMILLAN, ED.D.

2. AUDUBON PUBLIC SCHOOL DISTRICT                        APSD
   ANDREW DAVIS

3. CAMDEN CITY PUBLIC SCHOOL DISTRICT                    CCPSD
   KATRINA MCCOMBS

4. LOWER CAPE MAY PUBLIC SCHOOL DISTRICT*                LCMPSD*
   JOSEPH CASTELLUCCI

5. MANASQUAN PUBLIC SCHOOL DISTRICT                      MPSD
   DR. FRANK KAYSAN

6. MATAWAN-ABERDEEN REGIONAL SCHOOL DISTRICT             MARSD
   JOSEPH G. MAJKA, J.D.

7. MIDDLE TOWNSHIP PUBLIC SCHOOL DISTRICT*               MiPSD*
   DAVID SALVO

8. MIDDLETOWN TOWNSHIP PUBLIC SCHOOL DISTRICT            MTPSD
   MARY ELLEN WALKER

9. ROXBURY TOWNSHIP PUBLIC SCHOOL DISTRICT               ROXPSD
   LORETTA RADULIC

10. RUMSON-FAIR HAVEN PUBLIC SCHOOL DISTRICT             RFHPSD
    DEBRA GULICK

11. TOMS RIVER PUBLIC SCHOOL DISTRICT                    TRPSD
    THOMAS GIALANELLA

12. WASHINGTON TOWNSHIP PUBLIC SCHOOL DISTRICT           WPSD
    JOSEPH N. BOLLENDORF

13. WEST ORANGE PUBLIC SCHOOL DISTRICT                   WOPSD
    DR. J. SCOTT CASCONE

14. CAMDEN COUNTY PUBLIC SCHOOLS                         CCPS
    DR. LOVELL PUGH-BASSET (FEMALE)

15. CAPE MAY COUNTY PUBLIC SCHOOLS                       CMCPS
    DR. JUDITH DESTEFANO- ANEN

16. ESSEX COUNTY PUBLIC SCHOOLS                          ECPS
    JOSEPH S. ZARRA

17. MONMOUTH COUNTY PUBLIC SCHOOLS                       MONCPS
    DR. LESTER W. RICHENS

18. MORRIS COUNTY PUBLIC SCHOOLS                    MORCPS
    ROGER JINKS

19. OCEAN COUNTY PUBLIC SCHOOLS                     OCPS
    CHARLES MULLER

 

* = NOT IN RICO SECTION OF COMPLAINT