UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JENNICA CARMONA, et al.**<br><br>          **Plaintiffs**<br>     **v.**<br><br>**NEW JERSEY DEPARTMENT OF EDUCATION, et al.**<br><br>          **Defendants.** | Case No. 2:21-cv-18746-JMV-ESK<br><br><br>CIVIL ACTION |

---

**BRIEF IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS IN LIEU OF AN ANSWER**

---

**PARKER McCAY, P.A.**
**9000 Midlantic Drive, Suite 300**
**P.O. Box 5054**
**Mount Laurel, NJ 08054-1539**
**(856) 985-4062**
        Attorneys for Defendants,
        Lower Cape May Regional
        School District and Joseph
        Castellucci

**Brett E.J. Gorman, Esquire**
*Of Counsel and On the Brief*
bgorman@parkermccay.com

**Jeffrey P. Catalano, Esquire**
*On the Brief*

**Return Date on Motion:**
**January 18, 2022**
**(Oral Argument Requested)**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES........................................ iii

PRELIMINARY STATEMENT........................................ 1

STATEMENT OF FACTS........................................... 2

The Parties ................................................ 2

Plaintiffs' Substantive Claims ............................. 4

Alleged Violation of LAD and Section 504 of the Rehabilitation
Act ........................................................ 6

Alleged Violation of the Equal Protection Clause ............ 6

Alleged Violation of the Substantive Due Process Clause ...... 7

Alleged Violation of New Jersey Statutes .................... 7

Alleged Violation of the RICO Act .......................... 7

LEGAL ARGUMENT.............................................. 9

I.   THIS COURT HAS NO SUBJECT MATTER JURISDICTION OVER
PLAINTIFFS' CLAIMS AGAINST DEFENDANTS BECAUSE PLAINTIFFS
FAILED TO EXHAUST THEIR ADMINISTRATIVE REMEDIES UNDER THE
IDEA, AND THUS, THEIR CLAIMS SHOULD BE DISMISSED ........... 9

A.   This Court has no Subject Matter Jurisdiction They
Failed to Exhaust Their Administrative Remedies under the
IDEA 10

B.   Plaintiffs Cannot Demonstrate that Exhausting
Administrative Remedies Under IDEA Would Be Futile Or
Inadequate ................................................ 14

II.  PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED BASED ON
ABSTENTION ................................................ 16

A.   *Burford* Abstention .................................. 18

  i.   Timely and Adequate State Court Review is Available 19

  ii.  Abstention under Both Burford Prongs is Proper ..... 20

B.   *Pullman* Abstention .................................. 21

III.  PLAINTIFFS' CLAIMS SHOULD BE SEVERED BECAUSE THEY ARE
NOT PROPERLY JOINED IN A SINGLE LAWSUIT ................... 25

IV.  PLAINTIFFS FAIL TO SATISFY RULE 23(A) TO SHOW COMMONALITY
AND TYPICALITY OF THE PROPOSED CLASS ..................... 29

V.   PLAINTIFFS HAVE FAILED TO ESTABLISH THE CRITERIA FOR
PRELIMINARY INJUNCTIVE RELIEF ............................ 31

A.   Plaintiffs Do Not Have A Likelihood Of Success On The Merits Because Their Due Process Claims Lack Merit ....... 31

B.   Plaintiffs Do Not Have A Likelihood of Success On The Merits Because Their Equal Protection Claims Lack Merit .. 33

C.   Plaintiffs Do Not Have A Likelihood of Success On The Merits Because Their RICO Claims Not Only Lack Merit, but Reek Of Bad Faith and Contrivance ........................ 34

D.   Plaintiffs Do Not Have A Likelihood of Success On The Merits and The Court Should Not Exercise Supplemental Jurisdiction On Their State Law Claims ................... 37

E.   Plaintiffs Cannot Show Irreparable Harm ............. 37

F.   In The Balance of Hardships and Public Interest, The Balance Tips In Favor of School District Defendants ...... 38

CONCLUSION................................................. 38

## **TABLE OF AUTHORITIES**

**Cases**

*Abbott v. Burke*, 100 N.J. 269, 280-81, 495 A.2d 376 (1985).... 17

*Abbott v. Burke*, 149 N.J. 145 (1997)....................... 16, 17

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)......... 29

*American Disposal Servs., Inc. v. O'Brien*, 839 F.2d 84, 87 (2d Cir. 1988) ............................................... 21

*Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 272 (3d Cir. 2014) .............................................. 12

*Beahn v. Gayles*, Case No-2239, 2021 WL 3172272 (D. Md. July 26, 2021) ..................................................... 34

*Boss v. Rockland Electric Co.*, 95 N.J. 33, 40 (1983).......... 13

*Brian B. v. Pennsylvania Dep't of Educ.*, 51 F.Supp. 2d 611, 629 (E.D. Pa. 1999) ......................................... 33

*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)....... 18, 19, 20, 21

*Chez Sea III Corp v. Township of Union*, 945 F.2d 628, 630-31 (3d Cir. 1991) .............................................. 22

*Chiropractic America v. Lavecchia*, 180 F.3d 99, 104 (3d Cir. 1989).................................... 18, 19, 21

*Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 814 (1976) ................................................. 18

*D.O. By & Through Walker v. Escondido Union Sch. Dist.*, 854 Fed. Appx. 824, 826 (9th Cir. 2021) .............................. 31

*D'Iorio v. County of Delaware*, 592 F.2d 681, 686 (3d Cir. 1978) ..................................................... 22

*Does v. Mills*, 04 CIV. 2919 (RWS), 2005 WL 900620, at *6-7 (S.D.N.Y. Apr. 18, 2005) .............................. 21, 23

*F.D.I. v. Sweeney*, 136 F.2d 216, 219 (1st Cir. 1998) .......... 19

*Felmeister v. Office of Attorney Ethics*, 856 F.2d 529, 534 (3d Cir. 1988) .............................................. 20

*Finkelman v. Nat'l Football League*, 810 F.3d 187, 194 (3d Cir. 2016) ..................................................... 26

*Frank's GMC Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988) ................................... 31

*Fry v. Napoleon Cmty. Sch.*, 137 S.Ct. 743, 752 (2017)......... 13

*General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) ...................... 29

*Hernandez v. Grisham*, 508 F. Supp. 3d 893 (D.N.M. 2020)....... 34

*Honig v. Doe*, 484 U.S. 305, 311-312 (1988)................ 10, 14

*In re Arthur Teacher's Franchise Litigation*, 689 F.2d 1137, 1143 (3d Cir. 1982) ............................................. 31

*In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 at n.6 ................................................................. 29

*J.T. v. Dumont Pub. Sch.*, 438 N.J. Super. 241, 260, 103 A.3d 269, 280 (App. Div. 2014) ................................. *passim*

*Jeremy H. v. Mount Lebanon Sch. Dist.*, 95 F.3d 272, 281 (3rd Cir. 1996) .............................................................. 11

*Kershner v. Mazurkiewicz*, 670 F.2d 440, 448 (3d Cir. 1982).... 22

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992).... 25

*Motor Club of Am. v. Weatherford*, 841 F.Supp. 610, 623 (D.N.J. 1994) ................................................................ 19

*N.J. Prot. & Advocacy, Inc. v. N.J. Dep't of Educ.*, 563 F.Supp.2d 474, 484 (D.N.J. 2008) ........................... 11

*Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 362 (3d Cir. 2015) ............................................................... 26

*New Orleans Pubs. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) ..................................... 18

*Papasan v. Allain*, 478 U.S. 265, 285 (1986)................... 32

*Peterson v. Kunkel*, 492 F. Supp. 3d 1183 (D.N.M. 2020)........ 34

*Railroad Comm'n of Texas v. Pullman*, 312 U.S. 496, 500 (1941). 22

*Riley v. Simmons*, 45 F.3d 764, 771 (3d Cir. 1995)............. 19

*Robinson v. Cahill*, 62 N.J. 473, 515, 303 A.2d 273 (1973)..... 16

*S.W. by J.W. v. Warren*, 528 F. Supp. 2d 282, 293 (S.D.N.Y. 2007) ................................................................ 14

*San Antonio Independent Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973) ............................................................ 32, 34

*Sch. Comm. Of Burlington v. Dep't of Educ of Mass.*, 471 U.S. 359, 369-70, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985) .......... 31

*Smith v. Robinson*, 468 U.S. 992, 1011-12 (1984)............... 12

*Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016).......... 25

*U.S. v. W. Pac. R.R.*, 352 U.S. 59, 63 (1956)................. 13

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011) ................................. 29

*Wellman v. Butler Area Sch. Dist.* 877 F.3d 125, 131 (3d Cir. 2017) ................................................................ 12

**Statutes**

*N.J. Const. of 1947*, art. VIII, § 4, para. 1.................. 16

20 U.S.C §1415(i)(2)........................................... 12

6A:14-2.7(r)(i)-(iii).......................................... 11

*N.J.A.C.* 1:6A-12.1............................................ 11

N.J.A.C. 6A:14................................................. 23

*N.J.A.C.* 6A:14-2.7(a)......................................... 10

*N.J.A.C.* 6A:14-2.7(r)....................................... 11, 15

*N.J.A.C.* 6A:3-1.11............................................ 19

*N.J.A.C.* 6A:3-1.6..................................................... 19
*N.J.A.C.* 6A:8-1.3..................................................... 17
*N.J.S.A.* 18A:6-9...................................................... 19
*N.J.S.A.* 18A:7F-46(a)................................................. 17

**Other Authorities**

Executive Order 104.................................................... 33
Executive Order No. 104............................................... 26
https://coronavirus.jhu.edu/.......................................... 1
https://coronavirus.jhu.edu/region/us/new-jersey...................... 1
https://covid19.nj.gov................................................ 1
https://www.state.nj.us/education/code/proposed/Notices/N.J.R.%2
   0Notice%20of%20termination%20N.J.A.C.%206A_14,%20Special%20Educ
   ation.pdf........................................................ 4
May 4, 2020 New Jersey Register at 52 N.J.R. 976(a)................... 23

**Rules**

*N.J. Ct. R.* 2:2-3(a)(2).............................................. 20
Rule 20............................................................... 27
Rule 12(b)(6)......................................................... 25
Rule 19 of the Federal Rules.......................................... 27
Rule 2:9-2............................................................ 20
Rule 2:9-7............................................................ 20
Rule 23(a)............................................................ 29
Rule 23(b)............................................................ 29
Rule 9(b)............................................................. 36

**PRELIMINARY STATEMENT**

A global pandemic began in March of 2020 causing a public health crisis. Since the onset of the pandemic, 780,241 Americans lost their lives to COVID-19[1], 28,390 in New Jersey[2], with the numbers continuing to rise. In New Jersey, as of December 1, 2021, New Jersey's Covid Dashboard reported 1,086,722 cumulative cases.[3]

To slow the spread of the virus, state and local governments imposed restrictions on businesses and communal activities. Many of these measures were challenged in the courts through litigation. Most of these cases alleged unconstitutional interference with plaintiffs' rights to partake in otherwise legal activities. In other words, plaintiffs' challenged measures implemented by state and local governments to seek freedom from government restriction.

The matter before this Court differs in the relief sought. This case purports to be a class action brought by the parents and/or natural guardians ("Plaintiff-Parents") of students who are classified under federal law as disabled or having an educational disability ("Plaintiff-Students") (collectively, "Plaintiffs"). Rather than seeking to be free from government restrictions, Plaintiffs in the present matter seek to restrict the decisions of

---

[1] https://coronavirus.jhu.edu/ (numbers current as of December 1, 2021)
[2] https://coronavirus.jhu.edu/region/us/new-jersey (numbers current as of December 1, 2021)
[3] https://covid19.nj.gov

all Defendants, including Lower Cape May Regional School District
(hereinafter, "LCMR"). Plaintiffs request that this Court define
what constitutes minimally appropriate education for a New Jersey
public school student and to declare that in-person instruction is
the only way to provide public education.

The instant Complaint simply repackages the one filed by
Plaintiffs' counsel that the Southern District of New York
emphatically rejected. *J.T. v. de Blasio*, No. 20 Civ. 5878, 2020
U.S. Dist. LEXIS 212662, at *126 (Nov. 13, 2020). As in that case,
the Plaintiffs failed to exhaust their administrative remedies,
and no exception applies. Alternatively, the claims pursuant to
Section 504 of the Rehabilitation Act (hereinafter, "RA"), the
Americans with Disabilities Act (hereinafter "ADA"), and state law
should be dismissed because they fail to state claims for relief.
Importantly, the New York court rejected a similar 'stay
put'/pendency claims allegedly triggered by state COVID-19 school
closure orders. As in *J.T.*, the "Plaintiffs' RICO claim fails in
every particular" and "reek[s] of bad faith and contrivance." This
Court should dismiss the Complaint for the same reasons.

<u>**STATEMENT OF FACTS**</u>

<u>**The Parties**</u>

1.  Plaintiffs, consisting of both Plaintiff-Students and
    Plaintiff-Parents, filed the instant complaint in the United
    States District Court for the District of New Jersey against

the New Jersey Department of Education (hereinafter, "NJDOE"), the New Jersey Commissioner of Education New Jersey, certain public school districts in New Jersey (collectively "School District Defendants"), and the Superintendents serving those school districts. (See Gorman Cert., **Exhibit A**, Complaint, Docket No. 1).

2.  Plaintiff Dorene Camp is the parent/guardian of S.C., C.C., and T.C. who are classified as students with a disability under the Individuals with Disabilities Education Act (hereinafter, "IDEA"), 20 U.S.C. §1401(3) and are residents of LCMR's District since September 2020. (*Id.* at ¶¶65, 73).

3.  Plaintiffs allege that as a result of the March 13, closures of the school districts, the school districts altered the Plaintiff-Students' Individualized Education Programs (hereinafter "IEP") for the 2019-2020 and 2020-2021 school year to complete virtual instruction and services without any prior written notice and/or participation of parents. (Id. at ¶¶339, 355, 373, 449).

4.  The Complaint makes similar allegations on behalf of 13 other sets of students and their parents. (Id. at ¶¶245, 260, 275, 291, 307, 325, 395, 412, 427, 469).

5.  Plaintiffs assert that they are not required to exhaust their administrative due process remedies because their claims fall

within the exceptions specified by law. (Id. at ¶15). Plaintiffs fail to identify these exceptions.

6.   Redacted samples of the boilerplate due process petitions filed by Plaintiffs' counsel against LCMR and LCMR's responsive pleadings are annexed to the enclosed Gorman Certification as **Exhibits B, C, D, and E.**

7.   With regards to S.C., C.C., and T.C.'s claims, the administrative process is still ongoing. A settlement conference is scheduled before Judge Jeffrey R. Wilson on January 13, 2022. A copy of the Notices of Settlement Conference are annexed to the enclosed Gorman Certification as **Exhibit F.**

**Plaintiffs' Substantive Claims**

8.   In March of 2020, the Complaint notes that Governor Phil Murphy issued an executive order closing all private and public school buildings indefinitely. (See **Exhibit A** at ¶190, Exhibit 18 to the Complaint).

9.   It also notes that on April 1, 2020, the New Jersey legislature[4] modified N.J.A.C. 6A:14 to permit school districts to deliver special education and related services

---

[4] According to the State Board of Education, the NJDOE promulgates and modifies the regulations. *See* https://www.state.nj.us/education/code/proposed/Notices/N.J.R.%20Notice%20of%20termination%20N.J.A.C.%206A 14,%20Special%20Education.pdf. Regardless, this distinction is not material to the issues of this motion.

to students with disabilities through telemedicine and telehealth or through electronic communications during extended public health related school closures. (*Id*. at ¶¶195-197, Exhibit 21 to the Complaint).

10. Plaintiffs alleged that Defendants "did not maintain Plaintiffs' pendency placement through in-person instruction." (*Id*. at ¶513).

11. Plaintiffs claim that Defendants "did not give Plaintiffs prior written notice of its closure of schools and alteration of Plaintiffs' IEPs and school placements from in-person instruction and services to virtual instruction or services." (*Id*. at ¶506).

12. Plaintiffs alleged that Defendants "did not ensure that the parents of each child with a disability were included as members of any IEP [t]eam that made decisions on the educational placement of their children." (*Id*. at ¶512).

13. Plaintiffs alleged that Defendants "did not reconvene IEP [t]eam [m]eetings to change Plaintiffs' IEPs to provide for complete virtual instruction and services." (*Id*. at ¶517).

14. Plaintiffs claim that as a result of the school closures, Defendants failed to provide Plaintiff-Students with the special education and related services set forth in their IEPs and denied them a Free and Appropriate Education (hereinafter, "FAPE") under the IDEA. (Id. at ¶¶232, 245,

260, 275, 291, 307, 325, 339, 355, 373, 395, 412, 427, 449, 468).

15. Plaintiffs assert that Defendants violated the IDEA through their "systemic failure to ensure that children with disabilities had appropriate access to the same educational opportunities as their non-disabled peers." (*Id*. at ¶520).

**Alleged Violation of LAD and Section 504 of the Rehabilitation Act**

16. Plaintiffs state Defendants violated the RA through stopping in-person instruction in March of 2020. (*Id*. at ¶536).

17. Plaintiffs contend that Defendants' closure of in-person instruction in March of 2020 discriminated against Plaintiffs as persons with disabilities by denying them equal access and otherwise limiting their access to education, programs, and services as compared to their non-disabled peers. (*Id*. at ¶549, 577, 583).

**Alleged Violation of the Equal Protection Clause**

18. Plaintiffs assert that Defendants deprived Plaintiffs of their right to equal protection as guaranteed by the Fourteenth Amendment to the United States Constitution, in violation of the Civil Rights Act of 1871, 42 U.S.C. §1983, when they closed their in-person instruction in March of 2020." (*Id*. at ¶554-55).

19.   Plaintiffs state "Defendants' closure of schools in March of 2020 resulted in a disparate impact on Plaintiffs due to their disabilities in violation of the ADA and §504". (*Id.* at ¶556).

**Alleged Violation of the Substantive Due Process Clause**

20.   Plaintiffs assert that Defendants have deprived Plaintiffs of their substantive due process rights and their right to education when schools closed in March of 2020, as guaranteed by the New Jersey Constitution and the United States Constitution in violation of the Civil Rights Act of 1871, 42 U.S.C. §1983 (*Id.* at ¶¶564-65, 567)

**Alleged Violation of New Jersey Statutes**

21.   Plaintiffs allege "Defendants failed to comply with the procedural requirements for prior written notice, educational placements, pendency placements, IEP [t]eam [m]eetings, and equal access to instruction and services for Plaintiffs in violation of N.J.S.A. §18A:46-1 *et seq.* and N.J.A.C. §6A:14-2.3." (*Id.* at 571).

**Alleged Violation of the RICO Act**

22.   Plaintiffs contend that the individually named Defendants engaged in a scheme to defraud the United States Department of Education of approximately $368,431,755.00 in 2020 by making false assurances to the United States Department of Education that they complied with the IDEA during the COVID-19 Pandemic. *(Id.* at ¶586).

23. Plaintiffs assert the individually named Defendants "knowingly and unlawfully conduct[ed], or participate[d], directly or indirectly, in each [e]nterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1) and 1961(5), all in violation of 18 U.S.C. § 1962(c)." (*Id.* at ¶606).

24. Plaintiffs claim that the individually named defendants "engaged in a pattern of racketeering activity by committing at least two acts of racketeering activity within 10 years of each individual act." (*Id.* at ¶607).

25. Plaintiffs also claim that the individually named Defendants "violated the federal mail and wire fraud statutes, 18 U.S.C. §1341 and 18 U.S.C. §1343, predicate acts for purposes of racketeering." (*Id.* at ¶608).

26. According to Plaintiffs, "[t]he fraudulent schemes involved using the interstate wires to defraud Plaintiffs, the beneficiaries of IDEA Part B Funds, of their procedural and substantive rights." (*Id.* at ¶610)

27. Specifically, Plaintiffs allege that that Superintendent of LCMR, Joseph Castellucci made assurances to the NJDOE between January 2019 and July 2019 and between January 2020 and July 2020 that the Districts had "policies and procedures in place as required by Part B of" IDEA and "[c]hildren with

disabilities and their parents are afforded the procedure safeguards" required by IDEA. (*Id.* at ¶¶597, 618-619).

28.  Plaintiffs claimed that Joseph Castellucci is using interstate wires and otherwise since 2020 to obtain federal funds and defraud Plaintiffs. (*Id.* at ¶¶621, 622).

**LEGAL ARGUMENT**

Defendants LCMR and Joseph Castellucci hereby move for dismissal under Federal Rule of Civil Procedure 12(b)(1) and (6) for lack of subject matter jurisdiction and failure to state a claim on which relief can be granted.

**I.   THIS COURT HAS NO SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS AGAINST DEFENDANTS BECAUSE PLAINTIFFS FAILED TO EXHAUST THEIR ADMINISTRATIVE REMEDIES UNDER THE IDEA, AND THUS, THEIR CLAIMS SHOULD BE DISMISSED**

Of the Plaintiffs' Counts, the first eight seek redress for alleged violations of the IDEA. While Plaintiffs attempt to restate their claims through different legal vectors, the first eight counts arise out of an alleged denial of FAPE. Plaintiffs are required to exhaust administrative remedies under the IDEA before a federal court may assert jurisdiction over any claims for relief under the statute. Thus far, no evidence has been presented to indicate that Plaintiffs have adhered to the exhaustion requirement by completing the administrative process available to them under the IDEA. Plaintiffs have no right to elevate their claims to any court until a local hearing officer renders a

decision on the merits. The Complaint does not contain facts sufficient to merit excusal from the exhaustion requirement.

A. This Court has no Subject Matter Jurisdiction They Failed to Exhaust Their Administrative Remedies under the IDEA

The purpose of the IDEA is to "provide students with disabilities a [FAPE]." *See J.T. v. de Blasio*, No. 20 Civ. 5878, 2020 U.S. Dist. LEXIS 212663, at *126 (Nov. 13, 2020). The IDEA establishes procedural safeguards that guarantee parents the opportunity for meaningful input regarding their child's education and the right to seek recovery for decisions they think inappropriate for their child. *See Id*. at *125 (*quoting Honig v. Doe*, 484 U.S. 305, 311-312 (1988)). Parents may also seek a due process hearing to raise complaints regarding the educational placement of their child or the provisions of FAPE. *See J.T., supra*, at *125.

The NJDOE promulgated regulations to effectuate compliance with a parent's right to a due process hearing under the IDEA. Pursuant to *N.J.A.C.* 6A:14-2.7(a), a parent may file a due process petition and receive a hearing before an administrative law judge whenever they disagree with the District regarding identification, evaluation, reevaluation, classification, disciplinary action, educational placement, or the provision of FAPE. *Ibid*.

A parent in New Jersey who believes that their child's IDEA "pendency" or "stay put" rights were violated may file an

application for emergent relief. These applications are governed by the provisions of *N.J.A.C.* 6A:14-2.7(r) and *N.J.A.C.* 1:6A-12.1. *N.J.A.C.* 6A:14-2.7(r)(i)-(iii) expressly permits a motion for emergent relief to address "issues involving a break in the delivery of services" or "concerning placement pending the outcome of due process proceedings."

Thus, each individual student-plaintiff must exhaust the administrative procedures available under the IDEA before seeking relief from the federal courts. *N.J. Prot. & Advocacy, Inc. v. N.J. Dep't of Educ.*, 563 F.Supp.2d 474, 484 (D.N.J. 2008). The exhaustion rule permits "agencies to exercise discretion and apply their expertise, to allow the complete development of the record before judicial review, to prevent parties from circumventing the procedures established by Congress, and to avoid unnecessary judicial decisions by giving the agency an opportunity to correct errors." *J.T. v. Dumont Pub. Sch.*, 438 N.J. Super. 241, 260, 103 A.3d 269, 280 (App. Div. 2014) [internal citations omitted] Further, "[t]his provision bars plaintiffs from circumventing IDEA's exhaustion requirement by taking claims that could have been brought under IDEA and repackaging them as claims under some other statute" such as the RA or ADA. *J.T. v. Dumont Pub. Sch.*, *supra*, 438 N.J. Super. at 260 (App. Div. 2014) (*citing Jeremy H. v. Mount Lebanon Sch. Dist.*, 95 F.3d 272, 281 (3rd Cir. 1996)).

Failure to exhaust administrative remedies under the IDEA deprives a court of subject matter jurisdiction. *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 272 (3d Cir. 2014). "Congress intended plaintiffs to ***complete*** the administrative process before resorting to federal court." *Ibid*. [emphasis added]; *see also Wellman v. Butler Area Sch. Dist*. 877 F.3d 125, 131 (3d Cir. 2017). Bypassing the administrative process "render[s] superfluous most of the detailed procedural protections outline in the statute [and] run[s] counter to Congress' view that the needs of handicapped children are best accommodated by having the parents and the local education agency work together to formulate *an individualized plan for each handicapped child's education*." *See Smith v. Robinson*, 468 U.S. 992, 1011-12 (1984).

¶15 of Plaintiffs' Complaint should start and end the Court's factual analysis. Plaintiffs admitted that they "initiated, ***but have not exhausted***, their administrative remedies under 20 U.S.C §1415(i)(2). . ." *See* Complaint, ¶15 [emphasis added]. Plaintiffs' admit that they have not exhausted their administrative remedies.

Should the Court wish to delve further, the Due Process Complaints brought on behalf of S.C., C.C., and T.C. are already being reviewed through the administrative process afforded to them via state law. The administrative law matters are currently scheduled for a settlement conference on January 13, 2022 before Judge Jeffrey R. Wilson. *See* Gorman Cert., **Exhibit F**. The pending

settlement conference shows that the Plaintiffs have not exhausted the administrative process and, therefore, their Complaint fails to state a claim for which relief can be granted.

Second, even after the perfunctory and insincere due process petition, the Complaint does not specify which, if any, services in the IEP were denied to S.C., C.C., and T.C., nor does the Complaint describe any substantive educational loss by Plaintiffs. The lack of a meaningful administrative hearing makes it impossible to ascertain, with specificity, the losses claimed by Plaintiffs.

The doctrine of exhaustion applies when "a claim is cognizable in the first instance by an administrative agency alone." *See Boss v. Rockland Electric Co.*, 95 N.J. 33, 40 (1983) (*quoting U.S. v. W. Pac. R.R.*, 352 U.S. 59, 63 (1956)). In making its decision, a trial court should look to the "substance or gravamen, of the plaintiff's complaint." *See J.T.*, *supra*, at *126. The Court's analysis should be guided by two hypothetical questions:

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school – say, a public theater or library? And second, could an adult at the school – say, an employee or visitor – have pressed essentially the same grievance?

*See Id.* at *126-27 (*quoting Fry v. Napoleon Cmty. Sch.*, 137 S.Ct. 743, 752 (2017)). If the answer to those questions is "no," then the complaint likely concerns a FAPE. *See J.T.*, *supra*, at *127.

There are three exceptions to the exhaustion requirement:

> Exhaustion is not necessary if (1) it would be futile to
> resort to the IDEA's due process procedures; (2) an
> agency had adopted a policy or pursued a practice of
> general applicability that is contrary to law; or (3) it
> is improbable that adequate relief can be obtained by
> pursuing administrative remedies.

*See Ibid.* [internal citations omitted]. Plaintiffs must carry the burden on a claimed exception. *See J.T.*, *supra*, at *127 (*quoting S.W. by J.W. v. Warren*, 528 F. Supp. 2d 282, 293 (S.D.N.Y. 2007)).

Here, applying the *Fry* two-part test reveals that Plaintiffs' claims against the Defendants stem from the alleged failure to fulfill Plaintiffs' educational needs by providing special education and/or related services as delineated in their IEPs. Accordingly, Plaintiffs are required to exhaust administrative remedies under the IDEA before invoking this Court's jurisdiction over any of their claims. As equitable relief Plaintiffs seek is available under the IDEA, Plaintiffs' First through Eighth Counts must be dismissed for lack of subject-matter jurisdiction.

B. Plaintiffs Cannot Demonstrate that Exhausting
   Administrative Remedies Under IDEA Would Be Futile Or
   Inadequate

In *Honig v. Doe*, *supra*, the United States Supreme Court held that "parents may bypass the administrative process where exhaustion would be futile or inadequate." *See* 484 U.S. at 327. The party seeking to avoid exhaustion bears the burden of demonstrating futility or inadequacy. *See Ibid*.

Accepting as true all facts pled in the Complaint, such facts fail to demonstrate that due process hearings would be futile or inadequate. Plaintiffs may apply for emergent relief on the basis that a school district has violated the pendency rights. *N.J.A.C.* 6A:14-2.7(r) expressly contemplates the filing of a motion for emergent relief to address "issues involving a break in the delivery of services" or "issues concerning placement pending the outcome of due process proceedings." It is perplexing that these "emergent" allegations are being brought approximately twenty (20) months after the start of the global pandemic and when students have returned to in-person learning.

Without controlling authority on this issue, Defendants suggest that the express availability of a motion for emergent relief in the NJ OAL and the right to prompt interlocutory review of the decision on such motion in the U.S. District Court, compels the conclusion that Plaintiffs who reside in New Jersey may not invoke the jurisdiction of a federal court to define their pendency rights before a pendency ruling from an ALJ.[5]

This is not a significant hurdle, would not pose a significant delay, and affords the Plaintiffs an opportunity to develop a

---

[5] Research has failed to reveal a Third Circuit decision expressly prohibiting the filing of an application for pendency relief with a district court as a tribunal of original jurisdiction. Nor has research revealed a Third Circuit decision entertaining a motion for pendency relief without the student having first applied to a local hearing officer.

record in support of their claim that the closure of school buildings resulted in a denial of their pendency rights. Because Plaintiffs have not meaningfully engaged in the administrative process provided by federal and state law, they failed to exhaust administrative remedies expressly designed to vindicate their pendency rights. Until such time as the Plaintiffs receive decisions from the OAL on the merits or on a motion for emergent relief, no district court will have jurisdiction over their claims.

Therefore, this Court lacks subject matter jurisdiction over Plaintiffs' claims and thus the claims should be dismissed.

## II.  PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED BASED ON ABSTENTION

All school-age children are entitled to a "thorough and efficient" free public education pursuant to the New Jersey Constitution. *See N.J. Const. of 1947*, art. VIII, § 4, para. 1.The New Jersey Supreme Court considered what constitutes a "thorough and efficient" education under the New Jersey Constitution in *Robinson v. Cahill*, 62 N.J. 473, 515, 303 A.2d 273 (1973) and then through the progeny of *Abbott v. Burke*. *See,* most recently, *Abbott v. Burke*, 149 N.J. 145 (1997).

The New Jersey Supreme Court set forth parameters of a minimally sufficient public education under the "thorough and efficient" clause:

> At its core, a constitutionally adequate education has been defined as an education that will prepare public

> school children for a meaningful role in society, one
> that will enable them to compete effectively in the
> economy and to contribute and to participate as citizens
> and members of their communities. *See* [*Abbott v. Burke*,
> 100 N.J. 269, 280-81, 495 A.2d 376 (1985)] noting that
> the Constitution requires "that educational opportunity
> which is needed in the contemporary setting to equip a
> child for his role as a citizen and a competitor in the
> labor market"

*Abbott v. Burke*, *supra*, 149 N.J. at 166-67 [internal citations

omitted].

Based on this guidance, the Legislature and NJDOE have defined

and redefined the specific components of a "thorough and efficient"

education for decades. Currently, New Jersey education law

requires the Commissioner of Education to "develop and establish

. . . efficiency standards which define the types of programs,

services, activities, and materials necessary to achieve a

thorough and efficient education." *N.J.S.A.* 18A:7F-46(a). As such,

the State Board of Education approved "New Jersey Student Learning

Standards," as codified in *N.J.A.C.* 6A:8-1.3 [emphasis added].

New Jersey has a substantial interest in determining the

components of a standard education for its school-age children.

Extensive work towards a definition sufficient to withstand

constitutional scrutiny continues. Nothing in the current

standards suggests that remote instruction would deprive students

of a "thorough and efficient" education. In fact, the Legislature,

NJDOE's Road Back manual, and the State's color-coded matrix

expressly consider remote instruction in certain circumstances.

Given that there is no New Jersey Court case on whether remote instruction infringes students' constitutional right to a minimally sufficient education, Plaintiffs asking a federal court to superimpose its own definition instead of utilizing a readily available state-level administrative remedy is improper.

A. *Burford* Abstention

The Supreme Court held in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) that federal courts should abstain from exercising jurisdiction when it is appropriate to give a state court the opportunity to determine questions of state law which may avoid the need to address a federal constitutional issue. *See Chiropractic America v. Lavecchia*, 180 F.3d 99, 104 (3d Cir. 1989)(citing *Burford*, 319 U.S. at 333, n. 29). This doctrine, known as *Burford* abstention provides:

> Where timely and adequate state court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern"

*See New Orleans Pubs. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) (quoting *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 814 (1976)).

> The *Burford* abstention doctrine applies where a case
> involves both difficult, complex questions of state law
> and administration of a state law by a scheme of state
> administrative agencies. When this is the case,
> involvement by the federal courts may cause confusion,
> and disrupt the state's efforts to establish a coherent,
> uniform policy to solve a complex local problem. The
> danger which *Burford* abstention avoids is the prospect
> of a case being decided differently depending on whether
> it was heard by state officials and judges or by federal
> judges. In such a situation, a federal court could
> potentially undermine the state's administrative
> process.

*F.D.I. v. Sweeney*, 136 F.2d 216, 219 (1st Cir. 1998); *see Motor Club of Am. v. Weatherford*, 841 F.Supp. 610, 623 (D.N.J. 1994).

     i.   *Timely and Adequate State Court Review is Available*

The first step in the *Burford* abstention analysis is whether "timely and adequate state-court review" is available. *See Chiropractic America*, *supra*, 180 F.3d at 104 (citing *Riley v. Simmons*, 45 F.3d 764, 771 (3d Cir. 1995)). "Only if a district court determines that such review is available, should it turn to the other [abstention factors]." *See Id*.

The Commissioner of Education has *quasi*-judicial power to adjudicate all "controversies and disputes arising under the school laws," *N.J.S.A.* 18A:6-9, and Department regulations afford the opportunity for emergent relief in appropriate cases. *See N.J.A.C.* 6A:3-1.6 ("Emergent relief or stay"). The Commissioner may address the issue on appeal or may submit the matter to the Office of Administrative Law ("OAL") for an initial decision with the Commissioner having the final say. *See N.J.A.C.* 6A:3-1.11. Any

party dissatisfied with the Commissioner's determination may appeal as a matter of right to the Appellate Division of the Superior Court. *See N.J. Ct. R.* 2:2-3(a)(2).

Further, under Rule 2:9-2, the usual briefing and oral argument schedule "may be accelerated on the court's own motion or on the motion of any party," and under Rule 2:9-7, "[o]n or after the filing with the Appellate Division of a notice of appeal or of a notice of motion for leave to appeal from a state administrative agency or officer, a motion for ad interim relief or for a stay of the decision, action or rule under review shall be made in the first instance to the agency whose order is appealed from and, if denied, to the Appellate Division." In this case, there is timely and adequate state court review available to any party who alleges that a public school student is not receiving a minimally constitutional public education.

### ii.  *Abstention under Both Burford Prongs is Proper*

In *New Orleans Public Service*, the Supreme Court developed a three-factor test to employ when analyzing the second prong of *Burford* abstention. Under this test, a court must determine: (1) "whether the particular regulatory scheme involves a matter of substantial public concern, (2) 'whether it is 'the sort of complex, technical regulatory scheme to which the *Burford* abstention doctrine is usually applied,' *Felmeister v. Office of Attorney Ethics*, 856 F.2d 529, 534 (3d Cir. 1988); and (3) whether

federal review of a party's claims would interfere with the state's efforts to establish and maintain a coherent regulatory policy." *See Chiropractic America*, 180 F.3d at 105 (citing *New Orleans Pub. Serv.*, *supra*, 491 U.S. at 361)).

In the New York case of *Does v. Mills*, 04 CIV. 2919 (RWS), 2005 WL 900620, at *6-7 (S.D.N.Y. Apr. 18, 2005), a federal District Court held that *Burford* abstention was appropriate where plaintiffs' challenged the validity of newly adopted regulations pursuant to the IDEA. The Court held that *Burford* abstention was proper in order to "avoid resolving difficult state law issues involving important public policies or avoid interfering with state efforts to maintain a coherent policy in an area of comprehensive regulation or administration". *Id.* (*citing American Disposal Servs., Inc. v. O'Brien*, 839 F.2d 84, 87 (2d Cir. 1988)). The Court held that the regulations at issue "involve state statutory entitlements in an area of tradition state concern" and that the case raises issues that "necessitate discretionary interpretation of state statutes". *Does*, *supra* at *6-7. The instant matter involves the same public policies while the state endeavors to maintain coherent policy in response to a global pandemic.

For these reasons, Defendants move to dismiss the Complaint under Rule 12(b)(1) on grounds of *Burford* abstention.

B. *Pullman* Abstention

When presented with both a federal constitutional issue and an unsettled issue of state law whose resolution might narrow or eliminate the federal constitution question, abstention may be justified under principles of comity in order to avoid "needless friction with state policies." *See Railroad Comm'n of Texas v. Pullman*, 312 U.S. 496, 500 (1941); *Chez Sea III Corp v. Township of Union*, 945 F.2d 628, 630-31 (3d Cir. 1991). This doctrine is known as *Pullman* abstention. The first step in the *Pullman* analysis is to determine whether three special circumstances exist:

> (1) Uncertain issues of state law underlying the federal constitutional claims brought in federal court;
> (2) State law issues amendable to a state court interpretation that would obviate the need for, or substantially narrow, the scope of adjudication of the constitutional claims;
> (3) A federal court's erroneous construction of state law would be disruptive of important state policies

*See D'Iorio v. County of Delaware*, 592 F.2d 681, 686 (3d Cir. 1978), *overruled on other grounds*, *Kershner v. Mazurkiewicz*, 670 F.2d 440, 448 (3d Cir. 1982) (*en banc*). If the district court finds that all three of the "special circumstances" are present, it must then make determine as to whether abstention is appropriate based on the weight of these criteria and other relevant factors.

This case undoubtedly presents issues of state law underlying a federal constitutional claim. The New Jersey Legislature, the New Jersey Supreme Court, and the Department have determined that the "thorough and efficient" education guaranteed by the State

Constitution as the minimum level of opportunity to which every school-age child is entitled. Plaintiffs set forth that in-person instruction is necessary to satisfy the minimum level of education each school-age child is entitled to. However, there are no New Jersey court decisions explicitly addressing this question. That said and in response to the COVID-19 pandemic, section 6 of Executive Order No. (EO) 103 (2020) authorized agency heads to waive/suspend/modify any existing rule where the enforcement of the rule would be detrimental to the public welfare during the emergency, notwithstanding the provisions of the Administrative Procedure Act or any law to the contrary. Pursuant to that authority, and with the approval of the Governor and in consultation with the State Director of Emergency Management and the Commissioner of the Department of Health, the State Board of Education, at the April 1, 2020, meeting, approved modifications to the rules regarding special education to provide flexibility to school districts and educational agencies in the operations of schools and the 2 delivery of education and services. The rule modifications at N.J.A.C. 6A:14 became effective on April 14, 2020, and the notice of rule modification was published in the May 4, 2020 New Jersey Register at 52 N.J.R. 976(a).

Moreover, in *Does*, *supra*, the New York federal court held that abstention was also appropriate under *Pullman* abstention. The Court held that abstention would "avoid unnecessary resolution of

federal constitutional, statutory and regulatory issues that might
well be mooted by future state construction of the regulations.
The dispute here, which involves difficult questions of how to
best serve children with disabilities and how to curb inefficient
use of SED administrative resources, implicates sensitive area[s]
of social policy upon which the federal courts ought not to enter."
*Id*. at *7 [internal citations omitted]. The Court further stated
that "The Plaintiffs have initiated individual hearings, and they
have the right to appeal disputed IHO ruling as provided by state
law. Abstention here will avoid the interpretation of new state
regulations by the federal court without the benefit of state
determinations." *Ibid*.

If Plaintiffs avail themselves to the administrative remedies
available, State education officials and the New Jersey Courts
have the opportunity to determine whether defendants' actions deny
Plaintiff-Students a "thorough and efficient" education. That
determination would obviate the need for federal review or, at
least, narrow or more precisely frame the issues to be decided.

Finally, an erroneous construction by this Court as to what
constitutes a "thorough and efficient" education, as it related
specifically to virtual learning during a global pandemic, would
disrupt important state policies. Plaintiffs have not suggested
there is anything unique about any Defendant insofar as the
definition of a "thorough and efficient" is concerned. A holding

by this Court that in-person instruction is a necessary component of a "thorough and efficient" education would preempt a highly complex state regulatory structure affecting all school districts in New Jersey. As such, Defendants move under Rule 12(b)(6) on the grounds of *Pullman* abstention until Plaintiffs exhaust their available state-level administrative and judicial remedies.

## III.   <u>PLAINTIFFS' CLAIMS SHOULD BE SEVERED BECAUSE THEY ARE NOT PROPERLY JOINED IN A SINGLE LAWSUIT</u>

Individual school districts are autonomous entities that make decisions independently from one another. There are no allegations in the complaint suggesting that the Defendants are being sued as a defendant class – and properly so, for no such class could be certified without violating the law of standing.

To have standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). The Third Circuit's standing inquiry for class actions focuses on the class representatives. "[P]utative class members need not establish Article III standing. Instead, the 'cases or controversies' requirement is satisfied so long as a class representative has standing, whether in the context

of a settlement or litigation class." *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 362 (3d Cir. 2015)

Here, the purported class representatives cannot show standing against **all defendants** as each Plaintiff's claims are only traceable to the school districts that the Plaintiff-Student attended. Clearly, each individual Plaintiff-Student and his/her parents would only have standing to bring a claim against that child's school district and, potentially, the NJDOE. Named plaintiffs S.C., C.C., and T.C. have standing to assert a claim for violation of their rights against only one school district – LCMR – and perhaps against the NJDOE. But these Plaintiffs have no claim against another school district, because they suffered no injury that can be traced to actions of another school district.

Moreover, the Third Circuit has previously explained that the traceability element is not satisfied if the alleged injury is merely "the result of the independent action of some third party not before the court." *Finkelman v. Nat'l Football League*, 810 F.3d 187, 194 (3d Cir. 2016). Plaintiffs admit that "[o]n March 16, 2020, Governor Phil Murphy signed Executive Order No. 104, indefinitely closing all public and private preschool, elementary and secondary schools in New Jersey." *See* **Exhibit A** at ¶190. Governor Murphy's Executive Order No. 104 stated: "5. The Commissioner of DOE shall continue working with each public school district, and private and parochial schools as appropriate, to

26

ensure that students are able to continue their educations during this time period through appropriate home instruction."

Much like the case before Chief Judge McMahon stated in *J.T. v. DeBlasio*, *supra*, this matter "is not a class action at all, but [rather] discrete lawsuits that are properly brought only against different subsets of defendants (local and state), which have been joined together in a single lawsuit. The question is whether that joinder should be allowed. The obvious answer is no." *Ibid*.

Rule 19 of the Federal Rules sets out the rules for the compulsory joinder of two or more claims of two or more claims. However, compulsory joinder is not required here because no individual Plaintiff has standing to sue any school district except the Plaintiff-Student's own school district. Because of this lack of standing, it is not necessary for **any** other district to be joined in order to accord any Plaintiff complete relief and no one except that Plaintiff and that Defendant can claim interest relating to the subject of that particular dispute.

Permissive joinder under Rule 20 also fails. Because Rule 20 joinder is permissive, a court is free to deny a plaintiff permission to join claims against different defendants. No child or his/her parents has any IDEA claim or cause of action or right to relief except as against the school district in which that child resides. As Chief Judge McMahon stated in *J.T.*, "[t]he mere fact that each district is alleged to have violated IDEA by closing its

schools during the pandemic in response to a state order does not make permissive joinder appropriate. An allegation that 'the defendants merely committed the same type of violation in the same way' is, by itself, insufficient to justify joinder." *Id*. at *126.

Each individual claim asserted by a student against his/her school district requires the presentation of unique evidence. Each child has to exhaust administrative remedies as a predicate to bringing suit under the IDEA and the record in those administrative proceedings will be pertinent only to the claims asserted by that child against his/her district. To resolve the claims asserted by any student, that student's IEP and supporting documentation has to be introduced and evaluated. Each child's situation requires the testimony of different witnesses (Child Study Team members, teachers, service providers), as well as the introduction of different reports, evaluations and other documents. Different districts will present unique witnesses, facts, and legal theories in response to distinctive claims.

Joinder will not lead to settlement, since there will not be the creation of a common fund – LCMR would only settle with LCMR students. Joinder would also not lead to a single order that could be applicable to the individualized educational plans of the various students. Plaintiffs have identified no savings of time or effort that would result if these cases were severed and no prejudice that would result if the cases were severed.

Plaintiffs' attempt to craft a one-size-fits all omnibus lawsuit is not how IDEA cases can or should be handled. As such, the Court should, at minimum, sever and dismiss all School District Defendants from this lawsuit without prejudice.

## IV.   PLAINTIFFS FAIL TO SATISFY RULE 23(A) TO SHOW COMMONALITY AND TYPICALITY OF THE PROPOSED CLASS

Plaintiffs wishing to bring a class action lawsuit in federal court must first satisfy the explicit requirements set forth in Rule 23(a). In reviewing Rule 23(a) Courts usually make factual findings and legal conclusions that overlap the underlying merits of the suit. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011).[6] In *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), the Supreme Court stated:

> Rule 23(a) states four threshold requirements applicable to all class actions: (1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical . . . of the class'); and (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class.')

*Id.* at 614. Failure to establish any one of the Rule 23(a) factors and at least one of the Rule 23(b) requirements precludes class certification.

---

[6] Second, if the requirements of Rule 23(a) have been satisfied, the party seeking certification must also establish that her claim fits within one of the three types of class categories outlined in Rule 23(b). *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 at n.6 (*citing General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)).

The Court should conclude that the Plaintiffs' have not established that they are likely to demonstrate commonality and typicality successfully on the merits. Any denial of FAPE since March 2020, as well as the extent and nature of compensatory relief to which an individual Plaintiff may be entitled on account of an alleged prior IDEA pendency violation, must be determined on a student-by-student basis. Each Plaintiff has a different educational program, a different disability, academic performance level, cognitive level, and other variables which must be taken into consideration. Each Plaintiff-Student is unique, has received services differently and has responded to such services differently since March 2020. Some students may have regressed to the point where they require compensatory education – and their school districts may provide it voluntarily without the need for legal action. Other students may have suffered no more than a temporary setback or may have even thrived while receiving alternate means of instruction.

All Plaintiff-Students have one thing in common: should they be dissatisfied with the educational services they have received from their local school district, they have the right to pursue a petition for due process seeking relief from a local hearing officer. However, that may be the extent of their commonality and typicality. Determining an appropriate remedy under the IDEA "is a fact specific inquiry requiring careful analysis of the

evidence." *D.O. By & Through Walker v. Escondido Union Sch. Dist.*, 854 Fed. Appx. 824, 826 (9th Cir. 2021)(*citing Sch. Comm. Of Burlington v. Dep't of Educ of Mass.*, 471 U.S. 359, 369-70, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985)).

## V.   PLAINTIFFS HAVE FAILED TO ESTABLISH THE CRITERIA FOR PRELIMINARY INJUNCTIVE RELIEF

On an application for a preliminary injunction, the moving party must generally show both (1) a reasonable probability of eventual success in the litigation and (2) that the movant will be irreparably injured if relief is not granted.[7] *See In re Arthur Teacher's Franchise Litigation*, 689 F.2d 1137, 1143 (3d Cir. 1982). Injunctive relief is an extraordinary remedy, which should be granted only in limited circumstances. *See Frank's GMC Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988). A preliminary injunction is not proper where "either or both of these prerequisites are absent." *See Frank's GMC Truck Center, Inc., supra*, at 102.

### A. Plaintiffs Do Not Have A Likelihood Of Success On The Merits Because Their Due Process Claims Lack Merit

Plaintiffs' claim for relief under the Due Process clause of the U.S. Constitution does not state a cognizable claim for relief.

---

[7] While the burden rests upon the moving party to make these two requisite showings, the district court should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest. *See In re Arthur Teacher's Franchise Litigation*, 689 F.2d 1137, 1143 (3d Cir. 1982).

A constitutional right to education *was expressly rejected* by the United States Supreme Court when it held "education, of course, is not among the rights afforded explicit protection under our Federal Constitution. Nor do we find any basis for saying it is implicitly so protected." *San Antonio Independent Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973)(rejecting a Constitutional challenge similar to the *Abbott* line of cases, for disparities in educational outcome caused by school financing system). The Court rejected the notion of challenging the adequacy of an education under the Constitution based on social and economic disparities. *Id*. at 24. The U.S. Supreme Court has expressly noted that it has <u>never ruled on</u> whether there is a <u>potential</u>, much more limited right to a "minimally adequate education" such as protections against for students who "are not taught to read or write" and "receive no instruction on even the educational basics." *Papasan v. Allain*, 478 U.S. 265, 285 (1986). Plaintiffs have not raised anything approaching that level of deprivation in the present case, where comprehensive remote instruction was in place in the District.

But assuming, *arguendo*, that they had, it would not satisfy the standard established by the Supreme Court that even the most extreme educational deprivation is not yet conferred a clearly established right under the Constitution. The Third Circuit has already considered what types of educational deprivation could result in a Constitutional violation and set the bar incredibly

high. The Eastern District of Pennsylvania held that in the context
of a failure to educate juvenile detainees between the ages of 14-
20 years of age, "loss of education for up to five years,
commencing no earlier than the fourteenth birthday – is not
substantial enough to constitute . . . a denial of education."
*Brian B. v. Pennsylvania Dep't of Educ.*, 51 F.Supp. 2d 611, 629
(E.D. Pa. 1999). Nothing in the type of supposed deprivation
alleged by Plaintiffs comes close to even the level of deprivation
in the *Brian B.* case, given the comprehensive and complete
educational program in place in the District. Therefore,
Plaintiffs' Constitutional Due Process claim must be dismissed.

    B. <u>Plaintiffs Do Not Have A Likelihood of Success On The</u>
       <u>Merits Because Their Equal Protection Claims Lack Merit</u>

Plaintiffs failed to exhaust the IDEA remedies and,
therefore, the Equal Protection claim must be dismissed. Further,
Plaintiffs' Equal Protection claim must be dismissed as having
even less support than their unsupported Due Process claim.

Plaintiffs' argument that virtual instruction is a form of
discrimination is flawed on its face, when it is an instructional
choice expressly permitted under State educational policy widely
implemented by New Jersey communities. Every district in the state
at some point was operating on either a remote or partially remote
(hybrid) basis due to Executive Order 104.

Regardless, the legal theory itself is foreclosed by the Supreme Court when it held "the Equal Protection Clause does not require absolute equality or precisely equal advantages. Nor . . . can any system assure equal quality of education except in the most relative sense." *Rodriguez*, *supra* 411 U.S. at 24.

Here, Plaintiffs were treated equally to non-disabled students. All were equally affected by the Executive Order or School District's decisions to continue remote or hybrid learning. The Orders and decisions are therefore facially neutral. *See Hernandez v. Grisham, 508 F. Supp. 3d 893 (D.N.M. 2020)*. In the context of COVID-19 closure orders, courts have held that such orders are rationally related to a state's, or school district's, legitimate interest in preventing the spread of COVID-19. *See, e.g.*, *Ibid.*; *Beahn v. Gayles*, Case No-2239, 2021 WL 3172272 (D. Md. July 26, 2021); *Peterson v. Kunkel*, 492 F. Supp. 3d 1183 (D.N.M. 2020). Nor have Plaintiffs alleged facts of discriminatory intent or animus. *Hernandez*, 508 F. Supp. 3d at 991-92. Plaintiffs fail to state a cognizable claim, and this Count must be dismissed.

C. Plaintiffs Do Not Have A Likelihood of Success On The Merits Because Their RICO Claims Not Only Lack Merit, but Reek Of Bad Faith and Contrivance

As noted, the court in *J.T.* previously examined and dismissed **with prejudice** similar RICO claims brought by a putative national class who were represented by Plaintiffs' current counsel. *J.T.*, 500 F.Supp.3d at 166-72. That court expressly stated that the

claims "fail[ed] in every particular" and that "the RICO allegations here asserted reek of bad faith and contrivance." *Id.* at 165, 172. For the same reasons discussed by that court, the RICO claims here should be dismissed.

Nor did Plaintiffs plead a statewide conspiracy to defraud the federal government of IDEA funding. First, like *J.T.*, Plaintiffs lack standing to assert a RICO claim because they "cannot establish standing if the alleged injury is the derivative result of a fraudulent scheme that targets another victim" – i.e., the U.S. Department of Education, which is responsible for distributing IDEA funds. *Id.* at 166.

Second, Plaintiffs' Complaint also "fails to allege the existence of any enterprise – a necessary element to any RICO claim." *Id.*, at 166. As in *J.T.*, "Plaintiffs assert that the entire educational system throughout [New Jersey] is being run as a single massive 'racketeering enterprise,'" and that fails to demonstrate an "association-in-fact[.]" *Id.*, at 166-168. There are no *specific* plausible allegations that the LCMR or Joseph Castellucci colluded with any individuals at the other School District Defendants or even the Department to accept IDEA funding but not provide services or programs. To do so "would contradict allegations that *are* made in the Complaint, which underscore and emphasize the separateness of school districts." *Id.*, at 168 [emphasis in original].

Third, Plaintiffs fail to allege a plausible conspiracy. Like *J.T.*, Plaintiffs' Complaint merely alleges that School District Defendants were "independently following the separate orders of" Governor Murphy and the guidance issued by the USDOE and the NJDOE. But the fact that Defendants, and other LEAs in New Jersey, "reached the same result independently" and followed the Governor's Orders and offered remote instruction under express grant "is insufficient to plead conspiracy". *Ibid*.

Lastly, Plaintiffs' "lack of standing and the failure to allege the existence of either an enterprise or a conspiracy doom this misguided effort". *Id*. at 170. Plaintiffs fail to plausibly allege predicate acts sufficient to sustain a RICO claim. "The essence of the alleged frauds that constitute the RICO predicate acts in this case is the receipt of federal [IDEA] funds by [School Districts] for special education purposes without intending to abide by the IDEA and other federal regulations touching on the education of disabled students." *Ibid*. The "utter implausibility" of such allegations in the face of a worldwide pandemic and the uncertainty surrounding the public health crisis is self-evident. *Ibid*. "Plaintiffs have failed to allege any facts – let alone allege them with the particularity required by Rule 9(b) – that would give rise to an inference of fraudulent intent by ANY defendant, let alone by all of them." *Ibid*. at 171 (citation omitted). For these reasons and for the reasons stated in co-

36

defendant's brief in support of its Motion to Dismiss incorporated herein by reference (Docket No. 41-4), Plaintiffs fail to plausibly allege a RICO claim and the Ninth Count should be dismissed.

   D. <u>Plaintiffs Do Not Have A Likelihood of Success On The Merits and The Court Should Not Exercise Supplemental Jurisdiction On Their State Law Claims</u>

For sake of brevity and for the reasons stated in both Point I and Point II, *supra*, the Court should not exercise supplemental jurisdiction on the New Jersey State Law Claims. Exhaustion of administrative remedies is required and the abstention doctrines hold similar force barring Plaintiff's claims.

   E. <u>Plaintiffs Cannot Show Irreparable Harm</u>

Plaintiffs argue that Defendants' shutdown of public schools violates Plaintiffs' right to equal protection and causes irreparable harm. However, Defendants' did not shutdown the public schools in a manner that deprived Plaintiff-Students of equal protection, nor caused irreparable harm. Plaintiff-Parents children have been receiving instruction. Defendants do not argue that remote learning is ideal. It poses difficult challenges for students, families, and school staff; however, Plaintiffs have not shown that this manner of education caused irreparable harm. Moreover, Plaintiffs fail to show any present and continuing harm.

F. In The Balance of Hardships and Public Interest, The
   Balance Tips In Favor of School District Defendants

Defendants' position on the relative hardships to the parties

and what best serves the public interest is set forth in the

discussion above.

## CONCLUSION

Based on the foregoing, Defendants respectfully request

that the Complaint be dismissed with prejudice.

Respectfully submitted,

**PARKER McCAY P.A.**

By:  /s/ Brett E.J. Gorman

DATED: December 22, 2021          BRETT E.J. GORMAN, Esquire

38