**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**NEWARK VICINAGE**

| | |
|---|---|
| JENNICA CARMONA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> NEW JERSEY DEPARTMENT OF EDUCATION, et al., <br><br> Defendants. | Hon. John Michael Vazquez, U.S.D.J. <br><br> Civil Action No. 21-cv-18746 (JMV-ESK) <br><br><br> <u>CIVIL ACTION</u> |

---

**DEFENDANTS RUMSON-FAIR HAVEN REGIONAL SCHOOL DISTRICT, CAMDEN CITY SCHOOL DISTRICT, WASHINGTON TOWNSHIP SCHOOL DISTRICT, AND MATAWAN-ABERDEEN REGIONAL SCHOOL DISTRICT'S BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT PURSUANT TO <u>FED. R. CIV. P.</u> 11, 12(b)(1) AND (b)(6)**

---

ROSHAN D. SHAH, ESQ.
**ANDERSON & SHAH, LLC**
Attorneys At Law
1040 Broad Street, Suite 304
Shrewsbury, NJ 07002
Tel.: 732-398-6545
Fax: 732-576-0027
*Attorneys for Defendants Rumson Fair Haven Regional High School District, Camden City School District, Washington Township School District, and Matawan-Aberdeen Regional School District*

Of Counsel and On the Brief:
Roshan D. Shah, Esq.

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................... 1

PROCEDURAL AND FACTUAL BACKGROUND .............................................. 3

STANDARDS OF REVIEW .............................................................................. 10

    A.  Motion To Dismiss For Lack Of Subject Matter Jurisdiction ..................................... 10

    B.  Motion To Dismiss For Failure To State A Claim............................................. 10

ARGUMENT ................................................................................................ 12

POINT I

PLAINTIFFS FAILED TO SIGN THE COMPLAINT AND, THUS, THEIR COMPLAINT
MUST BE DISMISSED UNDER RULE 11 ........................................................ 12

POINT II

NO PLAINTIFF ATTENDED SCHOOLS WITHIN THE CCSD OR RFHRSD DURING
THE RELEVANT TIME PERIOD ...................................................................... 13

    A.  Charter Schools Are Independent Entities, A.K.'s Claims Fail.................................. 13

    B.  The Bayshore Jointure Commission Is A Separate Public Entity............................. 13

POINT III

PLAINTIFFS FAILED TO EXHAUST THEIR ADMINISTRATIVE REMEDIES UNDER
THE IDEA AND, THUS, ALL OF THEIR CLAIMS SHOULD BE DISMISSED .............. 15

    A.  The IDEA Framework .............................................................................14

    B.  The IDEA Requires Administrative Exhaustion.................................................. 16

    C.  Plaintiffs Failed To Exhaust Their Administrative Remedies .................................. 17

    D.  Plaintiffs Cannot Demonstrate A Systemic Violation And, Thus, Cannot Evade
        The Exhaustion Requirement................................................................ 18

POINT IV

THE COURT SHOULD DISMISS PLAINTIFFS' RICO CLAIMS .................................... 21

POINT V

THE COURT SHOULD DENY PLAINTIFFS' MOTION FOR A PRELIMINARY
INJUNCTION .................................................................................................................. 23

CONCLUSION  ............................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

### Cases

**Page(s)**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ........................................................................................... 10

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ........................................................................................... 10

*Beth V. by Yvonne V. v. Carroll,*
  87 F.3d 80 (3d Cir. 1996) .................................................................................. 18

*Blackman v. District of Columbia,*
  633 F.3d 1088 (D.C. Cir. 2011) ........................................................................ 15

*Burtch v. Milberg Factors, Inc.,*
  662 F.3d 212 (3d Cir. 2011) .............................................................................. 11

*Colantoni v. Bd. of Educ. of Tp. of Long Hill,*
  329 N.J. Super. 545 (App. Div. 2000) .............................................................. 14

*Connelly v. Lane Constr. Corp.,*
  809 F.3d 780 (3d Cir. 2016) ........................................................................10-11

*D.E. v. Cent. Dauphin Sch. Dist.,*
  765 F.3d 260 (3d Cir. 2014) .............................................................................. 16

*Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist.*
  *RE-1,* ___ U.S. ___137 S. Ct. 988 (2017) ........................................................ 15

*Fry v. Napoleon Cmty. Schs.,*
  ___ U.S. ___, 137 S. Ct. 743 (2017) ...................................................15, 17, 20

*Genty v. RTC,*
  937 F.2d 899 (3d Cir. 1991) ..........................................................................21-23

*Gould Elec., Inc. v. United States,*
  220 F.3d 169 (3d Cir. 2000) .............................................................................. 10

*Hafer v. Melo,*
  502 U.S. 21 (1991) .................................................................................1, 2, 22

*Hasbrouck Heights Bd. of Educ. v. W.J.,*
  358 N.J. Super. 8 (App. Div. 2003) ............................................. 14

*Hoeft v. Tucson Unified Sch. Dist.,*
  967 F.2d 1298 (9th Cir. 1992) ...............................................18, 19

*In re Arthur Treacher's Franchisee Litig.,*
  689 F.2d 1137 (3d Cir. 1982) ..................................................23, 24

*In re CitiSource, Inc. Secs. Litig.,*
  694 F. Supp. 1069 (S.D.N.Y. 1988) ...........................................21

*J.T. v. de Blasio,*
  500 F. Supp. 3d 137 (S.D.N.Y. 2020) ...............................1, 2, 21, 23

*J.Q. v. Wash. Twp. Sch. Dist.,*
  92 F. Supp. 3d 241 (D.N.J. 2015) ............................................. 10

*Komninos v. Upper Saddle River Bd. of Educ.,*
  13 F.3d 775 (3d Cir. 1994) ........................................................ 16

*L.Y. ex rel. J.Y. v. Bayonne Bd. of Educ.,*
  2011 U.S. Dist. LEXIS 32952 (D.N.J. Mar. 29, 2011) ................... 13

*LeFever v. United States,*
  2020 U.S. Dist. LEXIS 140926 (M.D. Pa. Aug. 6, 2020) ............. 12

*Massey v. City of Oklahoma City,*
  643 F. Supp. 81 (W.D. Okla. 1986) ...........................................21

*McCann v. George W. Newman Irrevocable Tr.,*
  458 F.3d 281 (3d Cir. 2006) ...................................................... 10

*Michel v. Wall Green,*
  2018 U.S. Dist. LEXIS 203443 (M.D. Pa. Nov. 29, 2018)............. 12

*Oburn v. Shapp,*
  521 F.2d 142 (3d Cir. 1975)........................................................23

*T.R. v. Sch. Dist. of Phila. L.R.,*
  4 F.4th 179 (3d Cir. 2021) ....................................................... *passim*

iv

*U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*,
   473 F.3d 506 (3d Cir. 2007) .......................................................................... 10

## STATUTES

18 U.S.C. § 1961 ........................................................................................... 1

20 U.S.C. § 1401 ......................................................................................... 15

20 U.S.C. § 1414 .................................................................................... 15, 16

20 U.S.C. § 1415 ................................................................................16, 17, 20

N.J.S.A.§ 18A:46-1 ........................................................................................ 9

## NEW JERSEY ADMINISTATIVE CODE

N.J.A.C. § 6A:14-1 ..................................................................................... 4, 9

N.J.A.C. § 6A:14-2.1................................................................................... 16

## FEDERAL RULES OF CIVIL PROCEDURE

FED. R. CIV. P. 11 ....................................................................................2, 10, 12

FED. R. CIV. P. 12 ......................................................................................... 10

## PRELIMINARY STATEMENT

Plaintiffs--A.M., A.K., M.D., K.G. and their respective parents--have filed suit against the Washington Township School District (WTSD), the Rumson-Fair Haven Regional High School District (RFHRSD), the Camden City School District (CCSD), and the Aberdeen-Matawan Regional School District (AMRSD)[1] alleging a plethora of claims under various federal and state statutes. All of these claims share one common denominator: they arise from plaintiffs' contention that the school districts denied them a "free appropriate public education" (FAPE) under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400, *et seq*., by switching to remote instruction in March 2020--when the COVID-19 pandemic first struck. Plaintiffs assert that this violated not only federal and state disability rights statutes, but also the Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq*.

Plaintiffs' theory, albeit breathtaking in scope, is not novel. A federal court in the Southern District of New York already dismissed a nearly identical suit, finding that plaintiffs lacked personal jurisdiction over out-of-state defendants, and their racketeering claims were "deficient in multiple respects," including on standing, and the failure to adequately plead the existence of a RICO enterprise or predicate acts. *J.T. v. de Blasio*, 500 F. Supp. 3d 137, 163 (S.D.N.Y. 2020). Plaintiffs--represented by the same counsel as in the New York litigation--have largely repeated these claims here. The WTSD, RFHRSD, CCSD and AMRSD now move to dismiss under Rules 11, 12(b)(1) and 12(b)(6).

---

[1] Plaintiffs have also named the current or former superintendent for CCSD, RFHRSD, and AMRSD as defendants, but only in their official capacities. Because official capacity claims are construed as claims against the entities themselves, *Hafer v. Melo*, 502 U.S. 21, 25 (1991), the reference to the entity subsumes these official capacity claims also.

*First*, plaintiffs have violated Rule 11 by failing to sign their pleading. This was brought to their attention over a month ago in a letter posted to the public docket. ECF No. 57. They have failed to promptly rectify the deficiency. That alone warrants dismissal.

*Second*, plaintiffs have no claim against CCSD or RFHRSD. No plaintiff attends schools in those districts. We brought this to plaintiffs' attention in our December 13, 2021 correspondence, and then again on January 5, 2022. ECF Nos. 57, 75. Plaintiffs have failed to take any steps to correct this obvious flaw in their unsigned pleading. The Court should not entertain claims against these entities any longer.

*Third*, all of plaintiffs' claims must be dismissed because they failed to exhaust their administrative remedies as required by the IDEA. Because plaintiffs' claims are predicated on the denial of a FAPE, they must exhaust administrative remedies before proceeding in court. They admittedly failed to do so. That deprives this Court of subject matter jurisdiction.

*Fourth,* plaintiffs' RICO claims--which are also subject to dismissal for failure to exhaust IDEA administrative remedies--fail for additional reasons. As in *J.T.*, these plaintiffs have not sufficiently alleged facts to demonstrate standing, a RICO enterprise, or predicate acts that would constitute racketeering activity. Perhaps most importantly, plaintiffs' RICO claims cannot be asserted against public entities. *Genty v. RTC*, 937 F.2d 899, 914 (3d Cir. 1991).

Plaintiffs' workaround--to sue the districts' superintendents--cannot save them. Plaintiffs sued these superintendents in their official capacity only. An official capacity claim against a public official is construed as a suit against the entity itself. *Hafer*, 502 U.S. at 25. That places plaintiffs back at square one and defeats their RICO claim.

For these reasons, and as more fully explained below, the Court should dismiss plaintiffs' Complaint as to WTSD, RFHRSD, CCSD and AMRSD.

## PROCEDURAL AND FACTUAL BACKGROUND

A.     The Unforeseen COVID-19 Pandemic And Its Impact On New Jersey School Districts, Students, And Staff.

In March 2020, the COVID-19 pandemic gripped the country, forcing seismic changes in how school districts operated and taught students. On March 16, 2020, Governor Phil Murphy issued Executive Order No. 104, which closed all "public and private preschool, elementary and secondary schools in New Jersey" until further notice. *Comp.*, ¶ 190. To assist school districts with distance, or remote, learning, the United States Department of Education (USDOE) published two guidance documents, a Supplemental Fact Sheet and a Question & Answers document. *Id.* at ¶ 186.

The Supplemental Fact Sheet stated: "'To be clear: ensuring compliance with the Individuals with Disabilities Education Act (IDEA), Section 504 of the Rehabilitations Act (Section § 504), and Title II of the Americans with Disabilities Act should not prevent any school from offering educational programs through distance instruction.'" *Id.* at ¶ 187 (citing Exhibit 16).  The Question & Answers document stated that schools would "have to 'make an individualized determination whether and to what extent compensatory services may be needed, consistent with applicable requirements, including to make up for any skills that may have been lost.'" *Id.* at ¶ 188 (citing Exhibit 17).

On March 23, 2020, the New Jersey Department of Education issued guidance to school districts. *Id.* at ¶ 192. The NJDOE's guidance mirrored the guidance provided by the USDOE and "tasked IEP teams with making 'compensatory services' decisions." *Id.* at ¶ 193. The NJDOE guidance stated that IEP teams should determine the amount of

3

compensatory services that special education students should receive on a case-by-case basis when school resumes. *Id.* at ¶ 194.

One week later, N.J.A.C. § 6A:14-1.1 was modified and permitted school districts to use "electronic communications, virtual, remote, or other online platforms" to deliver services to special education students. *Id.* at ¶ 195.

On April 30, 2020, the NJDOE issued a memorandum stating that it learned some, unidentified school districts were asking parents to waive certain rights or were conditioning special services on the parents providing written consent. *Id.* at ¶ 200. The memorandum advised school districts that such actions were contrary to federal and state law. *Id.* at ¶ 201. There is no allegation, much less suggestion, that the WTSD, CCSD, RFHRSD, or AMRSD were engaged in any such conduct.

On June 12, 2020, the NJDOE issued further guidance concerning extended school year services, which typically run in July and August. *Id.* at ¶¶ 202, 203. Specifically, the NJDOE stated school districts "must implement services to the greatest extent possible" for special education students and to consider providing extended school year services to special education students who do not normally receive them. *Id.* at ¶ 202 (citing Exhibit 24). The NJDOE made clear, however, that school districts could provide extended school year services remotely. *Id.* at ¶ 204.

On June 26, 2020, Governor Murphy issued "The Road Back Plan," which advised IEP teams to confer and determine whether a student lost "critical skills" during the time period where remote instruction was provided and to consider if compensatory services are needed. *Id.* at ¶ 207.

On July 24, 2020, the NJDOE issued further guidance, this time reiterating that if an IEP team meeting is "requested to discuss compensatory education," the school district must respond and convene a meeting within 20 calendar days. *Id.* at ¶ 209.

Five months later, on January 19, 2021, Governor Murphy signed Executive Order No. 214, which purportedly implemented "three new policies for the 2020-2021 academic year." *Id.* at ¶ 210. The policies allow for "more flexibility and understanding due to the unprecedented times caused by the ongoing COVID-19 pandemic, particularly for high school seniors, teacher evaluations, and substitute teachers." *Id.* at ¶ 211.

On March 23, 2021, the NJDOE issued guidance for re-opening schools. *Id.* at ¶ 212. The new guidance is "intended primarily for use by local health departments (LHDs) in assessing risks and school-related responses." *Id.* at ¶ 213.

    B.    <u>The Four Plaintiffs At Issue On This Motion: A.M., A.K., M.D., K.G.</u>

        1.    *A.M.'s Allegations Against WTSD.*

A.M. was 9-years-old when the COVID-19 pandemic struck in March 2020. *Comp.*, ¶ 29. At the time, A.M. was enrolled as a student in WTSD. *Id.* The Complaint alleges A.M. has a qualified disability under the IDEA. *Id.* Specifically, the Complaint alleges A.M. suffers from "accommodative esotropia, autism, 'other health impairment.'" *Id.* at ¶ 254. According to his IEP, A.M. receives "specialized academics, accommodations, fifteen twenty-minute sessions of speech per year, eight thirty-minute sessions of physical therapy per year, one ten-minute consultation with a vision specialist per year, twenty thirty-minute sessions of occupational therapy per year, five and a half hours of one-to-one aide services per day, extended school year services, and specialized transportation services." *Id.* at ¶ 256. The Complaint purports to attach A.M.'s IEP to the Complaint as

Exhibit 3. *Id.* at ¶ 34. However, Exhibit 3 concerns D.K., a Middletown Township School District student, not A.M. *See Comp.*, Exhibit 3.

When schools closed on March 13, 2020 pursuant to Governor Murphy's Executive Order No. 104, WTSD ceased all in-person instruction and altered A.M.'s IEP to provide for virtual instruction. *Id.* at ¶ 260. The Complaint alleges this change was made without prior written notice and/or participation of A.M.'s parents. *Id.*

A.M. admits he received virtual instruction and services from March 13, 2020 through June 24, 2020; from July 6, 2020 through July 30, 2020; and from the beginning of the 2020-21 school year through March 2021, when WTSD began offering a hybrid option. *Id.* at ¶ 264.

A.M. claims he filed a due process petition asserting the denial of his FAPE under the IDEA. *Id.* at ¶ 266. However, it does not appear A.M. completed the administrative process; rather, A.M. claims he is not required to exhaust his administrative due process remedies because his claim "fall[s] within the exceptions specified by law." *Id.* at ¶ 267.

   2. *A.K.'s Claims Against CCSD.*

A.K. was 6-years-old in March 2020. *Id.* at ¶ 107. At the time, A.K. was enrolled as a student within LEAP Academy Charter School. *Id.* at ¶ 112. A.K. claims--incorrectly-- that LEAP Academy Charter School is a "financial subsidiary" of CCSD. *Id.*

A.K. alleges she suffers from an intellectual disability and functions below grade level in language arts "due to her lack of sight word recognition." *Id.* at ¶ 462. Pursuant to her IEP, A.K. receives speech services 30 times per year. *Id.* at ¶ 463.

A.K. complains that LEAP Academy Charter School switched to remote instruction on March 13, 2020, in light of Governor Murphy's Executive Order No. 104. *Id.* at ¶ 468.

A.K. complains that her IEP was altered to provide for virtual instruction without prior notice or participation of her parents. *Id.*

A.K. received virtual instruction from March 13, 2020 until June 18, 2020. *Id.* at ¶ 470. In addition, she received virtual instruction the following school year until March 2021 when a hybrid option was offered. *Id.* at ¶ 471.

Like A.M., A.K. contends she filed a due process petition complaining about the denial of a FAPE. *Id.* at ¶ 473. However, it does not appear A.K. exhausted the administrative process; she contends exhaustion is not required because her claim falls within a statutory exception. *Id.* at ¶ 474.

### 3.    *M.D.'s Allegations Against RFHRSD*

M.D. was 16-years-old in March 2020. *Id.* at ¶ 83. At the time, M.D. was enrolled as a student within the Shore Center for Students with Autism. *Id.* at ¶ 385. M.D. claims this school is part of the Tinton Falls School District. *Id.* at ¶ 386. This is incorrect--the Shore Center is part of the Bayshore Jointure Commission, a separate public entity. M.D. alleges that the Tinton Falls School District receives "funding on the student's behalf" from RFHRSD, which M.D. alleges is his assigned district. *Id.* at ¶¶ 87, 386.

M.D. alleges he suffers from "global developmental impairments that adversely affect" his "functional academics, communication, maladaptive behaviors, fine motor skills, gross motor skills, and social skills." *Id.* at ¶¶ 387-88. Under his IEP, M.D. receives speech and language therapy, occupational therapy, and physical therapy three times per week. *Id.* at ¶¶ 389-91. M.D.

Shore Center ceased all-in person education due to the COVID-19 pandemic and Governor Murphy's Executive Order No. 104. *Id.* at ¶ 395. M.D. somehow blames this on RFHRSD. *Id.*

M.D. complains that his IEP was modified to provide for virtual instruction without prior written notice or the participation of his parents. *Id.* at ¶ 396. M.D. received virtual instruction from March 13, 2020 through June 12, 2020, and then extended school year instruction from July 13, 2020 through August 13, 2020. *Id.* at ¶ 398. The following year, MD. received virtual instruction until March 2021, when a hybrid option was offered. *Id.* at ¶ 399.

M.D. claims he filed a due process petition asserting the denial of a FAPE. *Id.* at ¶ 401. Once again, however, it does not appear M.D. exhausted his administrative remedies. *Id.* at ¶ 402. He claims, like his co-plaintiffs, that exhaustion is not required. *Id.* at ¶ 402.

### 4.    *K.G.'s Allegations Against AMRSD*

K.G. was 12-years-old in March 2020. *Id.* at ¶ 23. At the time, K.G. was enrolled within AMRSD. *Id.* at ¶ 237. K.G. alleges she suffers from autism which adversely impacts her learning. *Id.* at ¶ 238. She claims she "struggles with receptive language, expressive language, pragmatic language, self-modulation, visual motor skills, visual perceptual skills, and behavioral issues. *Id.* at ¶ 239.

Based on K.G.'s IEP, she receives specialized academic instruction, accommodations, speech language therapy, occupational therapy, an individual aide for 6.5 hours per day, specialized transportation, and extended school year services. *Id.* at ¶ 240. The IEP is silent as to whether K.G.'s instruction must be virtual or in-person. *Id.* at ¶ 241.

AMRSD ceased all-in person education due to the COVID-19 pandemic and Governor Murphy's Executive Order No. 104. *Id.* at ¶ 244. K.G. claims this amounted to an unlawful modification of her IEP. *Id.* at ¶ 246. K.G. received virtual instruction from

March 16, 2020, through June 24, 2020. *Id.* at ¶ 247. She also received extended school year services from July 6, 2020, through August 10, 2020. *Id.* at ¶ 248.

K.G. claims she filed a due process petition asserting the denial of a FAPE, but it appears she never completed the administrative process. *Id.* at ¶ 251. Rather, K.G. claims she is not required to exhaust her administrative remedies. *Id.* at ¶ 252.

    C.    <u>Plaintiffs' Claims.</u>

Plaintiffs purport to represent themselves and "all other similarly situated school-aged children with disabilities covered by IDEA in New Jersey and their parents." They have sued a plethora of school districts. Plaintiffs assert nine separate claims:

- Count I: violation of the IDEA;

- Count II: violation of Section 504 of the Rehabilitation Act;

- Count III: violation of the ADA;

- Count IV: violation of the Equal Protection Clause of the U.S. Constitution;

- Count V: violation of the Substantive Due Process Clause of the U.S. Constitution;

- Count VI: violation of N.J.S.A. § 18A:46-1, *et seq.* and N.J.A.C. § 6A:14-1, *et seq.*

- Count VII: violation of unspecified provisions of the New Jersey State Constitution;

- Count VIII: violation of the LAD;

- Count IX: violation of RICO against the individual defendants.

WTSD, CCSD, RFHRSD, and AMSD now move to dismiss the Complaint in its entirety.

## STANDARDS OF REVIEW

A.    Motion to Dismiss For Lack Of Subject Matter Jurisdiction.

When a motion under Rule 12(b)(1) is combined with one or more other grounds, "the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *In re Corestates Tr. Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993).

A Rule 12(b)(1) motion to dismiss may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. *Gould Elec., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). Under a facial attack, "the court looks only at the allegations in the pleadings and does so in the light most favorable to the plaintiff. *U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007). Under a factual attack, the court may "review evidence outside the pleadings." *Id.* Once a 12(b)(1) motion is raised, the burden is on the plaintiff demonstrate that subject matter jurisdiction exists. *McCann v. George W. Newman Irrevocable Tr.*, 458 F.3d 281, 286 (3d Cir. 2006).

Failure to exhaust administrative remedies under the IDEA deprives the court of subject matter jurisdiction and is properly considered under Rule 12(b)(1). *See, e.g.*, *J.Q. v. Wash. Twp. Sch. Dist.*, 92 F. Supp. 3d 241, 251 (D.N.J. 2015).

B.    Motion to Dismiss For Failure To State A Claim.

To survive a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d

Cir. 2016).

"First, it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim.'" *Id.* (alterations in original)(citing *Iqbal*, 556 U.S. at 675). "Second, it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (citing *Iqbal*, 556 U.S. at 679). "Mere restatements of the elements of a claim are not entitled to the assumption of truth." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). "Finally, '[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Connelly*, 809 F.3d at 787 (alterations in original)(citing *Iqbal*, 556 U.S. at 679).

## ARGUMENT

### POINT I

### PLAINTIFFS FAILED TO SIGN THE COMPLAINT AND, THUS, THEIR COMPLAINT MUST BE DISMISSED UNDER RULE 11.

Rule 11 requires "[e]very pleading, written motion, and other paper" to be signed by at least one attorney of record. FED. R. CIV. P. 11. "'The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention.'" *LeFever v. United States*, 2020 U.S. Dist. LEXIS 140926, at *12 (M.D. Pa. Aug. 6, 2020)(citing FED. R. CIV. P. 11)(dismissing complaint where plaintiff failed to sign it). *Michel v. Wall Green*, 2018 U.S. Dist. LEXIS 203443, at *5 (M.D. Pa. Nov. 29, 2018)("[p]laintiff's failure to sign the complaint, or file an amended complaint, means that there is no proper pleading before the court").

Here, plaintiffs' counsel has failed to sign the Complaint. *See Comp*., *113. This defect was brought to counsel's attention in a letter filed with the Court on December 13, 2021. *See* ECF No. 57. Plaintiffs' counsel failed to promptly rectify the defect. They have taken no steps to even acknowledge the omission. That by itself should result in dismissal.

<u>POINT II</u>

<u>NO PLAINTIFF ATTENDED SCHOOLS
WITHIN THE CCSD OR RFHRSD DURING
THE RELEVANT TIME PERIOD.</u>

As a threshold matter, the claims against CCSD and RFHRSD should be dismissed because the two plaintiffs asserting claims against them--A.K. and M.D., respectively--did not even attend these schools during the relevant time period. A.K. is under the mistaken impression that the CCSD Defendants oversee LEAP Academy Charter School, which is the school she actually attended. In addition, M.D. attended the Shore Center, which is within the Bayshore Jointure Commission.

A.      <u>Charter Schools Are Independent Entities, A.K.'s Claims Fail.</u>

"Though a charter school is a public school, it is operated independently of a local board of education." *L.Y. ex rel. J.Y. v. Bayonne Bd. of Educ.*, 2011 U.S. Dist. LEXIS 32952, at *7 (D.N.J. Mar. 29, 2011)(citing N.J.S.A. § 18A:36A-3). Where a student attends a charter school, the charter school "is responsible for providing special education services to disabled students, including working with a child's parents to develop an IEP." *Id.* (citing N.J.S.A. 18A:36A-11(b)).

Here, A.K. somehow blames the CCSD Defendants for the actions of LEAP Academy Charter School. A.K. contends her IEP was changed to provide for virtual services without notice and parent participation. *Id.* at ¶ 468. But this change was made by LEAP Academy Charter School, not CCSD. This defeats all of A.K.'s claims. Accordingly, the CCSD should be dismissed with prejudice.

B.      <u>The Bayshore Jointure Commission Is A Separate Public Entity.</u>

"A jointure commission is a public entity created by two or more boards of education for the purpose of complying with their statutory duties to provide educational

services to disabled students." *Hasbrouck Heights Bd. of Educ. v. W.J.*, 358 N.J. Super. 8, 10 n.1 (App. Div. 2003)(citing N.J.S.A. 18A:46-25). "[T]he purpose of a jointure commission is to provide educational facilities and programs for handicapped children." *Colantoni v. Bd. of Educ. of Tp. of Long Hill*, 329 N.J. Super. 545, 551 (App. Div. 2000).

Here, M.D. admits he was enrolled as a student in the Shore Center. *Comp.*, ¶ 385. M.D. claims the Shore Center is within the Tinton Falls School District. *Id.* at ¶ 386. It's actually run by the Bayshore Jointure Commission, an independent public entity under New Jersey law. *Hasbrouck Heights Bd. of Educ.*, 358 N.J. Super. at 10 n.1. In either event, the actions of the Tinton Falls School District and the Bayshore Jointure Commission do not give M.D. a claim against RFHRSD. He doesn't attend any school within the RFHRSD district. Thus, his claims against RFHRSD should be dismissed.

For these reasons, the Court should dismiss all claims against CCSD and RFHRSD.

<u>POINT III</u>

PLAINTIFFS FAILED TO EXHAUST THEIR
ADMINISTRATIVE REMEDIES UNDER THE
IDEA AND, THUS, ALL OF THEIR CLAIMS
<u>SHOULD BE DISMISSED.</u>

A. <u>The IDEA Framework.</u>

The IDEA "offers federal funding to States for the education of children with disabilities." *T.R. v. Sch. Dist. of Phila. L.R.*, 4 F.4th 179, 182-83 (3d Cir. 2021). In exchange, "'a State pledges to comply with a number of statutory conditions,'" the primary of which is providing a "'free appropriate public education,' or 'FAPE,' to all eligible children.'" *Id.* at 183 (citing *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, ___ U.S. ___, 137 S. Ct. 988, 993 (2017)).

"The substance of a FAPE is primarily defined to be such 'special education and related services' that 'are provided in conformity with [a child's] individualized education program,' or 'IEP.' *Id.* (alteration in original)(citing 20 U.S.C. § 1401(9)(D);  20 U.S.C. § 1414(d)(1)(A); 20 U.S.C. § 1401(29); *Fry v. Napoleon Cmty. Schs.*, ___ U.S. ___, 137 S. Ct. 743 (2017)).  "An 'IEP documents the child's current levels of academic achievement, specifies measurable annual goals for how she can make progress in the general education curriculum, and lists the special education and related service to be provided" so that the student can achieve those goals. *Id.* (citations and quotations omitted).

The IDEA "operates from the premise that each child will have unique disabilities and presumes that each program will be personalized." *Id.* (citing *Blackman v. District of Columbia*, 633 F.3d 1088, 1094 (D.C. Cir. 2011)). In keeping with its personalized nature, each IEP is "created by the child's 'IEP Team,' which consists of the child's parents, at least one 'regular education teacher' of the child ('if the child is, or may be, participating

in the regular education environment'), and certain other persons. *Id.* (citing 20 U.S.C. § 1414(d)(1)(B)).

      **B.**    <u>The IDEA Requires Administrative Exhaustion.</u>

To challenge the denial of a FAPE, or an improper IEP, the IDEA "establishes a detailed administrative mechanism for resolving disputes[.]" *Id.* (citing 20 U.S.C. § 1415). The mechanism requires states and local educational agencies to adopt "procedures for the filing of complaints"; "mediation"; "impartial due process hearings conducted by a hearing officer"; and "appeals of hearing officer findings to the state educational agency." *Id.* (citing 20 U.S.C. § 1415(b), (e), (f), and (g)). Only after these administrative processes have been exhausted may an aggrieved party "bring a civil action in a state court or United States district court." *Id.* (citing 20 U.S.C. § 1415(i)(2)). "This detailed statutory regime makes it 'clear . . . that Congress intended plaintiffs to complete the administrative process before resorting to federal court.'" *Id.* (citing *Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir. 1994)). New Jersey has adopted an administrative process consistent with 20 U.S.C. § 1415. *See* N.J.A.C. § 6A:14-2.1, *et seq*.

Absent an applicable exception, the IDEA's exhaustion requirement is mandatory. *Id.* Courts recognize an exception to the IDEA's mandatory exhaustion where: "(1) exhaustion would be futile or inadequate; (2) the issue presented is purely a legal question; (3) the administrative agency cannot grant relief; and (4) exhaustion would cause severe or irreparable harm." *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 275 (3d Cir. 2014).

Where plaintiff fails to exhaust administrative remedies, and no exception applies, then the federal court lacks subject matter jurisdiction to hear the controversy. *Id.* The lack of subject matter extends not only to claims raised under the IDEA, but to "any claims

that 'seek[] relief that is also available' under the IDEA. *T.R.*, 4 F.4th at 185 (citing 20 U.S.C. § 1415(l)).

To determine which claims "'seek relief that is also available under the IDEA,'" *id.* (citing 20 U.S.C. § 1415(l)), the United States Supreme Court adopted a two-question test. *Fry*, ___ U.S. ___, 137 S. Ct. at 756. Under *Fry*, the court asks: 1) "could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library"; 2) "could an *adult* at the school— say, an employee or visitor—have pressed essentially the same grievance?" *Id.* (emphasis in original). When the answer to both questions is "yes," then "a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject[.]" *Id.*

"A plaintiff's initial choice to pursue [the administrative] process may suggest that she is indeed seeking relief for the denial of a FAPE—with the shift to judicial proceedings prior to full exhaustion reflecting only strategic calculations about how to maximize the prospects of such a remedy." *Id.* at 757.

C.     Plaintiffs Failed To Exhaust Their Administrative Remedies.

Here, plaintiffs A.M., A.K., M.D., and K.G. make clear that their grievances all relate to their rights under the IDEA. Therefore, this Court lacks subject matter jurisdiction.

All four plaintiffs complain that their respective schools' switch to remote learning altered their IEP without proper notification to their parents and, thus, denied them a FAPE. *See Comp.*, ¶¶ 250, 265, 400, 472. By way of example, A.M. alleges:

260.  As a result of the March 13, 2020 closure of Washington Township School District, A.M.'s school altered his IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or participation of parents.

261.  The alterations and concomitant placement of A.M. at home receiving virtual instruction and services was procedurally defective because Washington Township School District:

    a.  Altered A.M.'s IEP to complete virtual instruction without prior written notice or any written notice;

    b.  Altered A.M.'s IEP without the meaningful participation of his parents;

    c.  Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing A.M.'s placement from in-person instruction and services to home placement with virtual instruction and services;

    d.  Failed to ensure that A.M. could access a free and appropriate public education on the same level as his non-disabled peers.

*Id.* at ¶¶ 260-61. The other three plaintiffs have almost verbatim grievances. *See Id.* at ¶¶ 245-46, 395-96, 468-69. This places their allegations squarely within the IDEA and requires exhaustion of administrative remedies.

    D.    **Plaintiffs Cannot Demonstrate A Systemic Violation And, Thus, Cannot Evade The Exhaustion Requirement.**

Evidently aware of the IDEA's exhaustion requirement's impact on their claims, plaintiffs attempt to circumvent it by arguing that their claims present systemic violations. *Id.* at Count I. The so-called "systemic exception" "'merely flows implicitly from, or is in fact subsumed by, the futility and no-administrative-relief exceptions.'" *T.R.*, 4 F.4th at 185 (citing *Beth V. by Yvonne V. v. Carroll*, 87 F.3d 80, 89 (3d Cir. 1996)).

"[T]he fact that a complaint 'is structured as a class action seeking injunctive relief, without more, does not excuse exhaustion.'" *Id.* (citing *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1308 (9th Cir. 1992)). Nor can plaintiff demonstrate the systemic

exception by pointing to "centralized, uniform policies that affect all students within a school or school district." *Id.*

Rather, to demonstrate the systemic exception, plaintiff must show the defendant has policies that are "'truly systemic . . . in the sense that the IDEA's basic goals are threatened on a system-wide basis' and must not 'focus[] on the shortcomings of a particular component of . . . special education.'" *Id.* (citing *Hoeft*, 967 F.2d at 1305). An example of a violation that meets the systemic exception is where plaintiff challenges the shortcomings of the administrative review process itself. *Id.* at 193.

In *T.R.*, the Third Circuit Court of Appeals affirmed the district court's order dismissing plaintiffs' claims for denial of a FAPE, because plaintiffs failed to exhaust administrative remedies. 4 F.4th at 196. There, plaintiffs, who sought to proceed as a class, asserted that the Philadelphia School District's systemically failed to provide language and interpretation services to the parents of special education students, thereby depriving them of meaningful participation in developing their child's IEP. *Id.* at 182.

Plaintiffs admittedly failed to exhaust their administrative remedies, but argued that was unnecessary because they were alleging systemic failures. *Id.* at 190. The district court rejected that argument and granted the defendant's motion to dismiss. *Id.* at 190, 196.

In affirming dismissal, the Third Circuit Court of Appeals held that plaintiffs failed to satisfy the systemic exception to the administrative exhaustion requirement. *Id.* at 193. The court found that plaintiffs' complaints were individualized because "whether a parent needs a certain translation or interpretation service" can only be determined through an individualized inquiry. *Id.* In addition, the court held that plaintiffs could "obtain relief through the administrative process." *Id.* The fact that the relief in one student's case may

have systemic impact--for example, an administrative order requiring the school district provide adequate language and interpretive services--did not mean that a systemic violation existed that permitted plaintiffs to evade the administrative exhaustion requirement. *Id.*

Here, plaintiffs-- A.M., A.K., M.D., K.G.--do not fall within the systemic exception. At the outset, the switch by their respective districts to remote learning may have impacted their respective FAPEs, but that isn't necessarily true for every special education student within their district. Some special education students were likely unaffected by the change to remote learning.

Just as importantly, whether their FAPEs were impacted is an individualized inquiry, one that can be made through the administrative process. If compensatory services are required, they will be provided on an individualized, not systemic, basis. Thus, plaintiffs have failed to show that a systemic violation exists that renders administrative exhaustion futile. For these reasons, their attempt to evade the IDEA's exhaustion requirement fails.

Because plaintiffs failed to exhaust their administrative remedies, this Court lacks subject matter jurisdiction over all of their claims, as every claim is predicated on the denial of a FAPE, *see Comp.*, ¶¶ 245-46, 260-61, 395-96, 468-69. *Fry*, ___ U.S. ___, 137 S. Ct. at 754 ("[i]f a lawsuit charges such a denial, the plaintiff cannot escape §1415(l) merely by bringing her suit under a statute other than the IDEA"); *see also T.R.*, 4 F.4th at 185. Accordingly, plaintiffs' entire Complaint should be dismissed.

POINT IV

THE COURT SHOULD DISMISS PLAINTIFFS'
RICO CLAIMS.

CCSD, RFHRSD, WTSD, AMSD join the arguments raised by the West Orange Board of Education and Middletown Board of Education regarding why plaintiffs' RICO claims fail. *See* ECF No. 41-4, \*\*28-37. The movants are similarly situated to those two parties, as the claims against them arise out of the same alleged actions, namely, the switch to remote instruction in March 2020. *See*, *e.g.*, *Comp.*, ¶¶ 223-36 with *Comp.*, ¶¶ 237-53. We add only the following two points.

First, the RICO claim here is patterned after the very same claim previously rejected in the prior, nearly identical litigation. *See J.T. v. de Blasio*, 500 F. Supp. 3d 137, 163-64 (S.D.N.Y. 2020). There, the court dismissed the RICO claims as meritless, finding plaintiffs had failed to allege facts giving rise to standing, demonstrating a RICO enterprise, or showing that the defendants engaged in predicate acts. *Id.* at 163-73. This Court should do the same here and for the same reasons.

Second, public entities cannot, as a matter of law, be RICO defendants. *Genty*, 937 F.2d at 914; *see also In re CitiSource, Inc. Secs. Litig.*, 694 F. Supp. 1069, 1079-80 (S.D.N.Y. 1988)(dismissing civil RICO claim against New York City); *Massey v. City of Oklahoma City*, 643 F. Supp. 81 (W.D. Okla. 1986)(dismissing civil RICO claim against the City of Oklahoma City).

Seemingly aware of this problem, plaintiffs attempt to circumvent it by suing several current and former superintendents, including the superintendents for CCSD (Ms. McCombs); RFHRSD (Ms. Gulick); and AMSD (Mr. Majka). *Comp.*, ¶¶ 170, and 173-74. But plaintiffs sued these individuals in their official capacity. *Id.* at \*3. An official

21

capacity claim against a public official is construed as a claim against the public entity itself. *Hafer*, 502 U.S. at 25 ("official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"). Because a public entity cannot be a RICO defendant, *see*, *e.g.*, *Genty*, 937 F.2d at 914, the plaintiffs' RICO claims fail for this additional reason also.

For these reasons, the Court should dismiss the RICO claims against WTSD, RFHRSD, CCSD and AMRSD.

POINT V

THE COURT SHOULD DENY PLAINTIFFS'
MOTION      FOR      A      PRELIMINARY
INJUNCTION.

Upon filing their Complaint, plaintiffs moved for a preliminary injunction. ECF No. 2. To obtain a preliminary injunction, the moving party must show "(1) a reasonable probability of eventual success in the litigation and (2) that the movant will be irreparably injured pendente lite if relief is not granted." *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982). In addition, "while the burden rests upon the moving party to make these two requisite showings, the district court 'should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.'" *Id.* (citing *Oburn v. Shapp*, 521 F.2d 142, 147 (3d Cir. 1975)).

Here, the WTSD, RFHRSD, CCSD and AMRSD join in the arguments set forth by the Audubon Public School District. *See* ECF No. 54-1, \*\*33-40. Based on plaintiffs' motion, which fails to distinguish between the individual plaintiffs and defendants and, instead, lumps them together, *see Pl.'s Mvg. Br.*, \*\*34-38 (ECF No. 2), the parties are similarly-situated, so as to allow movants to join the Audubon Public School District's motion. We add the following.

Plaintiffs' motion for a preliminary injunction is predicated on their RICO claim. *Pl.'s Mvg. Br.*, \*34 (ECF No. 2). As explained above, their claim lacks merit, as a public entity cannot properly be named a RICO defendant, *Genty*, 937 F.2d at 914, and they have failed to adequately plead facts plausibly demonstrating standing, a RICO enterprise, or predicate acts. *See* ECF No. 41-4, \*\*28-3; *see also J.T.*, 500 F. Supp. 3d at 163-73.

Thus, because plaintiffs cannot establish a likelihood of success on the merits, their motion for preliminary injunction also fails. *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d at 1143 ("a failure to show a likelihood of success or a failure to demonstrate irreparable injury, must necessarily result in the denial of a preliminary injunction").

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss all claims against the Camden City School District, the Washington Township School District, the Rumson-Fair Haven Regional High School District, and Aberdeen-Matawan Regional School District, and deny plaintiffs' motion for a preliminary injunction.

Respectfully submitted,

**ANDERSON & SHAH, LLC**
*Attorneys for Defendants Rumson-Fair Haven Regional High School District, Camden City School District, Washington Township School District, and Matawan-Aberdeen Regional School District, and Katrina McCombs, Debra Gulick, and Joseph Majka in their official capacities only*

By: /s/Roshan D. Shah
     ROSHAN D. SHAH, ESQ.

Dated: January 14, 2022

24