**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JENNICA CARMONA**, *et al.*,<br><br>    **Plaintiffs**,<br><br>    v.<br><br>**NEW JERSEY DEPARTMENT OF EDUCATION**, *et al.*,<br><br>    **Defendants.** | Civil Action No. 21-18746<br><br>**OPINION & ORDER** |

**VAZQUEZ, DISTRICT JUDGE**

Through this case, parents of special needs children in New Jersey seek to ensure that their children continue to receive in-person educational services during the ongoing COVID-19 pandemic. Plaintiffs, parents of fifteen special needs children, initiated this putative class action by filing a Complaint against the New Jersey Department of Education ("NJDEP") and multiple public-school districts throughout New Jersey (the "School District Defendants"), D.E. 1, and a motion for a preliminary injunction, D.E. 2. In this Opinion, the Court addresses the motion for a preliminary injunction. Some of the School District Defendants filed letters opposing Plaintiffs' motion that incorporated arguments from their pending motions to dismiss. D.E. 96, 97, 98, 114, 115. The NJDEP filed a brief in opposition, D.E. 117, to which Plaintiffs replied, D.E. 119. The Court reviewed all submissions made in support and in opposition to the motion[1] and considered

---

[1] For purposes of this Opinion, the Court refers to Plaintiffs' brief in support of their motion for a preliminary injunction, D.E. 2, as "Plfs. Br."; the NJDEP's brief in opposition, D.E. 117, as "NJDEP Opp."; and Plaintiffs' reply, D.E. 119, as "Plfs. Reply".

the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Plaintiffs' motion is **DENIED**.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

As the parties are familiar with this matter, the Court only recounts the key relevant facts here, and additional facts are discussed in the Analysis section below.[2]

Plaintiffs brought suit individually and on-behalf of fifteen school-aged children in New Jersey. The children are pupils in different school districts throughout the state. All have special needs and, all but one, B.A., had an Individualized Education Plan ("IEP") for the 2019-2020 and/or the 2020-2021 school years. *See, e.g.*, Am. Compl. ¶¶ 237-42; 254-58. An IEP is the "primary mechanism" to ensure that every disabled child receives a free appropriate public education ("FAPE"), as required by the Individuals with Disabilities Education Act ("IDEA"). *Id.* ¶ 184; *see also* 20 U.S.C. § 1400, *et seq.* An IEP is a written document that sets forth the special education and related services that must be provided to the child, to enable a FAPE. Am. Compl. ¶ 185. Through their IEPs, all the named children in this matter, except B.A., received some type of specialized support or modifications at school during the 2019-2020 and 2020-2021 school years.[3] *See, e.g., id.* ¶¶ 240, 256.

On March 16, 2020, Governor Phil Murphy signed an Executive Order that indefinitely closed all public and private preschools, as well as elementary and secondary schools in New

---

[2] The factual background is from Plaintiffs' Amended Complaint. D.E. 100. Plaintiffs filed the amended pleading on February 5, 2022, indicating that they simply corrected a technical deficiency in the Complaint.

[3] B.A. did not have an IEP for the 2019-2020 or 2020-2021 school years. An IEP was created for B.A. in September 2021 for the 2021-2022 school year. Am. Compl. ¶¶ 227-228. Plaintiffs allege that B.A. was denied a FAPE during the 2019-2020 and 2020-2021 school years through the school district's failure to provide B.A. with an IEP or other appropriate services.

Jersey because of the COVID-19 pandemic. *Id.* ¶ 190, *see also* D.E. 1-15 at 5. Due to the Executive Order, every school in the state that had not already stopped in-person instruction, including some of the School District Defendants in this matter, ceased in-person learning and began providing students with virtual instruction.[4] *See, e.g.*, Am. Compl. at ¶¶ 244-45. Plaintiffs received virtual instruction and services for the remainder of the 2019-2020 school year. Virtual instruction continued until various points in the 2020-2021 school year, when the School District Defendants began providing hybrid learning or in-person instruction. *See, e.g., id.* at ¶¶ 249, 294. Plaintiffs allege that the unilateral change from in-person to virtual instruction and services altered their IEPs so that they did not receive a FAPE through virtual instruction. *See, e.g., id.* ¶ 246.

Plaintiffs filed their Complaint and the instant motion on October 18, 2021, asserting claims under the IDEA, Section 504 of the Rehabilitation Act, the Americans with Disabilities Act, Section 1983, the New Jersey Civil Rights Act, the New Jersey Law Against Discrimination, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"). D.E. 1, 2. On October 19, 2021, the Court entered a text order explaining that after Plaintiffs informed the Court that Defendants had been served, the Court would set a briefing schedule on Plaintiffs' motion. D.E. 3. On December 10, 2021, Plaintiffs informed the Court that they served all Defendants except two. D.E. 51. The Court scheduled a telephone conference with the parties on December 13, 2021. D.E. 53. After the conference, the parties agreed to a briefing schedule for the preliminary injunction motion and three pending motions to dismiss filed by some Defendants. D.E. 72.

On January 3, 2022, Plaintiffs filed a motion for a temporary restraining order and preliminary injunction after numerous school districts throughout the state announced that they

---

[4] It appears that many of the School District Defendants stopped in-person instruction on March 13, 2020, before the Executive Order. *See, e.g.*, Am. Compl. ¶¶ 274, 290, 426, 448.

would switch from in-person to remote instruction for two or more weeks after winter break. D.E. 66. The Court held a telephone conference with the parties on January 4, 2022, and the following day, Plaintiffs filed a letter clarifying which schools switched to remote instruction or closed. D.E. 73. The Court held another telephone conference with the parties on January 11, 2022, to address Plaintiffs' request for temporary restraints, D.E. 89, and denied the motion, D.E. 90. In addition, various Defendants filed five more motions to dismiss the Complaint, D.E. 87, 91, 92, 93, 118, and four Defendants filed a motion for sanctions, D.E. 120. As discussed, although there are multiple motions pending in this matter, the Court focuses its analysis on Plaintiffs' initial motion for a preliminary injunction.

## II. PRELIMINARY INJUNCTION STANDARD

Injunctions are governed by Federal Rule of Civil Procedure 65 and Local Civil Rule 65.1. A preliminary injunction is "extraordinary" relief. *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 586 (3d Cir. 2002). Injunctive relief may only be granted when a party demonstrates that it has a reasonable probability of success on the merits, it will suffer immediate and irreparable harm if the injunction does not issue, the grant of preliminary relief will not result in greater harm to the nonmoving party, and the injunctive relief is in the public interest. *N.J. Retail Merchs. Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 385-86 (3d Cir. 2012) (citing *Crissman v. Dower Down Entm't Inc.*, 239 F. 3d 357, 364 (3d Cir. 2001)). A court must balance the four factors, provided that the party seeking the injunction demonstrates that it can satisfy the first two factors. *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017). In doing so, the court must "determine[] in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.*

### III.     ANALYSIS

Plaintiffs seek injunctive relief through their civil RICO and IDEA claims. Among other things, Plaintiffs seek an injunction declaring that their (and other class members') "status quo pendency placement is in-person instruction and services"; stating that Defendants violated the IDEA when they provided Plaintiffs with remote instruction and services; and appointing a special monitor to oversee and implement evaluations to determine class members' regression from remote learning and to implement new IEPs. Am. Compl., Prayer for Relief. Defendants maintain that Plaintiffs are not entitled to a preliminary injunction because, among other things, they fail to establish a reasonable probability of success on the merits for their RICO and IDEA claims.

With respect to the RICO claim, Plaintiffs allege that Defendants are involved in a scheme to deprive Plaintiffs of IDEA Part B funds.[5] *Id.* ¶¶ 586, 610. The NJDOE asserts that there is no private right of action for equitable relief under RICO. NJDOE Opp. at 25-27. The Third Circuit has not addressed the issue. However, multiple district courts within the Third Circuit "have affirmatively held RICO does not establish a private right of equitable relief." *Minnesota ex rel. Ellison v. Sanofi-Aventis U.S. LLC*, No. 18-14999, 2020 WL 2394155, at *12 (D.N.J. Mar. 31, 2020); *see also Johnston Dev. Grp., Inc. v. Carpenters Local No. 1578*, 728 F. Supp. 1142, 1146 (D.N.J. 1990) (explaining that RICO "makes no provision for private equitable relief"); *MSP Recovery Claims, Series LLC v. Abbott Labs.*, No. 19-21607, 2021 WL 2177548, at *9 (D.N.J. May 28, 2021) ("declin[ing] to stray from the reasoned decisions from this District" concluding that "private parties cannot obtain equitable relief under RICO").

---

[5] Through the IDEA, states are entitled to federal education funding if they have policies and procedures in place to ensure that their students receive a FAPE. 20 U.S.C. § 1412. This funding is referred to as Part B funding. In New Jersey, the NJDOE receives the Part B money then distributes it to local school districts (the "LEAs"). 20 U.S.C. § 1413.

Here, Plaintiffs rely solely on Second Circuit decisions concluding that RICO provides a private right of action for injunctive relief. *See* Plfs. Br. at 19, 22-23. But no court in this district has adopted the Second Circuit's reasoning and conclusion. *See MSP Recovery Claims*, 2021 WL 2177548, at *9 ("Moreover, Plaintiffs point to no case in this District that has adopted the reasoning of the Second and Seventh Circuits."). Moreover, Plaintiffs provide no explanation as to why this Court should follow the Second Circuit instead of the weight of authority in this district. Accordingly, Plaintiffs fail to establish that they can pursue their RICO claim for the relief sought. Plaintiffs' motion, therefore, is denied as to their RICO claim because Plaintiffs do not demonstrate a reasonable probability of success on the merits.[6]

Turning to Plaintiffs' IDEA claim, Plaintiffs seek an automatic injunction under the stay put provision of IDEA. The stay put provision provides that during the pendency of IDEA proceedings, "the child shall remain in the then-current educational placement." *D.M. v. N.J. Dep't of Educ.*, 801 F.3d 205, 211 (3d Cir. 2015) (quoting 20 U.S.C. § 1415(j)). If the stay put rule applies, "children are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved regardless of whether their case is meritorious or not." *Id.* Critically, the stay put rule "functions, in essence, as an automatic preliminary injunction" and "the usual prerequisites to injunctive relief are not required." *Id.* (quoting *Drinker ex rel. Drinker v. Colonial Sch. Dist.*, 78 F. 3d 859, 864 (3d Cir. 1996)). Accordingly, the Court must determine if the stay put provision applies rather than review the traditional four-factor rubric.

Plaintiffs maintain that when Defendants moved to virtual education in March 2020, it

---

[6] Defendants make several arguments about the substantive shortcomings of Plaintiffs' RICO claim. Because the Court concludes that Plaintiffs cannot proceed with their RICO claim, the Court does not reach these additional arguments although the Court does have serious concerns about other aspects of Plaintiffs' RICO claim.

amounted to a unilateral change in educational placement that implicated the stay put provision. Plfs. Br. at 10. Defendants disagree. First, the NJDOE points to Plaintiffs' acknowledgment that none of the IEPs at issue explicitly require in-person instruction. NJDOE Opp. at 14. Next, the NJDOE explains that in May 2020, New Jersey's regulations were modified to reflect guidance from the United States Department of Education ("USDOE"). *Id.* at 15. The USDOE guidance explains that local schools can deliver services virtually and remain in compliance with the IDEA. D.E. 1-13. Finally, the NJDOE discusses *J.T. v. de Blasio*, 500 F. Supp. 3d 137 (S.D.N.Y. 2020). NJDOE Opp. at 15.

In *J.T.*, a group of parents, represented by the same attorneys as here, brought a nationwide class action asserting similar claims as here. Plaintiffs' overarching theme was that when schools throughout the country shutdown due to the pandemic, the change to remote learning automatically altered the educational placement of every special needs student in the United States, such that they were denied a FAPE. *See J.T.*, 500 F. Supp. 3d at 147-48. In addressing the stay put arguments for the plaintiffs who attended New York City schools, the court determined that USDOE's guidance alone might "doom[] Plaintiffs' pendency claim without more." *Id.* at 187-88. The *J.T.* court further concluded that a system-wide decision of general applicability "does not work a change in pendency." *Id.* at 188-89; *see also N.D. v. Haw. Dept. of Educ.*, 600 F.3d 1104, 1116 (9th Cir. 2010) (concluding that system-wide closures and furloughs were not a change in educational placement because the children's classifications, schools and educational programs remained the same); *D.M.*, 801 F.3d at 217-18 (discussing difference between a broad policy decision that effects an entire group and an individually targeted decision). The court in *J.T.* explained that the switch to remote instruction impacted every student in the district; the City did not change any student's classification, district, or teacher. *J.T.*, 500 F. Supp. 3d at 189-90. The

court further explained that the purpose of the IDEA was to ensure that children were not excluded from the public school system and were being educated with their peers. The *J.T.* court observed that "Congress did not intend for the IDEA to apply to system wide administrative decisions." *Id.* at 189 (quoting *N.D.*, 600 F.3d at 1116). As a result, the court would not second guess a systemwide "administrative decision made to protect the lives and health of students and staff." *Id.* at 189.

Here, Plaintiffs make no effort to substantively distinguish *J.T.*, and the Court finds the reasoning of *J.T.* persuasive. First, the USDOE guidance explicitly states that remote education is not a *per se* violation of the IDEA. Second, much like the decision in *J.T.*, the pivot to virtual instruction in New Jersey impacted schools throughout the state and affected all students. Plaintiffs do not contend that any of their IEPs were individually altered or that any child's personal placement or services were separately changed. Rather, Plaintiffs allege that Defendants were not correctly implementing the IEPs by providing remote instruction and services. Although the Third Circuit has not confronted this precise issue, it has instructed that a change in educational placement "should be given an expansive reading, at least where changes affecting *only an individual child's* program are at issue." *D.M.*, 801 F.3d at 215 (emphasis added). Plaintiffs, therefore, fail to establish that their educational placements changed when the School District Defendants moved from in-person to virtual instruction for all students. The stay put provision, therefore, does not apply to any Plaintiff, and Plaintiffs are not entitled to a class-wide injunction under the IDEA.[7]

---

[7] The Court also has serious concerns that Plaintiffs are entitled to class-wide relief through the stay put provision. *See J.D.*, 500 F. Supp. 3d at 185 ("To the extent Plaintiffs are seeking an injunction applicable to a class consisting of all NYCDOE special education students, no such relief is available" because the statute "only allows an *individual* parent to demand that a school maintain an individual student's education program") (emphasis in original).

## IV.     CONCLUSION

Therefore, for the reasons set forth above and for good cause shown,

IT IS on this 24th day of May, 2022

**ORDERED** that Plaintiffs' motion for a preliminary injunction (D.E. 2) is **DENIED**.

                                                                       John Michael Vazquez, U.S.D.J.