**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **JENNICA CARMONA,** *et al.*, | |
| **Plaintiffs,** | **Civil Action No. 21-18746** |
| v. | **OPINION** |
| **NEW JERSEY DEPARTMENT OF EDUCATION,** *et al.*, | |
| **Defendants.** | |

**John Michael Vazquez, U.S.D.J.**

Plaintiffs, parents of fifteen special needs children, initiated this putative class action against the New Jersey Department of Education ("NJDOE"), multiple public-school districts throughout New Jersey (the "School District Defendants"), and the New Jersey Commissioner of Education as well as the Superintendents of the school districts (the "Individual Defendants"). D.E. 1. Plaintiffs assert claims under the Individuals with Disabilities Education Act ("IDEA"), Section 504 of the Rehabilitation Act, the Americans with Disabilities Act ("ADA"), Section 1983, the New Jersey Administrative Code ("NJAC"), the New Jersey Special Education Statute ("NJSA"), the New Jersey Civil Rights Act ("NJCRA"), the New Jersey Law Against Discrimination ("NJLAD," and together with the NJAC, NJSA, and NJCRA, the "New Jersey Statutes"), and the Racketeer Influenced and Corrupt Organizations Act ("RICO"). *Id*. Presently before the Court are Defendants' motions to dismiss the Amended Complaint ("AC"). D.E. 41,

54, 65, 87, 91, 92, 93, 118.[1]  Additionally, the Court addresses the motion for sanctions filed by four Defendants.  D.E. 120.  The Court reviewed all the submissions in support and in opposition[2] and considered the motions without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b).  For the reasons discussed below, Defendants' motions to dismiss are **GRANTED** and the motion for sanctions is **DENIED.**

## I.  BACKGROUND[3]

The relevant facts of this case were outlined in detail in the Court's May 24, 2022 Opinion and Order denying Plaintiffs' motion for a preliminary injunction, D.E. 125, which is incorporated herein.  As a result, the Court provides a brief summary of the relevant facts and procedural history.

---

[1] Plaintiffs filed the AC, D.E. 100, on February 5, 2022, indicating that they simply corrected a technical deficiency in the Complaint.  Because there are no substantive changes to the AC, the Court will treat Defendants' current motions to dismiss as responsive to the AC.

[2] The moving briefs of West Orange Board of Education, Middletown Board of Education, Mary Ellen Walker, and Dr. J. Scott Cascone ("West Orange"), D.E. 41-4; Audubon Public School District and Dr. Andrew P. Davis ("Audubon"), D.E. 54-1; Lower Cape May Regional School District and Joseph Castellucci ("Lower Cape May"), D.E. 65-1; Toms River Regional Schools Board of Education and Thomas Gialanella ("Toms River"), D.E. 87-1; Middle Township School District and Dr. David Salvo ("Middle Township"), D.E. 91-1; Manasquan Board of Education and Dr. Frank Kasyan ("Manasquan"), D.E. 92-3; Rumson-Fair Haven Regional High School District, Camden City School District, Washington Township School District, and Matawan-Aberdeen Regional School District ("Rumson-Fair Haven"), D.E. 93-1; Roxbury Township Board of Education and Loretta Radulic ("Roxbury"), D.E. 118-1; Plaintiff's brief in opposition ("Opp."), D.E. 99; Audubon's reply, D.E. 108; West Orange's reply, D.E. 109; Middle Township's reply, D.E. 110; and Rumson-Fair Haven's reply, D.E. 111.  The Court also reviewed the brief filed by Audubon, Lower Cape May, Dr. Andrew P. Davis, and Joseph Castellucci in support of their motion for sanctions, D.E. 120-1; Plaintiffs' brief in opposition, D.E. 121; and the above-listed Defendants' reply, D.E. 123.

[3] The factual background is taken from the AC, D.E. 100.  When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

Plaintiffs brought suit individually and on-behalf of fifteen school-aged children, who are students in different school districts throughout New Jersey.  All have special needs and, all but one, B.A., had an Individualized Education Plan ("IEP") for the 2019-20 and/or the 2020-21 school years.  *See, e.g.*, AC ¶¶ 237-42; 254-58.  An IEP is the "primary mechanism" to ensure that every disabled child receives a free appropriate public education ("FAPE"), as required by the IDEA.  *Id.* ¶ 184; *see also* 20 U.S.C. § 1400, *et seq.*  An IEP is a written document that sets forth the special education and related services that must be provided to the child, to enable a FAPE.  AC ¶ 185.  Through their IEPs, all the named children in this matter, except B.A., received some type of specialized support or modifications at school during the 2019-20 and 2020-21 school years.[4]  *See, e.g.*, *id.* ¶¶ 240, 256.

On March 16, 2020, in the face of the COVID-19 pandemic, all public and private preschools, elementary schools, and secondary schools in New Jersey were ordered to close indefinitely.  *Id.* ¶ 190, *see also* D.E. 1-15 at 5.  As a result, all New Jersey schools that had not already done so, including some of the School District Defendants, ceased in-person learning and began virtual instruction.[5]  *See, e.g.*, AC ¶¶ 244-45.  Plaintiffs received virtual instruction and services for the remainder of the 2019-20 school year.  Virtual instruction continued until various points in the 2020-21 school year, when the School District Defendants began providing hybrid learning or in-person instruction.  *See, e.g.*, *id.* at ¶¶ 249, 294.

---

[4] B.A. did not have an IEP for the 2019-20 or 2020-21 school years.  An IEP was created for B.A. in September 2021 for the 2021-22 school year.  AC ¶¶ 227-228.  Plaintiffs allege that B.A. was denied a FAPE during the 2019-20 and 2020-21 school years through the school district's failure to provide B.A. with an IEP or other appropriate services.

[5] It appears that many of the School District Defendants stopped in-person instruction on March 13, 2020, before the Executive Order.  *See, e.g.*, AC ¶¶ 274, 290, 426, 448.

3

On October 18, 2021, Plaintiffs commenced the present action seeking injunctive and declaratory relief.  D.E. 1.  On February 5, 2022, Plaintiffs filed the AC, which contains nine counts.  D.E. 100.  Count One alleges violations of the IDEA, AC ¶¶ 504-521; Count Two violations of the Rehabilitation Act, *id.* ¶¶ 522-537; and Count Three violations of the ADA, *id.* ¶¶ 538-550.  Counts Four and Five assert Section 1983 claims for deprivation of Plaintiffs' equal protection and substantive due process rights under the Fourteenth Amendment.  *Id.* ¶¶ 551-568.  Count Six alleges violations of the NJAC and NJSA, *id.* ¶¶ 569-573; Count Seven violations of the NJCRA, *id.* ¶¶ 574-578; and Count Eight violations of the NJLAD, *id.* ¶¶ 579-584.  Finally, Count Nine alleges RICO violations against the individual Defendants.  *Id.* ¶¶ 585-766.

The Court previously denied Plaintiffs' motion for a preliminary injunction, finding that Plaintiffs failed to establish a reasonable probability of success on the merits on their RICO claims and that Plaintiffs were not entitled to an automatic injunction under the stay put provision of the IDEA.  D.E. 125.  The Court now turns to Defendants' motions to dismiss.

## II.     STANDARD OF REVIEW

### A.  Rule 12(b)(1)

Defendants argue that certain claims in the AC should be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  To decide a Rule 12(b)(1) motion, a court must first determine whether the party presents a facial or factual attack against a complaint.  A facial attack contests "subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)).  A factual attack challenges "the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise

presenting competing facts.'" *Id.* at 346 (quoting *Constitution Party v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). Defendants do not challenge the factual allegations underlying Plaintiffs' assertion of jurisdiction. Accordingly, the Court treats Defendants' argument as a facial challenge and considers the allegations of the AC as true.

**B.  Rule 12(b)(6)**

Defendants also move to dismiss under Federal Rule of Civil Procedure 12(b)(6), pursuant to which a count may be dismissed for "failure to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all well-pled factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss

the complaint for failure to state a claim.  *DeFazio v. Leading Edge Recovery Sols.*, Civ. No. 10-2945, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

### III.    STATUTORY FRAMEWORK

The IDEA, 20 U.S.C. § 1401 *et seq*., is designed "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living[.]"  20 U.S.C. § 1400(d)(1)(A).  The IDEA requires states that receive federal education funding to provide every disabled child with a free appropriate public education ("FAPE").  *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 993 (2017) (citing 20 U.S.C. § 1400, *et seq.*).  A FAPE "consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to benefit from the instruction."  *Ridley Sch. Dist. v. M.R.,* 680 F.3d 260, 268–69 (3d Cir. 2012) (internal quotation marks omitted).

The IDEA provides mechanisms for an aggrieved party to submit a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."  20 U.S.C. § 1415(b)(6)(A).  Initially, a party may bring a complaint to challenge the adequacy of an IEP through "an administrative 'impartial due process hearing.'"  *Ridley Sch. Dist.*, 680 F.3d at 269 (quoting 20 U.S.C. § 1415(f)).  "In New Jersey, this process entails filing a complaint and request for a due process hearing with the New Jersey Department of Education ("NJDOE")."  *Estate of S.B. ex rel. Bacon v. Trenton Bd. of Educ.*, No. 17-7158, 2018 WL 3158820, at *2 (D.N.J. June 28, 2018) (quoting N.J.A.C. 6A:14-2.7(c)).  A party aggrieved by the outcome of the due process hearing "shall have the right to bring a civil action with respect to the complaint presented . . . in a district

court of the United States, without regard to the amount in controversy." 20 U.S.C § 1415(i)(2)(A). The IDEA's detailed statutory regime makes it "clear ... that Congress intended plaintiffs to complete the administrative process before resorting to federal court." *Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir. 1994).

## IV.   ANALYSIS

### A.   Exhaustion of Administrative Remedies

Defendants argue that the Court lacks subject matter jurisdiction over Plaintiffs' claims relating to the denial of FAPEs because Plaintiffs have not exhausted their administrative remedies under the IDEA. "Generally, a plaintiff who seeks relief available under the IDEA must exhaust his administrative remedies before filing a lawsuit[.]" *M.M. v. Paterson Bd. of Educ.*, 736 F. App'x 317, 319 (3d Cir. 2018) (internal quotation omitted). "There are four exceptions to the exhaustion requirement: (1) exhaustion would be futile or inadequate; (2) the issue presented is purely a legal question; (3) the administrative agency cannot grant relief; and (4) exhaustion would cause severe or irreparable harm." *Id.* at 319-20 (internal quotation omitted). "The party seeking to be excused from exhaustion bears the burden of establishing an exception." *Id.* (citing *Honig v. Doe*, 484 U.S. 305, 327 (1988)). Where no exception applies, "failure to exhaust will deprive a federal court of subject matter jurisdiction." *T.R. v. Sch. Dist. of Philadelphia*, 4 F.4th 179, 185 (3d Cir. 2021).

Here, Plaintiffs admit that they have not exhausted their administrative remedies. AC ¶ 15. However, they argue that they need not exhaust their administrative remedies because they were not given full notice of their procedural rights under the IDEA. Opp. at 6. Specifically, Plaintiffs contend, they were not given full notice of their procedural rights "before or after" Defendants unilaterally changed the educational placement of the student Plaintiffs by closing schools and requiring students and staff to remain home. *Id.* at 7-9.

7

As an initial matter, Plaintiffs fail to cite to any binding authority in support of their position. Beyond this shortcoming, Plaintiffs have not plausibly plead that they were deprived of proper notice. The IDEA requires that prior written notice be provided to parents whenever a special education student's educational placement is changed. *See* 20 U.S.C. § 1415(b)(3). However, Plaintiffs have not adequately plead that the change from in-person to remote instruction resulting from the COVID-19 pandemic constituted a change in educational placement. In arriving at this conclusion, the Court finds the analysis in *J.T. v. de Blasio*, 500 F. Supp. 3d 137 (S.D.N.Y. 2020) instructive. There, a group of parents represented by the same attorneys as in the present action brought a nationwide class action asserting claims similar to those asserted here. Among other things, the plaintiffs alleged that when schools throughout the country were shut down due to the pandemic, the change to remote learning automatically altered the educational placement of every special needs student in the United States such that they were denied a FAPE. *See id.* at 147-48. The court found that none of the student plaintiffs had established that his or her educational placement had been changed for three reasons, two of which are relevant here. *Id.* at 186-88. First, the USDOE, the agency charged with administering the IDEA, issued guidance indicating that the provision of remote services does not work a change in placement, which the *J.T.* court refused to "second guess." *Id.* at 187-88. Second, the plaintiffs were challenging an administrative decision of general applicability that applied equally to abled and disabled students, and "[s]uch an order does not work a change in pendency." *Id.* at 188.

Plaintiffs do not attempt to distinguish *J.T.* in arguing that Defendants unilaterally altered the student Plaintiffs' educational placements, and the Court finds the reasoning or *J.T.* persuasive. Here, as in *J.T.*, the change from in-person to virtual instruction applied to abled and disabled students alike. While the Third Circuit has not spoken to this precise issue, it has noted that a

change in educational placement "should be given an expansive reading, at least where changes affecting *only an individual child's* program are at issue." *D.M. v. New Jersey Dep't of Educ.*, 801 F.3d 205, 215 (3d Cir. 2015) (emphasis added). Accordingly, the Court is not persuaded that an order of general applicability (such as the one at issue here) can work a change in educational placement. *See N.D. v. Hawaii Dep't of Educ.*, 600 F.3d 1104, 1108 (9th Cir. 2010) (ruling that Hawaii's system-wide decision to shut down all public schools, thus depriving able and disabled students of seventeen days of instruction, did not constitute a change in the disabled children's educational placement). Additionally, the USDOE's explicit guidance that providing remote instruction did not constitute a change in educational placement applies equally to the parties in the present action and, in the Court's view, deserves equal deference. Thus, even assuming that lack of proper notice would excuse Plaintiffs from exhausting their administrative remedies, such an exception would not apply here. *See Woodruff v. Hamilton Twp. Pub. Sch.*, Civ No. 06-3815, 2008 WL 11449201, at *8 (D.N.J. Apr. 8, 2008) (holding that "baldly stating…that [the plaintiffs] did not receive proper notice under the IDEA is insufficient to avoid the administrative process" where the plaintiffs failed to articulate how the notice requirement was violated or how the administrative process would not be able to provide them with a remedy to the alleged notice failure).

Plaintiffs also contend that they are excused from the exhaustion requirements because they "seek relief from Defendants' systemic violations of the IDEA on behalf of a large class, which the administrative due process system cannot provide." *Id.* at 10. Exhaustion of administrative remedies "is not required where plaintiffs allege systemic legal deficiencies and, correspondingly, request system-wide relief that cannot be provided (or even addressed) through the administrative process." *T.R.*, 4 F.4th at 185. This exception "flows implicitly from, or is in

fact subsumed by, the futility and no-administrative-relief exceptions." *Id.* (internal quotation omitted). To satisfy the systemic exception, a plaintiff must challenge policies that are "truly systemic…in the sense that the IDEA's basic goals are threatened on a system-wide basis." *Id.* at 192. For instance, claims that challenge policies concerning the administrative dispute resolution mechanism itself often meet the systemic exception. *Id.* Notably, "the fact that a complaint is structured as a class action seeking injunctive relief, without more, does not excuse exhaustion." *Id.*

Here, Plaintiffs' claims of "systemic violations" of the IDEA consist of the following:

(1)     The School District Defendants did not give Plaintiffs prior written notice of school closures and the change from in-person instruction to virtual instruction (AC ¶ 506);

(2)     The School District Defendants did not maintain the student Plaintiffs' pendency placement through in-person instruction (*id*. ¶ 513);

(3)     The School District Defendants did not reconvene IEP meetings to change the student Plaintiffs' IEPs to provide for completely virtual instruction (*id.* ¶ 517);

(4)     Defendants failed to ensure that children with disabilities had appropriate access to the same educational opportunities as their non-disabled peers (*id.* ¶ 520); and

(5)     The NJDOE failed to appropriately monitor the School District Defendants to ensure that they complied with the IDEA's procedural safeguards upon the closing of schools in March 2020 (*id.* ¶¶ 507, 514, 518).

These issues implicate individualized inquiries regarding the notice each School District Defendant provided, each student Plaintiff's particular IEP, and how each student Plaintiff's access to educational opportunities compared to that of their non-disabled peers in the same school district. They do not implicate "policies which undermine access to the administrative hearing process itself." *T.R.*, 4 F.4th at 193; *see also id.* at 192 (discussing cases in which the court

10

recognized the systemic exception because the plaintiffs' problems "could not have been remedied by administrative bodies" and noting that this exception "is largely limited to those procedural violations that effectively deprive plaintiffs of an administrative forum") (internal quotation and alteration omitted). Plaintiffs' argument that their claims "are not premised on the individual needs of particular students" but rather "challenge [ ] the very framework and processes that Defendants have undertaken for every disabled child in their state," Opp. at 10, is simply incompatible with the claims set forth in the AC. Nor is the Court persuaded by Plaintiffs' argument that the relief they seek "on behalf of a large class," cannot be provided by the administrative due process system. *See T.R.*, 4 F.4th at 194 (rejecting the plaintiffs' argument that exhaustion was futile because the administrative process could not result in the desired relief of wholesale, systemic changes to the school district's challenged services and noting that if the "truism" that "administrative hearings cannot order class-wide relief  [ ] were sufficient to satisfy the systemic exception, the IDEA's exhaustion requirement would be meaningless every time Rule 23 relief was invoked"). Thus, Plaintiffs fail to allege adequately that the systemic exception to exhaustion applies. As a result, the Court dismisses Plaintiffs' IDEA claims for lack of subject matter jurisdiction.

Plaintiffs' claims brought under Section 504 of the Rehabilitation Act, the ADA, Section 1983, and the New Jersey Statutes fare no better. The IDEA's exhaustion requirement extends beyond claims brought under the IDEA; it applies to any claims that seek relief also available under the IDEA. *T.R.*, 4 F.4th at 185. This statutory provision "bars plaintiffs from circumventing [the] IDEA's exhaustion requirement by taking claims that could have been brought under [the] IDEA and repackaging them as claims under some other statute—*e.g*., section 1983, section 504 of the Rehabilitation Act, or the ADA." *Batchelor v. Rose Tree Media Sch. Dist*., 759 F.3d 266, 272 (3d Cir. 2014) (first alteration in original) (internal quotation omitted); *see also Hornstine v.*

*Twp. of Moorestown*, 263 F. Supp. 2d 887, 901-02 (D.N.J. 2003) ("[I]n cases in which it appears that a plaintiff has cloaked an IDEA claim as an ADA, Rehabilitation Act, or Section 1983 action in an effort to avoid application of the IDEA's distinct exhaustion requirement, courts will require that plaintiff to exhaust the state administrative remedies mandated for IDEA claims.").  To determine whether a non-IDEA claim seeks relief that is also available under the IDEA, "a court should look to the substance, or gravamen of the plaintiff's complaint."  *T.R.*, 4 F.4th at 185 (quoting *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 752 (2017)).  Specifically, the analysis of whether the claim concerns the denial of a FAPE should be guided by two inquiries: (1) "could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library"; and (2) "could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance"?  *Id.* (emphasis in original) (quoting *Fry*, 137 S. Ct. at 756).  If the answer to those questions is no, then the claim "probably does concern a FAPE, even if it does not explicitly say so."  *Fry*, 137 S. Ct. at 756.

In light of the analytical framework, it is clear that the claims stated in Counts Two through Eight of the AC seek relief also available under the IDEA.  The claims all arise out of the cessation of in-person instruction and services in March 2020, which allegedly resulted in Plaintiffs suffering discrimination and deprivation of their equal protection rights, substantive due process rights, and procedural safeguards.  *See* AC ¶¶ 535-536 (Section 504 of the Rehabilitation Act); *id.* ¶ 549 (the ADA); *id.* ¶¶ 554-556 (Section 1983 claims for right to equal protection under the Fourteenth Amendment), *id.* ¶¶ 564-567 (Section 1983 claims for substantive due process rights under the Fourteenth Amendment); *id.* ¶¶ 570-571 (NJAC and NJSA), *id.* ¶ 577 (NJCRA); *id.* ¶ 583 (NJLAD).  "Because these factual allegations are intertwined with [Plaintiffs'] complaints about the school[s'] failure to accommodate [their] educational needs…and because such allegations

could not be brought by a nonstudent or outside the school setting," these claims seek relief available under the IDEA and are thus subject to exhaustion. *Wellman v. Butler Area Sch. Dist.*, 877 F.3d 125, 134 (3d Cir. 2017) (concluding that the gravamen of the plaintiff's complaint is the denial of a FAPE and affirming that the plaintiff's claims brought under the ADA, the Rehabilitation Act, and Section 1983 were subject to exhaustion). As Plaintiffs have not exhausted their administrative remedies or shown that any exception to the exhaustion requirement applies, their claims are not properly before the Court. *See Batchelor*, 759 F.3d at 281 (affirming dismissal of complaint for lack of subject matter jurisdiction because the appellants did not exhaust the IDEA's administrative process and failed to demonstrate that an exception applies). Therefore, Counts One through Eight are dismissed for lack of subject matter jurisdiction.[6]

### B.  RICO Claims

Plaintiffs also allege that Defendants violated RICO by way of their involvement in a scheme to deprive Plaintiffs of IDEA Part B funds by making false representations to the USDOE about their compliance with the IDEA during the COVID-19 pandemic.[7] *Id.* ¶¶ 586, 610. "The civil RICO statute allows '[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter [to] sue therefor in any appropriate United States district court.'" *Anderson v. Ayling*, 396 F.3d 265, 268-69 (3d Cir. 2005) (quoting 18 U.S.C. § 1964(c)). To bring a federal civil RICO claim under 18 U.S.C. § 1962, a plaintiff must allege: "(1) the conducting of,

---

[6] Defendants also raise supplemental jurisdiction and abstention arguments. Because the Court dismisses Plaintiffs' claims on other grounds, it does not reach those issues.

[7] Through the IDEA, states are entitled to federal education funding if they have policies and procedures in place to ensure that their students receive a FAPE. 20 U.S.C. § 1412. This funding is referred to as Part B funding. In New Jersey, the NJDOE receives the Part B money then distributes it to local school districts. 20 U.S.C. § 1413.

(2) an enterprise, (3) through a pattern, (4) of racketeering activity." *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 166, 173 (D.N.J. 1998).  To establish a pattern of racketeering activity, a plaintiff must allege "at least two predicate acts of racketeering that occurred within ten years of each other." *Slimm v. Bank of Am. Corp.*, No. 12-5846, 2013 WL 1867035, at *20 (D.N.J. May 2, 2013).  Racketeering activity is defined in Section 1961(1)(B) as "any act which is indictable under" a number of enumerated federal laws; these federal offenses are called "predicate acts." *See* 18 U.S.C. § 1341; 18 U.S.C. § 1962(1)(B).

As an initial matter, as the Court noted in its Opinion and Order denying Plaintiffs' preliminary injunction motion, multiple district courts within the Third Circuit "have affirmatively held that RICO does not establish a private right of equitable relief."  *Minnesota ex rel. Ellison v. Sanofi-Aventis U.S. LLC*, No. 18-14999, 2020 WL 2394155, at *12 (D.N.J. Mar. 31, 2020); *see also MSP Recovery Claims, Series LLC v. Abbott Labs.*, No. 19-21607, 2021 WL 2177548, at *9 (D.N.J. May 28, 2021) ("declin[ing] to stray from the reasoned decisions from this District" concluding that "private parties cannot obtain equitable relief under RICO"); *Johnston Dev. Grp., Inc. v. Carpenters Local No. 1578*, 728 F. Supp. 1142, 1146 (D.N.J. 1990) (explaining that RICO "makes no provision for private equitable relief").  Plaintiffs' reliance on Second Circuit decisions for the proposition that RICO does provide a private right of action for injunctive relief is insufficient to overcome the weight of authority in this district.  No court in this district has adopted the Second Circuit's reasoning and conclusion.  *See MSP Recovery Claims*, 2021 WL 2177548, at *9 ("Plaintiffs point to no case in this District that has adopted the reasoning of the Second and Seventh Circuits.").

### 1.  Standing

Even assuming *arguendo* that RICO provides a private right of action for equitable relief,

Plaintiffs' RICO claims fail for numerous additional reasons.  First, Plaintiffs lack standing to sue under the RICO statute.  RICO grants standing to sue to "[a]ny person injured in his business or property by reason of a violation of section 1962."  18 U.S.C. § 1964(c) (1988).  "A plaintiff lacks standing to sue under RICO where…he suffers injury that is only indirectly related to a defendant's alleged misconduct."  *McCullough v. Zimmer, Inc.*, 382 F. App'x 225, 231 n.7 (3d Cir. 2010).

Here, Plaintiffs allege only indirect harm flowing from the allegedly fraudulent scheme. Plaintiffs claim that Defendants submitted false information to the USDOE, resulting in the receipt of IDEA Part B funds.  *See*, *e.g.*, AC ¶¶ 586-588.  Thus, the alleged fraud was perpetrated on the United States government, not Plaintiffs.  Addressing similar claims, the *J.T.* court found that the plaintiffs lacked standing to assert a RICO claim because the alleged fraud—submitting false claims to the federal government to obtain federal funding for educating disabled children—was perpetrated on the United States rather than on the plaintiffs.  500 F. Supp. 3d at 166.  Likewise, Plaintiffs here lack standing to bring their RICO claims because they allege injuries "derivative of harm suffered by a more immediate victim of the RICO activity."  *Gratz v. Ruggiero*, 822 F. App'x 78, 82 n.3 (3d Cir. 2020) (internal quotation omitted); *see also In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig*., 804 F.3d 633, 642 (3d Cir. 2015) ("[A] plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover.").

### 2.  Existence of an Enterprise

Plaintiffs also fail to plausibly plead the existence of an enterprise.  The RICO statute defines the term "enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  "[A] RICO claim must plead facts plausibly implying the existence of an

enterprise with the [following structural attributes]: a shared 'purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'" *In re Ins. Brokerage Antitrust Litig*., 618 F.3d 300, 369-70 (3d Cir. 2010) (quoting *Boyle v. United States*, 556 U.S. 938, 946 (2009)).

The AC fails to allege these structural attributes.  Instead, Plaintiffs merely recite the elements of an enterprise, claiming that the NJDOE and each of the School District Defendants are "individual enterprises," each of which "is an association in fact consisting of individuals who function together as a continuing unit with consensual decision-making authority," and has "longevity sufficient to permit their respective individual RICO Defendants to pursue the enterprise's purpose."  AC ¶¶ 593-594; 602.  These conclusory allegations are insufficient.  Far from alleging relationships among those associated with each enterprise, Plaintiffs identify only a single member of each: the Individual Defendant serving as the alleged enterprise's Superintendent.  *See*, *e.g*., AC ¶¶ 595, 596, 599.  Nor does the AC contain any allegations supporting an inference that the members of each enterprise—again, unidentified save for the Superintendent of each named school district—shared a common purpose.

Indeed, in response to Defendants' arguments, Plaintiffs assert the following in conclusory fashion without any citations to the AC:

> As outlined in the Complaint, Plaintiffs have plead sufficient facts on the fact [sic] of their complaint to identify the enterprise or group consisting of governmental agencies, including the New Jersey Commissioner of Education, the State Education Agency, and the Defendant school districts and their superintendents who were responsible for setting and managing state funding and state policy, as well as oversight and enforcement of the policies which violated the IDEA and deprived Plaintiffs of a FAPE.

Opp. at 12.  In short, Plaintiffs have not adequately plead the existence of an enterprise, but rather,

"at best, the conclusory naming of a string of entities coupled with legal conclusions." *J.T.*, 500 F. Supp. 3d at 167-68 (internal quotation omitted). The *J.T.* court found that the plaintiffs failed to allege the existence of an enterprise because they failed to allege any facts supporting an inference that the members of the alleged enterprise "have any sort of relationship that forms a coherent entity," that "they bonded together with the singular purpose of depriving disabled students of the benefit of in-person education during the pandemic," or that "they acted together as a unit to achieve that purpose". *Id.*

### 3. Predicate Acts

Plaintiffs further fail to plausibly allege predicate acts of racketeering activity. Under the RICO statute, racketeering activity includes mail fraud under 18 U.S.C. § 1341 and wire fraud under 18 U.S.C. § 1343. *See* 18 U.S.C. § 1961(1). The elements of mail and wire fraud include: "(1) a scheme to defraud, (2) the use of the mails or wires for the purpose of executing the scheme, and (3) fraudulent intent." *In re Valent Pharms. Int'l, Inc*., Civ. No. 16-3087, 2020 WL 9809347, at *22 (D.N.J. Aug. 24, 2020) (citing 18 U.S.C. §§ 1341, 1343; *United States v. Hedaithy*, 392 F.3d 580, 590 (3d Cir. 2001)). Further, "[w]here acts of mail and wire fraud constitute the alleged predicate racketeering acts, those acts are subject to the heightened pleading requirement of Rule 9(b)." *Warden v. McLelland*, 288 F.3d 105, 114 (3d Cir. 2002). This means that a complaint bringing RICO mail and wire fraud claims must "identify the purpose of the mailing within the defendant's fraudulent scheme and specify the fraudulent statement, the time, place, and speaker and content of the alleged misrepresentation." *Bonavitacola Elec. Contractor, Inc. v. Boro Devs., Inc*., 87 F. App'x 227, 231 (3d Cir. 2003). The heightened Rule 9(b) pleading requirement is "particularly important in civil RICO pleadings in which the predicate racketeering acts are critical to the sufficiency of the RICO claim." *Balthazar v. Atl. City Med. Ctr*., 279 F. Supp. 2d 574, 591

(D.N.J. 2003) (internal quotation omitted), *aff'd*, 137 F. App'x 482 (3d Cir. 2005).

Plaintiffs claim that Defendants engaged in mail and wire fraud by "using interstate wires to defraud Plaintiffs, the beneficiaries of IDEA Part B Funds." AC ¶¶ 609-610. Plaintiffs fall far short of satisfying the heightened pleading requirements of Rule 9(b). First, the predicate acts are pleaded on information and belief. *See*, *generally*, *id.* ¶¶ 611-752. "As a general matter, such allegations are insufficient for purposes of Rule 9(b)." *Zavala v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 295, 314 (D.N.J. 2005) (dismissing mail and wire fraud RICO claims pleaded on information and belief because "a conclusory declaration to this effect…does not satisfy Rule 9(b)"), *aff'd*, 691 F.3d 527 (3d Cir. 2012). Plaintiffs fail to even address this argument in their opposition brief, much less explain why such allegations pleaded on information and belief are sufficient.

Even without this deficiency, Plaintiffs' predicate act claims are insufficiently pled. The AC provides only conclusory allegations that each Individual Defendant used interstate wires to defraud Plaintiffs "[i]n furtherance of his [of her] scheme to defraud, and with the purpose of executing his [or her] scheme to defraud." *Id.* ¶¶ 615, 622, 631, 638, 645, 652, 659, 666, 673, 680, 687, 694701, 708, 715, 722, 729, 736, 750. These threadbare recitals are insufficient. Indeed, as the *J.T.* court noted, it is "utter[ly] implausib[le]" that, starting in *2019*,[8] Defendants sought and accepted federal funds for special education while being aware that the COVID-19 pandemic would disrupt in-person instruction in *March 2020* for a protracted period. 500 F. Supp. 3d at 170.

---

[8] Plaintiffs allege that the RICO Defendants knowingly and intentionally committed mail and wire fraud from March 2020 through the present, AC ¶ 609, but go on to allege that the Individual Defendants made allegedly fraudulent representations beginning in 2019, *see*, *generally*, *id.* ¶¶ 611-752.

Ultimately, Plaintiffs fall far short of satisfying their "obligation to provide allegations indicating why the charges are not baseless." *Zavala*, 393 F. Supp. 2d at 314.

In sum, not only do Plaintiffs lack standing to bring their RICO claims, but they additionally fail to plausibly allege the required elements of a RICO violation.[9]   Accordingly, Count Nine is dismissed.

### C.  Motion for Sanctions

Defendants Audubon, Lower Cape May, Dr. Andrew P. Davis, and Joseph Castellucci move for sanctions.  D.E. 120.  Before addressing the merits of a Rule 11 motion for sanctions, a court must ensure that the party seeking sanctions complied with the "safe harbor" provision of the rule.  Rule 11 sanctions are only permissible after the party against whom sanctions are sought has notice of the alleged violation "and a reasonable opportunity to respond."  Fed. R. Civ. P. 11(c)(1).  To that end, a motion for sanctions can only be filed 21 days after the party seeking sanctions serves the motion on the party against whom sanctions are sought.  Fed. R. Civ. P. 11(c)(2).  *See Petit-Clair v. New Jersey*, No. 14-7082, 2016 WL 1568282, at *1 (D.N.J. Apr. 18, 2016).  If a party fails to comply with the safe harbor provision, the motion for sanctions must be denied.  *Scott v. Bd. of Educ. of City of E. Orange*, No. 01-4171, 2006 WL 3675278, at *18 (D.N.J. Dec. 12, 2006).  Here, the relevant Defendants complied with the safe harbor provision.  *See* D.E. 120-1 at 3; 120-3.

Rule 11(b) imposes on any party who presents "a pleading, motion, or other paper . . . an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing, and that

---

[9] Defendants also raise various additional arguments as to why Plaintiffs' RICO claims fail. Because the Court dismisses these claims on other grounds, it does not reach these additional arguments.

the applicable standard is one of reasonableness under the circumstances." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.,* 498 U.S. 533, 551 (1991).   "[R]easonableness [under the circumstances is] defined as an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact." *Ford Motor Co. v. Summit Motor Prods., Inc.,* 930 F.2d 277, 289 (3d Cir. 1991) (citations and internal quotations omitted). Thus, attorneys are required to conduct a "normally competent level of legal research to support the[ir] presentation." *Simmerman v. Corino*, 27 F.3d 58, 62 (3d Cir. 1994).  However, "Rule 11 is intended to impose sanctions 'only in the exceptional circumstance, where a claim or motion is patently unmeritorious or frivolous.'"  *Ballard v. AT&T Mobility, Inc.*, No. 15-8808, 2018 WL 3377713, at *4 (D.N.J. July 11, 2018) (quoting *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988)).

If Rule 11(b) is violated, Rule 11(c) permits the Court to impose sanctions, including reasonable attorneys' fees, expenses, or nonmonetary directives. Fed. R. Civ. P. 11(c).  Any sanction, however, "must be limited to what suffices to deter repetition of the [sanctionable] conduct[.]" Fed. R. Civ. P. 11(c)(4).  "Generally, sanctions are prescribed only in the exceptional circumstance where a claim or motion is patently unmeritorious or frivolous."  *Ford Motor Co.,* 930 F.2d at 289 (internal citations and quotations omitted).  Additionally, "the imposition of sanctions for a Rule 11 violation is discretionary rather than mandatory." *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 146 n.28 (3d Cir. 2009) (citation omitted).  In deciding a Rule 11 motion, "[a]ny doubt . . .  should be resolved in favor of the party charged with the violation." *Sanders v. Hale Fire Pump Co.*, No. 87-2468, 1988 WL 58966, at *1 (E.D. Pa. June 1, 1988) (citing *Eavenson, Auchmuty & Greenwald v. Holtzman*, 775 F.2d 535, 544 (3d Cir. 1985)).

20

Here, the Court declines to impose sanctions.  However, the Court cautions Plaintiffs to ensure that any future claims have both factual and legal support (or present a nonfrivolous argument for extending, modifying, or reversing existing law or establishing new law).  Should Plaintiffs fail to heed the Court's warning, and should the Court be presented with a motion for sanctions in the face of similar circumstances in the future, the Court will impose sanctions if appropriate and require Plaintiffs to pay opposing counsels' fees and costs.

## V.  CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss are **GRANTED** and the motion for sanctions is **DENIED**.  The dismissal is without prejudice and Plaintiff shall have thirty (30) days to file an amended complaint that cures the deficiencies noted herein.  If Plaintiff does not file an amended complaint within that time, this matter will be closed for lack of subject matter jurisdiction.  An appropriate Order accompanies this Opinion.

Dated: August 23, 2022

John Michael Vazquez, U.S.D.J.

21